ILENE J. LASHINSKY (#003073)
United States Trustee
District of Arizona

CHRISTOPHER J. PATTOCK (#009797)
Trial Attorney
230 North First Avenue, #204
Phoenix, Arizona 85003-1706
(602) 682-2600 (phone)
(602) 514-7270 (facsimile)

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF TUCSON, | No. 4:04-bk-04721-JMM |
| | OBJECTION TO DEBTOR'S APPLICATION TO EMPLOY ORDINARY COURSE PROFESSIONALS |
| Debtor. | Hearing Date: March 25, 2005<br>Time: 10:30 a.m.<br>Location: 38 N. Scott Ave.<br>Courtroom 446 |

The United States Trustee for the District of Arizona, by and through her attorney undersigned, hereby submits her objection to the "Debtor's Motion Pursuant to 11 U.S.C. §§ 105(a) and 328 for Order: (I) Authorizing Employment of Certain Professionals Utilized in the Ordinary Course of Business: and (II) Authorizing and Approving Procedures for Future Employment of Ordinary Course Professional," for the following reasons: 1) The professionals sought to be employed by the Diocese are *not* ordinary course professionals; 2) The Diocese seeks compensation of the proposed professionals under § 328(a), rather than under the § 330 Reasonableness standard; 3) The proposed procedure which requires the filing of an adverse interest affidavit and a retention questionnaire *after* employment is approved, rather than *prior* to retention is not appropriate; and 4) The application seeks *nunc pro tunc* approval of the

employment of three attorneys without meeting the required Ninth Circuit standard authorizing such employment.

**1. The professionals sought to be employed by the Diocese are not ordinary course professionals.**

The Diocese seeks to employ three attorneys (listed on Exhibit B to the Diocese's application) as ordinary course professionals pursuant to 11 U.S.C. § 327(b). However, the three professionals proposed to be employed are independent contractors, paid on an hourly basis.[1] Section 327(b) authorizes the employment of ordinary course professionals if previously employed on salary, not those employed hourly as independent contractors. Collier states: "Section 327(b) applies whenever ... the debtor has regularly employed attorneys, accountants or other professional persons on salary. 3 *Collier on Bankruptcy*, § 327.04[6], at 327-54, 15th Ed.

The three attorneys should instead be employed under § 327(e) as special counsel, and be subject to the same procedures as other professionals employed in the case. Interestingly, the Diocese cites *both* § 327(b) *and* 327(e) as authority for the employment of these professionals. However, the relief it requests is exclusively under § 327(b). So it appears that the Diocese is attempting to characterize their pre-petition independent contractor attorneys (who should simply be 327(e) special counsel) as salaried ordinary course professionals.

The case authority for 327(b) employment cited by the Diocese, two bankruptcy court cases, is not supportive of its position. One is

---

[1] Although this isn't clear in the application, counsel for the debtor has informally confirmed such to be the case.

-2-

a 1988 bankruptcy court decision out of the Southern District of Texas, In re Lowry Graphics, 86 B.R. 74. First, in that case, the bankruptcy court *denied* the § 327(b) application. Second, the duties to be performed by the professional were delegated by the chapter 11 trustee, essentially to run the company as CEO. Third - and most significantly - the bankruptcy court's decision noted that § 327(b) applied only where a company had previously had a professional on payroll and - only under some circumstances - on retainer. Id. at 78. The other decision is a 1994 bankruptcy decision out of Puerto Rico, Matter of Delta Petroleum, 164 B.R. 425. The professional in that case was a marketing director who prior to bankruptcy was paid a commission on sales; he also received health insurance and a car.

**2. The Diocese seeks compensation of the proposed professionals under § 328(a), rather than under the § 330 Reasonableness standard.**

Section 328 of the Code provides for retention of a professional under § 327 or § 1103 on any reasonable terms and conditions of employment. It further provides that compensation may be reduced only if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions. The latter standard makes it extremely difficult to object to fees at the end of the case if it appears that the fees requested are not reasonable. When the terms of employment of a professional is approved under Section 328 of the Bankruptcy Code, the Court is limited to the "improvident in light of developments not capable of being anticipated" standard of review under Section 328. Retention under Section 328 prohibits the Court, creditors, interested parties and the United States Trustee from objecting to a professional's fees based

-3-

upon the "reasonableness" standard of § 330. See In re Gypsum Company, 123 F.3d 863 (5th Cir. 1997); In re Merry-Go-Round Enterprises, Inc. 244 B.R. 327 (Bankr. D. Md. 2000); In re Circle K Corporation, 279 F.3d 669 (9th Cir. 2002).

Review of professionals' fee applications under the standard of review set forth in § 330 is the accepted local practice in the District of Arizona. It is a fair standard which allows for a determination of whether the request is reasonable and the proposed compensation is for actual, necessary services and expenses. Rather than putting the burden on the Court, creditors and other interested parties "up front" at the employment application stage to guess what developments may make the employment agreement "improvident" later in the case, the burden should be on the professional to show that its fees are reasonable and that the services provided are actual and necessary, *after* the services are performed.

Approving employment under the § 327 "reasonableness" standard avoids the possibility of the Court being required to approve fees that it believes to be unreasonable.

**3. The proposed procedure inappropriately requires the filing of an adverse interest affidavit and a retention questionnaire *after* employment is approved, rather than *prior* to approval.**

In the event that certain professionals could be characterized as "ordinary course," the Diocese proposes to require these professionals to file an adverse interest affidavit (a verified statement under Bankruptcy Rule 2014) and a "Retention Questionnaire"[2] *after*,

---

[2] Setting forth, among other things, the proposed duties of the professional. *See* Exhibit A to the Diocese's application.

-4-

rather than *before* the professional's employment is approved.

Instead, the 2014 Statement and the Retention Questionnaire should be completed at the initial application stage, so that creditors and interested parties are in an informed position to object, if appropriate, *prior* to approval of the professional's employment. There is no benefit to the procedure proposed by the Diocese; in fact, it could result in additional costs and complexities, such as subsequent motions to reconsider, or objections to a professional's employment after services have already been rendered.

**4. The application seeks *nunc pro tunc* approval of the employment of three attorneys without even attempting to meet the required Ninth Circuit standard authorizing such employment.**

The proposed application seeks employment of three attorneys "as of the Petition Date", which was September 20, 2004, some five and one-half months prior to the filing of the application. The Diocese fails to acknowledge the reality that this is a *nunc pro tunc* employment application, and has not even attempted to meet the required Ninth Circuit standard authorizing such employment.

The Ninth Circuit authorizes *nunc pro tunc* retention orders only under certain exceptional circumstances. Specifically, a *nunc pro tunc* appointment and allowance of fees is justified when there is a satisfactory explanation for the failure to receive prior judicial approval *and* a significant benefit to the estate is demonstrated. In re Atkins, 69 F.3d 970, 974 (9th Cir. 1995); In re Occidental Financial Group, Inc., 40 F.3d 1059, 1062 (9th Cir. 1994); In re THC Financial Corp., 837 F.2d 389 (9th Cir. 1988). It has been held that a reasonable "grace period" is 30 days prior to the date of the filing of the employment application. In re Sinor, 87 B.R. 620 (Bankr. E.D. Cal 1988).

-5-

Even were the failure to seek prior judicial approval attributable to inexcusable or unexplained negligence, the Bankruptcy Appellate Panel of the Ninth Circuit has held that this would not constitute "extraordinary circumstances" justifying such <u>nunc pro tunc</u> employment and allowance of fees. <u>In re Crook</u>, 79 B.R. 745, 479 (9th Cir. BAP 1987); <u>In re Downtown Inv. Club III</u>, 89 B.R. 59, 63 (9th Cir. BAP 1988); <u>In re Shirley</u>, 134 B.R. 940, 943 (9th Cir. BAP 1992).

Because the Diocese has failed to meet the test articulated by the Ninth Circuit, the proposed professionals are not eligible for compensation for work done prior to the date that their employment application was filed.

WHEREFORE, the United States Trustee respectfully requests that:

1. The three attorneys currently proposed to be employed by the Diocese should be employed under § 327(e), rather than § 327(b), and as such should be required to submit periodic fee applications for all of their fees;

2. The fee applications of any of the professionals proposed to be employed, either currently or prospectively, should be subject to the "reasonableness" standard of review under § 330, rather than the "improvident under circumstances incapable of being anticipated" standard of review under § 328(a);

3. The proposed procedure of requiring the filing of adverse interest affidavits and retention questionnaires *after* employment is approved, rather than *prior* to approval be denied; and

4. In order to justify the *nunc pro tunc* retention of the three attorneys proposed to be employed the debtor should be required to satisfy the Ninth Circuit criteria for each applicant, by showing that

-6-

there is a satisfactory explanation for the failure to receive prior judicial approval *and* a significant benefit to the estate is demonstrated.

        RESPECTFULLY SUBMITTED this 17th day of March, 2005.

                                    ILENE J. LASHINSKY  
                                    United States Trustee  
                                    District of Arizona

                                    _____  
                                    CHRISTOPHER J. PATTOCK  
                                    Trial Attorney

Copies of the foregoing mailed on
the 18th[th] day of March, 2005, to:

Susan G. Boswell, Esq.
Kasey C. Nye, Esq.
Quarles & Brady Streich Lang
One South Church Avenue, Suite 1700
Tucson, AZ 85701-1621
Attorneys for Debtor

C. Taylor Ashworth, Esq.
Alisa C. Lacey, Esq.
Stinson Morrison Hecker LLP
1850 N. Central Avenue, Suite 2100
Phoenix, AZ 85004
Attorneys for Tort Creditors' Committee

Sally M. Darcy, Esq.
McEvoy, Daniels & Darcy
2701 East Speedway, Suite 101
Tucson, AZ 85716
Attorney for Unknown Claims Representative

A. Bates Butler, Esq.
Fennemore Craig, P.C.
One South Church St., #1000
Tucson, AZ 85701
Unknown Claims Representative

Charles L. Arnold, Esq.
Frazer Ryan Goldberg
Arnold & Gittler, LLP
3101 N. Central Ave., #1600
Phoenix, AZ 85012
Guardian Ad Litem

Lowell E. Rothschild, Esq.
Michael McGrath, Esq.
Mesch Clark & Rothschild
259 N. Meyer
Tucson, AZ 85701-1090
Attorneys for Parishes