1 | Quarles & Brady Streich Lang LLP
Firm State Bar No. 00443101
2 | One South Church Avenue
Suite 1700
Tucson, AZ 85701-1621
3 | TELEPHONE 520.770.8700

4 | Attorneys for Debtor, the Roman Catholic Church of
the Diocese of Tucson

5 | Susan G. Boswell (#004791)
Kasey C. Nye (#020610)

6 |

7 | **IN THE UNITED STATES BANKRUPTCY COURT**

8 | **FOR THE DISTRICT OF ARIZONA**

9 |

10 | In re: | In Proceedings Under Chapter 11

11 | THE ROMAN CATHOLIC CHURCH OF | Case No. 4-04-04721
THE DIOCESE OF TUCSON *aka* THE

12 | DIOCESE OF TUCSON, an Arizona | **DEBTOR'S THIRD AMENDED AND**
corporation sole, | **RESTATED PLAN OF**

13 | | **REORGANIZATION**
Debtor.

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 | May 25, 2005

22 | Tucson, Arizona

23 |

24 |

25 |

26 |

# TABLE OF CONTENTS

**Page**

ARTICLE 1 - INTRODUCTION..................................................................................1

ARTICLE 2 - DEFINITIONS ....................................................................................1

    2.1    Scope Of Definitions ................................................................1

    2.2    Additional Distribution.............................................................2

    2.3    Additional Distribution Amount ...............................................2

    2.4    Administrative Claim ...............................................................2

    2.5    Allowed Claim .........................................................................3

    2.6    Assets.......................................................................................4

    2.7    Avoidance Actions ...................................................................4

    2.8    Avoidance Actions Fund ..........................................................4

    2.9    Ballot .......................................................................................4

    2.10   Bankruptcy Code.....................................................................5

    2.11   Bankruptcy Court or Court......................................................5

    2.12   Bankruptcy Rules ....................................................................5

    2.13   Bar Date...................................................................................5

    2.14   Barred Tort Claims ..................................................................5

    2.15   Business Day ............................................................................5

    2.16   California Tier ..........................................................................6

    2.17   California Tort Claimant ..........................................................6

    2.18   California Tort Claims..............................................................6

    2.19   California Tier Initial Distribution Amount .............................6

    2.20   Canon Law ...............................................................................6

    2.21   Cash .........................................................................................6

    2.22   Channeled Claims....................................................................6

    2.23   Chapter 11 Professionals .........................................................7

    2.24   Claim .......................................................................................7

    2.25   Claim Payment Date ................................................................7

    2.26   Class ........................................................................................7

    2.27   Co-Defendants.........................................................................7

    2.28   Committee................................................................................7

    2.29   Committee's Professionals.......................................................7

**TABLE OF CONTENTS**
**(continued)**

2.30   Confirmation Date ................................................................................ 8

2.31   Confirmation Hearing ............................................................................ 8

2.32   Confirmation Order ............................................................................... 8

2.33   Contingent ............................................................................................ 9

2.34   Creditor ................................................................................................ 9

2.35   Debtor or Diocese ................................................................................. 9

2.36   Debtor's Professionals .......................................................................... 9

2.37   Diocese Real Property .......................................................................... 9

2.38   Disallowed .......................................................................................... 10

2.39   Disclosure Statement .......................................................................... 10

2.40   Disputed Claim ................................................................................... 10

2.41   Disputed Claims Reserve .................................................................... 10

2.42   District Court ...................................................................................... 11

2.43   Effective Date ..................................................................................... 11

2.44   Escrow Agent ...................................................................................... 11

2.45   Estate .................................................................................................. 11

2.46   Estimated Amount ............................................................................... 11

2.47   Executory Contract ............................................................................. 12

2.48   Excess Distribution ............................................................................. 12

2.49   Excess Distribution Amount ............................................................... 12

2.50   Final Order ......................................................................................... 12

2.51   Foresters ............................................................................................. 12

2.52   Foresters Unsecured Claim ................................................................. 12

2.53   Fund .................................................................................................... 13

2.54   General Unsecured Convenience Claim .............................................. 13

2.55   General Unsecured Claim .................................................................... 14

2.56   Guardian ad Litem ............................................................................... 14

2.57   Hartford .............................................................................................. 14

2.58   Hartford Settlement ............................................................................. 14

2.59   Hartford Settlement Proceeds ............................................................. 14

2.60   Initial Contribution ............................................................................. 14

**TABLE OF CONTENTS**
**(continued)**

2.61  Initial Distribution ........................................................................................... 15

2.62  Insurance Actions .............................................................................................. 15

2.63  Insurance Action Recoveries ............................................................................ 15

2.64  Insurance and Benefit Claims ........................................................................... 15

2.65  Insurance Company ........................................................................................... 16

2.66  Insurance Coverage ........................................................................................... 16

2.67  Insurance Policy ................................................................................................ 16

2.68  Litigation Trust .................................................................................................. 16

2.69  Litigation Trust Agreement ............................................................................... 17

2.70  Litigation Trust Fund ........................................................................................ 17

2.71  Litigation Protocol ............................................................................................ 17

2.72  Non-settling Tort Claimants ............................................................................. 17

2.73  Other Tort and Employment Claims .................................................................. 17

2.74  Parish ................................................................................................................. 18

2.75  Parish Guaranty Claims ..................................................................................... 18

2.76  Parish Loan Claims ............................................................................................ 18

2.77  Parish Monthly Payment .................................................................................... 18

2.78  Parish Real Property .......................................................................................... 18

2.79  Participating Third Parties ................................................................................. 19

2.80  Penalty Claims ................................................................................................... 19

2.81  Person ................................................................................................................ 19

2.82  Petition Date ...................................................................................................... 19

2.83  Plan .................................................................................................................... 19

2.84  Plan Documents ................................................................................................. 19

2.85  Post-Effective Date Secured Tax Claims .......................................................... 20

2.86  Prepetition Date Secured Tax Claims ................................................................ 20

2.87  Priority Employee Unsecured Claim ................................................................. 20

2.88  Priority Tax Claim ............................................................................................. 20

2.89  Priority Unsecured Claim .................................................................................. 20

2.90  Pro Rata ............................................................................................................. 20

2.91  Professional Charges ......................................................................................... 20

QBTUC\811017.00003\1653754.4    -iii-

2.92    Property Tax Administrative Claim ....................................................................... 20

2.93    Property Tax Claims............................................................................................... 21

2.94    Property Tax Claims Proration ............................................................................. 21

2.95    Regina Cleri Property ............................................................................................ 21

2.96    Relationship Tort Claimant ................................................................................... 21

2.97    Relationship Tort Claims ....................................................................................... 21

2.98    Relationship Tort Claim Distribution Amount.................................................... 21

2.99    Reorganization Case .............................................................................................. 22

2.100   Reorganized Debtor ............................................................................................... 22

2.101   Representatives........................................................................................................ 22

2.102   Representatives' Professionals .............................................................................. 22

2.103   Restricted St. Augustine Account ......................................................................... 22

2.104   Secured Claim ........................................................................................................ 22

2.105   Secured Creditor .................................................................................................... 23

2.106   Secured Tax Claim ................................................................................................. 23

2.107   Settlement Trust ..................................................................................................... 23

2.108   Settlement Trust Agreement.................................................................................. 24

2.109   Settling Insurers ..................................................................................................... 24

2.110   Settling Parties ....................................................................................................... 25

2.111   Settling Tort Claimants ......................................................................................... 25

2.112   Sharing Arrangement ............................................................................................ 25

2.113   Special Arbitrator .................................................................................................. 26

2.114   Special Projects ...................................................................................................... 26

2.115   Tier .......................................................................................................................... 27

2.116   Tier One Tort Claims ............................................................................................. 27

2.117   Tier Two Tort Claims............................................................................................. 27

2.118   Tier Three Tort Claims .......................................................................................... 28

2.119   Tier Four Tort Claims ........................................................................................... 28

2.120   Tier One Initial Distribution Amount .................................................................. 28

2.121   Tier Two Initial Distribution Amount .................................................................. 28

2.122   Tier Three Initial Distribution Amount ............................................................... 28

**TABLE OF CONTENTS**
**(continued)**

Page

2.123  Tier Four Initial Distribution Amount ................................................................. 28

2.124  Tort Claim ........................................................................................................... 28

2.125  Tort Claimant ...................................................................................................... 29

2.126  Tort Compromise Claim ..................................................................................... 29

2.127  Trust Administrative Expense Reserve ............................................................... 30

2.128  Trustee ................................................................................................................. 30

2.129  Unknown Claims Representative ......................................................................... 30

2.130  Unknown Tort Claimant ...................................................................................... 30

2.131  Unknown Tort Claims ......................................................................................... 30

2.132  Unknown Claims Reserve .................................................................................... 31

2.133  Unsecured Claim .................................................................................................. 31

2.134  Unsecured Creditor .............................................................................................. 31

2.135  VAP ..................................................................................................................... 31

2.136  Weighted Distribution Ratio ............................................................................... 32

ARTICLE 3 - UNCLASSIFIED CLAIMS ........................................................................... 33

3.1  Administrative Claims ............................................................................................ 33

3.2  Priority Unsecured Claims ...................................................................................... 33

3.3  Priority Tax Claims ................................................................................................. 33

3.4  Elimination of Claim ............................................................................................... 34

ARTICLE 4 - CLASSIFICATION OF CLAIMS .................................................................. 34

4.1  Classification ........................................................................................................... 34

4.2  Classes ..................................................................................................................... 34

ARTICLE 5 - TREATMENT OF CLASSES OF CLAIMS ................................................... 35

5.1  Priority Employee Unsecured Claims – Class 1 ..................................................... 35

5.2  Other Secured Claims – Class 4 .............................................................................. 35

5.3  Parish Guaranty Claims – Class 6 ........................................................................... 35

5.4  Insurance and Benefit Claims – Class 11 ................................................................ 35

ARTICLE 6 - TREATMENT OF CLASS 2 CLAIMS ........................................................... 36

6.1  Distribution ............................................................................................................. 36

6.2  Disputed Claims ...................................................................................................... 36

6.3  Retention of Liens ................................................................................................... 37

QBTUC\811017.00003\165375.1

6.4 Other Claims ........................................................................................... 37

6.5 Impairment ........................................................................................... 37

ARTICLE 7 - TREATMENT OF CLASS 3 CLAIMS ................................................ 37

7.1 Distribution ........................................................................................... 37

7.2 Retention of Liens ................................................................................. 37

7.3 Additional Collateral ............................................................................ 37

7.4 Impairment ........................................................................................... 37

ARTICLE 8 - TREATMENT OF CLASS 5 CLAIMS ................................................ 37

8.1 Distribution ........................................................................................... 37

8.2 Impairment ........................................................................................... 37

ARTICLE 9 - TREATMENT OF CLASS 7 CLAIMS ................................................ 38

9.1 Distribution ........................................................................................... 38

9.2 Impairment ........................................................................................... 38

ARTICLE 10 – TREATMENT OF CLASS 8 CLAIMS ............................................. 38

10.1 Distribution ........................................................................................... 38

10.2 Prepayment ........................................................................................... 39

10.3 Impairment ........................................................................................... 39

ARTICLE 11 – TREATMENT OF CLASS 9 CLAIMS ............................................. 39

11.1 Distribution ........................................................................................... 39

11.2 Impairment ........................................................................................... 39

ARTICLE 12 - TREATMENT OF CLASS 10 CLAIMS ........................................... 39

12.1 General Terms ...................................................................................... 39

12.2 Treatment of Settling Tort Claimants ................................................. 40

12.3 Special Provision Regarding California Tort Claims .......................... 42

12.4 Treatment of Tort Compromise Claims .............................................. 43

12.5 Treatment of Relationship Tort Claims .............................................. 44

12.6 Treatment of Unknown Tort Claims ................................................... 44

12.7 General .................................................................................................. 46

12.8 Treatment of Non-Settling Tort Claimants ........................................ 47

12.9 Treatment of Attorney's Fees of Tort Claimants including Unknown Tort Claimants ........................................................................................... 47

12.10 Treatment of Punitive Damages .......................................................... 48

# TABLE OF CONTENTS
## (continued)

Page

12.11    Impairment ................................................................................. 48

ARTICLE 13 - TREATMENT OF CLASS 12 CLAIMS ................................. 48

13.1    Distribution ................................................................................. 48

13.2    Impairment ................................................................................. 48

ARTICLE 14 - MEANS OF IMPLEMENTATION OF THE PLAN ................. 48

14.1    Litigation Protocol ...................................................................... 48

14.2    Funding on the Effective Date .................................................... 49

14.3    Funding After the Effective Date ................................................ 49

14.4    Procedure for Determination of Claims Other Than Tort Claims. ......... 49

14.5    Payments Effective Upon Tender ................................................ 50

14.6    Preservation of Debtor's Claims, Demands, And Causes of Action ......... 51

14.7    Prosecution of Certain Avoidance Actions ................................. 52

14.8    Special Provisions Governing Unimpaired Claims ..................... 52

14.9    Operative Documents .................................................................. 53

14.10   Return of Deposits ...................................................................... 53

14.11   Administrative Claims Bar Date .................................................. 53

14.12   Delivery Of Distributions ........................................................... 54

14.13   Limitation on De Minimis Payments ......................................... 54

ARTICLE 15 - DETERMINATION OF TORT CLAIMS ............................... 55

15.1    Criteria for Determining Validity of Tort Claims and Tiers ......... 55

15.2    Documents and Evidence to be Presented to the Special Arbitrator ...... 57

15.3    Adherence to Criteria ................................................................. 58

15.4    Notice of Allowance ................................................................... 58

ARTICLE 16 - TREATMENT OF EXECUTORY CONTRACTS ................... 59

16.1    Assumption and Rejection of Executory Contracts ................... 59

16.2    Claims Based on Rejection of Executory Contracts ................... 59

16.3    Indemnification of Members, Managers, Officers, and Employees ..... 59

ARTICLE 17 - CONDITIONS TO EFFECTIVE DATE ................................. 60

17.1    Conditions To Occurrence Of Effective Date ............................. 60

17.2    Debtor's Obligations to Cause Effective Date to Occur. Upon satisfaction
         of the conditions to the Effective Date, the following will occur: ......... 60

17.3    Waiver Of Conditions ................................................................. 61

QBTUC\811017.00003\165375.1

viii

| | | |
|---|---|---|
| 17.4 | Effect of Non-occurrence of Conditions | 61 |
| 17.5 | Merger; Choice of Law | 61 |
| 17.6 | Other Obligations of the Reorganized Debtor | 62 |
| **ARTICLE 18 - EFFECTS OF CONFIRMATION** | | 62 |
| 18.1 | Discharge | 62 |
| 18.2 | Vesting | 63 |
| 18.3 | Channeled Claims | 63 |
| 18.4 | Exculpation And Limitation Of Liability | 64 |
| 18.5 | Permanent Injunction Against Prosecution of Released and Channeled Claims | 65 |
| **ARTICLE 19 - MODIFICATION OF PLAN** | | 66 |
| **ARTICLE 20 - RETENTION OF JURISDICTION** | | 66 |
| 20.1 | In General | 66 |
| 20.2 | Plan Disputes And Enforcement | 67 |
| 20.3 | Further Orders | 67 |
| 20.4 | Governmental Units Or Regulatory Agencies | 67 |
| 20.5 | Final Decree | 68 |
| 20.6 | Appeals | 68 |
| 20.7 | Executory Contracts | 68 |
| 20.8 | Claims | 68 |
| 20.9 | Modification of the Plan | 68 |
| 20.10 | Failure of Court to Exercise Jurisdiction | 68 |
| **ARTICLE 21 - REORGANIZATION OF DIOCESE** | | 69 |
| 21.1 | Continued Corporate Existence and Vesting of Assets in the Reorganized Debtor | 69 |
| 21.2 | Management of Reorganized Debtor | 69 |
| 21.3 | Reorganization of Parishes | 69 |
| **ARTICLE 22 - GENERAL PROVISIONS** | | 70 |
| 22.1 | Extension Of Payment Dates | 70 |
| 22.2 | Notices | 70 |
| 22.3 | Closing of the Case | 70 |
| 22.4 | Interest | 71 |

Page

22.5    Additional Assurances ................................................................................ 71

22.6    Confirmation By Nonacceptance Method ................................................... 71

22.7    Withdrawal Of Plan .................................................................................... 71

22.8    Severability And Reformation .................................................................... 71

22.9    Prohibition Against Prepayment Penalties ................................................ 71

22.10   Fractional Dollars ...................................................................................... 72

22.11   Payment Of Statutory Fees And Filing of Quarterly Reports ................... 72

22.12   Reservation of Rights ................................................................................. 72

22.13   No Professional Fees or Expenses .............................................................. 72

22.14   Committee .................................................................................................. 72

22.15   Release of Unknown Claims Representative and Guardian ad Litem ........ 72

22.16   Headings ..................................................................................................... 73

22.17   Section 1146 Exemption ............................................................................ 73

22.18   Successors and Assigns .............................................................................. 73

QBTUC\811017.00003\165375.4

**ARTICLE 1**

**INTRODUCTION**

The Roman Catholic Church of the Diocese of Tucson *aka* the Diocese of Tucson, an Arizona corporation sole ("Debtor" or "Diocese"), the Debtor in the above-captioned Chapter 11 reorganization case (the "Reorganization Case"), proposes the following Third Amended and Restated Plan of Reorganization (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code. For purposes hereof, any term used in an initially capitalized form in the Plan will have the defined meaning ascribed to it in either Bankruptcy Code § 101 or Article Two hereof unless the context otherwise requires.

ALL CREDITORS ARE ENCOURAGED TO CONSULT THE DISCLOSURE STATEMENT (AS DEFINED BELOW) BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. AMONG OTHER INFORMATION, THE DISCLOSURE STATEMENT CONTAINS DISCUSSIONS OF THE DEBTOR, THE HISTORICAL BACKGROUND OF THE REORGANIZATION CASE AND THE PREPETITION PERIOD, THE PROJECTIONS GERMANE TO THE PLAN AND THE POST-CONFIRMATION OPERATIONS OF THE DEBTOR AND THE REORGANIZED DEBTOR, AND A SUMMARY AND ANALYSIS OF THE PLAN. NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT OR BY THE BANKRUPTCY CODE FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

The Court has scheduled the Confirmation Hearing on July 11, 2005.

**ARTICLE 2**

**DEFINITIONS**

2.1    Scope Of Definitions. For purposes of the Plan, and except as expressly provided otherwise herein or unless the context otherwise requires, all of the defined terms stated in Article 2 will have the meanings hereinafter stated. For purposes of the Plan and such defined

terms, the singular and plural uses of such defined terms and the conjunctive and disjunctive uses thereof will be fungible and interchangeable (unless the context otherwise requires); and the defined terms will include masculine, feminine, and neuter genders. The words "hereof," "hereto," "herein," and "hereunder" and words of similar import, when used in the Plan, will refer to the Plan as a whole. The defined terms stated in Article 2 also are substantive terms of the Plan, and Article 2 will be deemed incorporated throughout the rest of the Plan to convey the substantive provisions included in the defined terms. Any term used in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules will have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules. Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan, as the same may be amended, waived, or modified from time to time. The headings and captions of the Plan (including the headings of the defined terms) are for convenience of reference only and will not limit or otherwise affect the provisions hereof. Accordingly, the defined terms are as follows:

2.2     <u>Additional Distribution</u>. This term will refer to and mean the distribution, if any, to be made to the holders of Allowed Tort Claims from the Unknown Claims Reserve either pursuant to order of the Court upon application of the Trustee, the Committee or the Reorganized Debtor or upon termination of the Unknown Claims Reserve.

2.3     <u>Additional Distribution Amount</u>. This term will refer to and mean the amount of the Additional Distribution which is calculated by: (i) deducting from the amount available for distribution the applicable amount of the Sharing Arrangement; and (ii) applying the Weighted Distribution Ratio to the remaining amount to determine the amount of each Allowed Tort Claim for each Tier.

2.4     <u>Administrative Claim</u>. This term will refer to and mean: (a) every cost or expense of administration of the Reorganization Case which is allowable pursuant to Bankruptcy Code § 503, including any actual and necessary postpetition expenses of preserving the Estate; (b) any

actual and necessary postpetition expenses of operating the Diocese; (c) all Professional Charges approved by the Bankruptcy Court pursuant to interim and final allowances in accordance with Bankruptcy Code §§ 330, 331, and 503(b); (d) every Property Tax Administrative Claim; and (e) all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

        2.5    <u>Allowed Claim</u>.  This term will refer to and mean every Claim against the Debtor: (a)(i) as to which a Proof of such Claim has been filed by the Bar Date or, if such Claim arises from the rejection of an Executory Contract pursuant to the Plan, on or before the first Business Day which is thirty (30) days after the Confirmation Date, or (ii) which the Debtor has scheduled as liquidated in amount and undisputed; and in either event: (b)(i) as to which no objection to the allowance of such Claim has been filed within any applicable time period fixed by the Bankruptcy Court or the Plan, or (ii) as to which the order allowing such Claim has become a Final Order, (iii) as to which the Special Arbitrator has made a ruling that the Tort Claim, Relationship Tort Claim or Unknown Tort Claim should be Allowed, or (iv) if an appeal has been timely taken, as to which a mandate of the appellate court has issued allowing such Claim and as to which no further appeal is allowed pursuant to the Bankruptcy Code, the United States Code, or applicable federal or Bankruptcy Rules.  If any Claim, or the Creditor holding such Claim, is subject to any defense, set off, counterclaim, recoupment, or other adverse claim of any kind of the Debtor, the Reorganized Debtor or the Trustee (if applicable), that Claim will be deemed a Disputed Claim, unless such adverse claim is acknowledged by the Debtor in the Plan or in accordance with the terms of the Plan; and it will not become an Allowed Claim unless and until all such matters are resolved or adjudicated fully and finally, with all appellate rights and remedies having been exhausted except as provided in the Settlement Trust Agreement or the Litigation Trust Agreement.  Unless any earlier time is fixed by order of the Bankruptcy Court, except with respect to Tort Claims, Unknown Tort Claims and Relationship Tort Claims, and subject to amendment rights and the relation back of amendments under applicable federal or

state procedural rules, any objection to the allowance of any Claim and the assertion of any defense, set off, counterclaim, recoupment, or other adverse claim of any kind of the Debtor or the Reorganized Debtor must be filed on or before the first Business Day which is one hundred eighty (180) days after the Effective Date.

2.6    Assets.  This term will refer to and mean each and every item of property and interest of the Debtor therein as of the Effective Date, whether tangible or intangible, legal or equitable, liquidated or unliquidated, and includes without limitation: (a) all Cash; (b) all Avoidance and Contribution Actions; (c) all Insurance Actions; (d) any and all amounts owed to the Debtor, including accounts receivable and contract rights, whether due prior or subsequent to the Petition Date; (e) any other right, claim, cause of action, or defense, whether arising by statute or common law, and whether arising under the laws of the United States, other countries, or applicable state or local law, including, but not limited to all Insurance Actions; (f) all of the Debtor's books, records, and privileges; and (g) all contracts, agreements, licenses, and leases.

2.7    Avoidance Actions.  This term will refer to and mean all actions pursuant to Bankruptcy Code §§ 544, 547 and 548 and any other actions provided for under applicable law that allow a debtor, a trustee or a debtor in possession, among other things, to avoid certain transfers.

2.8    Avoidance Actions Fund.  This term will refer to and mean $100,000 to be paid or reserved from the Settlement Trust to the Unknown Claims Representative within thirty (30) days after the Effective Date to be used to investigate and prosecute any Avoidance Actions assigned to the Unknown Claims Representative pursuant to the Plan.

2.9    Ballot.  This term will refer to and mean the ballot accompanying the Plan and Disclosure Statement: (i) which will be sent to all Creditors who hold Claims in any Class entitled to vote on the Plan; (ii) on which such Creditors will indicate their vote to accept or reject the Plan; (iii) pursuant to which any Creditors will elect to have their Claim treated as a General Unsecured Convenience Claim; (iv) pursuant to which any Tort Claimants will make the election

to opt out of the Settlement Trust and into the Litigation Trust; and (v) pursuant to which a Tort Claimant who has received written notice from the Diocese or the Committee that he or she is eligible to make an election to have his or her Tort Claim treated as a Tort Compromise Claim. The Ballot, to the extent necessary, will be approved by the Bankruptcy Court.

2.10    Bankruptcy Code.  This term will refer to and mean Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., including any amendments thereto, which is in effect during the Reorganization Case.

2.11    Bankruptcy Court or Court.    These terms are completely synonymous and interchangeable and will refer to and mean the United States Bankruptcy Court for the District of Arizona, Tucson Division, or such other court which exercises jurisdiction over part or all of the Reorganization Case, to the extent that the reference of part or all of the Reorganization Case is withdrawn.

2.12    Bankruptcy Rules.  This term will refer to and mean the Federal Rules of Bankruptcy Procedure promulgated under Title 28, United States Code, § 2075, as they may be amended from time to time during the Reorganization Case.

2.13    Bar Date.  This term will refer to and mean April 15, 2005, the date established by Order of the Court entered November 5, 2004, as the date by which a Claim, in order to be timely and considered for purposes of distribution under the Plan, was to have been filed by the filing of a Proof of Claim with the Bankruptcy Court.

2.14    Barred Tort Claims.  This term will refer to and mean every Tort Claim that was timely filed on or before the Bar Date but is otherwise barred by an applicable statute of limitations or other legal defense or failure, every Tort Claim for which a Proof of Claim was untimely filed after the Bar Date and every Tort Claim that has been Disallowed.

2.15    Business Day.  This term will refer to and mean every day except Saturdays, Sundays, federal holidays, Catholic holidays recognized and observed by the Diocese, and Arizona state holidays observed by the Bankruptcy Court.

QBTUC\811017.00003\1653751.4

2.16    California Tier.  This term will refer to and mean the Tier into which each California Tort Claim will be placed when and as it is determined to be an Allowed Tort Claim.

2.17    California Tort Claimant.  This term will refer to and mean every Tort Claimant: (i) who asserts a Tort Claim against the Debtor; (ii) who does not assert that the statute of limitations under Arizona law is tolled because of repressed memory or other incapacity; (iii) who asserts that the Claim can be brought against the Diocese pursuant to the change in the statute of limitations passed by the California legislature in 2002; and (iv) whose action against the Diocese was pending in the California state court prior to its removal by the Diocese to the Bankruptcy Court.

2.18    California Tort Claims.  This term will refer to and mean the Tort Claim of a California Tort Claimant.

2.19    California Tier Initial Distribution Amount.  This term will refer to and mean the sum of $300,000 which will be the amount of the Initial Distribution to be distributed to the holder of an Allowed California Tort Claim on the later of the Effective Date or the Claim Payment Date.

2.20    Canon Law.  This term will refer to and mean the Code of Canon Law applicable to the Roman Catholic Church which is, for the most part:  (i) a set of norms created to bring order to the life of the ecclesial community; (ii) articulated and promulgated by those who are entrusted with the community's care; and (iii) to serve the common good, thus imposing obligations and establishing legal bonds from which certain rights, duties and interests flow.

2.21    Cash.  This term will refer to and mean cash, cash equivalents, bank deposits, and negotiable instruments payable on demand.

2.22    Channeled Claims.  This term will refer to and mean the Claims of the Tort Claimants, Unknown Tort Claimants and Relationship Tort Claimants against the Participating Third Parties, the Settling Insurers or the Settling Parties which have been or may be Allowed and which are channeled to and satisfied pursuant to the Settlement Trust or the Litigation Trust.

2.23    <u>Chapter 11 Professionals</u>.    This term will refer to and mean the Debtor's Professionals, the Committee Professionals, the Unknown Claims Representative, the Guardian ad Litem and the Representatives' Professionals, wherever they are referred to collectively in the Plan.

2.24    <u>Claim</u>.    This term will refer to and mean "claim" as defined in Bankruptcy Code § 101(5).

2.25    <u>Claim Payment Date</u>.    This term will refer to and mean, with respect to, every Claim which is not an Allowed Claim as of the Effective Date, but which later becomes an Allowed Claim by a Final Order or determination by the Special Arbitrator, the date such Claim will be paid which will be no less than thirty (30) days after the Claim is Allowed unless a different date for payment is specified under the Plan.

2.26    <u>Class</u>.    This term will refer to and mean each of the classifications of Claims described in Article 3 of the Plan.

2.27    <u>Co-Defendants</u>.    This term will refer to and mean the entities and individuals who are co-defendants with the Diocese in the various state or federal court actions involving allegations of sexual abuse or against whom informal claims have been asserted by a Tort Claimant for sexual abuse by clergy, workers or volunteers working in the Diocese or otherwise associated with the Diocese.

2.28    <u>Committee</u>.    This term will refer to and mean the Official Committee of Tort Creditors appointed by the United States Trustee on October 14, 2004 pursuant to Bankruptcy Code § 1102.

2.29    <u>Committee's Professionals</u>.    This term will refer to and mean the law firm of Stinson Morrison Hecker LLP and all other professionals which the Committee may retain to provide professional services for a specified purpose, all in accordance with Bankruptcy Code §§ 327(a) and 327(e) and as approved by the Bankruptcy Court.

QBTUC\811017.00003\165375.1

2.30   Confirmation Date.  This term will refer to and mean the date on which the Bankruptcy Court enters the Confirmation Order on the Court's docket.

2.31   Confirmation Hearing.  This term will refer to and mean the hearing held by the Bankruptcy Court regarding confirmation of the Plan, as such may be continued from time to time.

2.32   Confirmation Order.  This term will refer to and mean the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code §1129 and which will, among other things:

(a)   provide that the settlement provisions and other provisions in Article 12 of the Plan and the Settlement Trust are binding on all Settling Tort Claimants;

(b)   provide that, pursuant to the reasoned judgment of the Unknown Claims Representative and the Guardian ad Litem, all Unknown Tort Claims will be heard and determined by the Special Arbitrator in accordance with the provisions of the Plan;

(c)   provide that all Unknown Tort Claimants whether or not they file a Proof of Claim are bound by the provisions of the Plan;

(d)   approve and provide for the implementation of the other Plan Documents;

(e)   approve and incorporate the Settlement Trust Agreement and the Litigation Trust Agreement, if any, as part of the Plan; and

(f)   effect the release of certain Claims and the injunction against prosecution of the released Claims or Channeled Claims by any Creditors or parties in interest against Participating Third Parties, Settling Insurers, Settling Parties, the Diocese and others described in Article 18 of the Plan, and provide for the channeling injunction with respect to Claims against Participating Third Party, Claims against Settling Insurers and others as set forth in Article 19 of the Plan.

2.33   <u>Contingent</u>.  This term will refer to and mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which or the obligation to make payment on which is dependent upon a future event that may or may not occur.

      (a)     <u>Contribution Actions</u>.  This term will refer to and mean any rights of the Diocese for indemnification or contribution against any Person who is or may be liable to the Diocese or any Person on account of any Claims which are or may be asserted against the Diocese.

2.34   <u>Creditor</u>.  This term will refer to and mean "creditor" as defined in Bankruptcy Code § 101(10).

2.35   <u>Debtor or Diocese</u>.   These terms (which are completely synonymous and interchangeable) will refer to and mean the Roman Catholic Church of the Diocese of Tucson, in all of its capacities, including, but not limited to:  (a) the Estate of the Diocese, and (b) the Diocese as the representative of the Estate.

2.36   <u>Debtor's Professionals</u>.  This term will refer to and mean:

      The law firm of Quarles & Brady Streich Lang LLP;

      The law firm of Gust Rosenfeld PLC;

      The law firm of Thomas A. Zlaket P.L.L.C.

      The law firm of Goering, Roberts, Rubin, Brogna, Enos & Hernandez, P.C.

      The accounting firm of Keegan, Linscott & Kenon P.C.; and

any and all other similar professionals which the Debtor or the Reorganized Debtor retains to assist in the conduct of the Reorganization Case or to provide professional services for a specified purpose, all in accordance with Bankruptcy Code §§ 327(a) and 327(e).

2.37   <u>Diocese Real Property</u>.  This term will refer to and mean the real property owned by the Diocese:

      (a)     in fee simple;

      (b)     for which the Diocese has legal and equitable title;

QBTUC\811017.00003\165375.1

(c)     which is part of the temporal goods of the Diocese as a juridic person;

(d)     which the Diocese is not holding in trust for any other Person;

(e)     which the Diocese is selling in order to contribute to the Fund; and

(f)     which consists of certain vacant land designated by the Diocese for future parish sites and certain excess real property not otherwise utilized for Diocesan purposes <u>but</u>, <u>excluding</u>, any Parish Real Property.

2.38    <u>Disallowed</u>.  This term, when referring to a Claim, will refer to and mean a Claim or any portion of a Claim which has been disallowed or expunged by a Final Order or which has been denied or disallowed by the Special Arbitrator.

2.39    <u>Disclosure Statement</u>.  This term will refer to and mean the Third Amended and Restated Disclosure Statement dated May 25, 2005, presented by the Diocese with respect to the Plan, including, but not limited to, any restatements, amendments, modifications, and additional disclosures (if any) provided by the Diocese to comply with Bankruptcy Code § 1127 or orders of the Bankruptcy Court and which has been approved by the Bankruptcy Court.

2.40    <u>Disputed Claim</u>.  This term will refer to and mean every Claim, or portion thereof, which is not an Allowed Claim, to which an objection (formal or informal) has been made and which has not yet been Disallowed.

2.41    <u>Disputed Claims Reserve</u>.  This term will refer to and mean the reserve to be established on the Effective Date (and, thereafter, to be maintained as necessary) to hold in one or more segregated accounts Cash or other Assets equal to the aggregate amounts thereof that would have been distributed on an applicable Claim Payment Date on account of a Disputed Claim.  In establishing the Disputed Claims Reserve on the Effective Date, all Disputed Claims may be estimated by the Reorganized Debtor at an amount equal to: (a) such lesser amount that is agreed to by the holder of such Claim; (b) the amount claimed if the Court has not made an estimation of such Claim or the holder of such Claim has not agreed to a lesser amount; or (c) the amount, if any, determined by the Court by Final Order pursuant to Bankruptcy Code § 502(c) as an estimate

1    for distribution purposes.  In any event, the Estimated Amount will be the maximum amount of

2    the Claim for distribution purposes under the Plan.  The Disputed Claims Reserve may be

3    adjusted from time to time after the Effective Date by the Reorganized Debtor after taking into

4    account the anticipated recovery fraction which has been or is anticipated to be paid to the holders

5    of Allowed Claims, after giving effect to the amount of the Disputed Claims as determined

6    pursuant to this provision.  The Disputed Claim Reserve will not apply to the Settlement Trust,

7    the Litigation Trust, Unknown Tort Claims, Relationship Tort Claims or Tort Claims, each of

8    which will be governed by the terms of the Settlement Trust Agreement, the Litigation Trust

9    Agreement and other provisions of the Plan, respectively.

10        2.42    District Court.  This term will refer to and mean the United States District Court,

11   District of Arizona, Tucson Division.

12        2.43    Effective Date.  This term will refer to and mean the first Business Day on which

13   the conditions specified in Section 17.1 of the Plan have been satisfied or waived.

14        2.44    Escrow Agent.  This term will refer to and mean Biltmore Associates, LLC, the

15   agent under that certain non-interest bearing Promissory Note dated March 25, 2002, in the

16   original principal sum of $3,000,000 which represents the deferred portion of the settlement

17   amount agreed to as part of the settlement in 2002 of certain abuse cases.

18        2.45    Estate.  This term will refer to and mean the bankruptcy estate of the Diocese

19   created under Bankruptcy Code § 541.

20        2.46    Estimated Amount.  This term will refer to and mean the maximum amount at

21   which the Court or the District Court, pursuant to Bankruptcy Code § 502(c), at the request of the

22   Diocese or any other party with standing, estimates any Claim or class of Claims against the

23   Debtor that is Contingent, unliquidated or Disputed, including, without limitation, any Tort

24   Claim, any Relationship Tort Claim, any Unknown Tort Claim or any Other Tort and Employee

25   Claim or class thereof for the purpose of: (a) allowance; (b) distribution; (c) confirming the Plan

26   pursuant to Bankruptcy Code § 1129; (d) voting to accept or reject the Plan pursuant to

Bankruptcy Code § 1126 and Bankruptcy Rule 3018(a); or (e) any other proper purpose. Notwithstanding the foregoing, any such estimation may include assigning points or values to a particular Class or Tier for purposes of: (a) allowance; and (b) determining votes to accept or reject the Plan. Such Estimation of a Claim for purposes of voting on the Plan will not establish the valuation of the Claim or Class of Claims for distribution purposes.

2.47 <u>Executory Contract</u>. This term will refer to and mean every unexpired lease and other contract which is subject to being assumed or rejected by the Debtor under Bankruptcy Code § 365 pursuant to the Plan or pursuant to separate motion.

2.48 <u>Excess Distribution</u>. This term will refer to and mean one-half (1/2) of the remainder of the Initial Contribution after payment of all Allowed Tort Claims of Settling Tort Claimants, establishment of the Avoidance Fund, payment of all Allowed Tort Compromise Claims and establishment of so much of the Trust Administrative Expense Reserve as the Trustee, the Debtor and the Committee determine should be reserved.

2.49 <u>Excess Distribution Amount</u>. This term will refer to and mean the amount of the Excess Distribution which is calculated by applying the Weighted Distribution Ratio to the amount of the Excess Distribution to determine the amount of each Allowed Tort Claim for each Tier.

2.50 <u>Final Order</u>. This term will refer to and mean any order of the Bankruptcy Court as to which: (a) the time for appeal has expired and no appeal has been timely taken; (b) any appeal that has been timely taken has been finally determined or dismissed; or (c) an appeal has been timely taken but such order has not been stayed.

2.51 <u>Foresters</u>. This term will refer to and mean the Catholic Order of Foresters.

2.52 <u>Foresters Unsecured Claim</u>. This term will refer to and mean every Unsecured Claim of Foresters against the Diocese arising out of the lending relationship between the Diocese and Foresters where the Diocese is the primary obligor, including all interest, costs and other

QBTUC\811017.00003\1653751.1

charges properly chargeable by Foresters pursuant to the applicable documents evidencing the Foresters Unsecured Claim, but, specifically _excluding_ any Parish Guaranty Claims.

2.53  _Fund_.  This term will refer to and mean the fund to be established by the Diocese which will be transferred to the Settlement Trust and allocated pursuant to the Plan among the Settlement Trust, the Unknown Claims Reserve and, if necessary, the Litigation Trust.  The Fund, which will not be fully funded on the Effective Date and will be funded over time and will consist of all of the following:

(a)  On the Effective Date, the net proceeds from the sale of the Diocese Real Property in an amount of not less than $3,200,000 or, if all of the Diocese Real Property has not been sold or proceeds received by the Effective Date, then the net proceeds that have been received by the Diocese on the Effective Date;

(b)  After the Effective Date, the proceeds from the sale of the Diocese Real Property if all parcels of Diocese Real Property have not been sold or proceeds received on or before the Effective Date;

(c)  Payments from the Participating Third Parties;

(d)  The Hartford Settlement Proceeds;

(e)  Payments from the Settling Insurers; and

(f)  Proceeds from Insurance Action Recoveries.

Notwithstanding the foregoing, the payments to the Fund will be subject to the Sharing Arrangement pursuant to the terms of the Plan.

2.54  _General Unsecured Convenience Claim_.  This term will refer to and mean an Unsecured Claim in an amount of $500 or less, inclusive of interest accrued thereon after the Petition Date through the later to occur of the Effective Date or the Claim Payment Date; _provided, that,_ if the holder of an Unsecured Claim in an amount greater than $500 makes an election to reduce such Claim to $500, such Claim will be treated as a General Unsecured Convenience Claim for all purposes.  Such election will be made on the Ballot, completed and

returned within the time fixed by order of the Court. Making this election will be deemed to be a waiver by such electing holder of any right to participate as a General Unsecured Claim in Class 8 as to any and all Claims held by such holder.

2.55    General Unsecured Claim. This term will refer to and mean every Unsecured Claim against the Diocese (including, but not limited to, every such Claim arising from the rejection of an Executory Contract and every Claim which is the undersecured portion of any Secured Claim), which is not an Administrative Claim, a Priority Unsecured Claim, a Priority Tax Claim, a General Unsecured Convenience Claim, a Parish Loan Claim, a Tort Claim, a Relationship Tort Claim, a Tort Compromise Claim, an Unknown Tort Claim or a Penalty Claim.

2.56    Guardian ad Litem. This term will refer to and mean Charles L. Arnold, the representative appointed by the Court by order entered October 27, 2004, pursuant to motion of the Diocese requesting that the Court appoint a representative to represent the interests of those Tort Claimants who are or may be minors on the Effective Date of the Plan.

2.57    Hartford. This term will refer to and mean Hartford Fire Insurance Company, First State Insurance Company, The Hartford Financial Services Group, Inc., and each of their past, present, and future subsidiaries, parents, affiliates, associated corporations and entities, employees, officers, directors, shareholders, principals, parents, agents, attorneys, representatives, predecessors, successors and assigns.

2.58    Hartford Settlement. This term will refer and mean the settlement between the Diocese and Hartford as set forth in the "Settlement Agreement and Release" dated as of April 8, 2005 for, among other things, the sale and release of certain insurance policies by the Diocese to Hartford as approved by the Court by Order entered May 26, 2005.

2.59    Hartford Settlement Proceeds. This term will refer to and mean the proceeds from the Hartford Settlement received by the Diocese pursuant to the terms of the Hartford Settlement.

2.60    Initial Contribution. This term will refer to and mean the sum of not more than $15,700,000.

QBTUC\811017.00003\1653751.4

2.61    Initial Distribution.  This term will refer to and mean the initial payment due under the Plan so that each Tort Claimant with an Allowed Tort Claim on the Effective Date or the Claim Payment Date will receive the Tier One Initial Distribution Amount, the Tier Two Initial Distribution Amount, the California Tier Initial Distribution Amount, the Tier Three Initial Distribution Amount or the Tier Four Initial Distribution Amount.  The Initial Distribution is the minimum amount to be paid to a Tort Claimant with an Allowed Claim and is not nor will it be deemed to be a determination of the value of each Allowed Tort Claim.

2.62    Insurance Actions.  This term will refer to and mean all claims, causes of action and enforceable rights of the Debtor against any Insurance Company, including, but not limited to, those arising from or related to: (a) any such Insurance Company's failure to provide Insurance Coverage under any Insurance Policy; (b) the refusal of any Insurance Company to compromise and settle any Claim insured under any such Insurance Policy; or (c) the interpretation or enforcement of the terms of any such Insurance Policy and Insurance Coverage.

2.63    Insurance Action Recoveries.  This term will refer to and mean the rights of the Debtor to any and all proceeds, including any interest or income earned thereon, and other relief from: (a) any award, judgment, relief, or other determination entered or made as to any Insurance Actions; (b) any and all amounts payable by a Settling Insurer under any insurance settlement agreement; and (c) any and all proceeds of any Insurance Policy paid or payable with respect to Tort Claims which will be assigned to the Settlement Trust and, if necessary, the Litigation Trust, in accordance with the terms of the Plan and subject to the Sharing Arrangement.

2.64    Insurance and Benefit Claims.  This term will refer to and mean any Unsecured Claim for property damage, general liability or workers compensation for which the Diocese is or may be liable whether arising from tort (other than Tort Claims, Relationship Tort Claims or Unknown Tort Claims), contract or workers compensation, for which there is insurance coverage, including, but not limited to, any Claim for which the Diocese has a self-insured retention and any Claims against the Diocese arising from or related to the Lay Employees Pension Plan.  In all

events, the Insurance and Benefit Claims specifically <u>exclude</u> any Tort Claims, Relationship Tort Claims and Unknown Tort Claims.

2.65   <u>Insurance Company</u>.  This term will refer to and mean any insurance company or insurance broker providing an Insurance Policy to the Debtor for liability arising from or related to Tort Claims.

2.66   <u>Insurance Coverage</u>.  This term will refer to and mean the insurance coverage under any Insurance Policy which insures liability of the Diocese, a Parish or any other affiliated entity for Tort Claims which coverage has not been reduced to a settlement.

2.67   <u>Insurance Policy</u>.  This term will refer to and mean any general liability insurance or sexual misconduct policy naming the Diocese, a Parish or an affiliated entity as an insured in effect on or before the Confirmation Date upon which notice of any Tort Claim has been given to any applicable Insurance Company.

2.68   <u>Litigation Trust</u>.  This term will refer to and mean the trust to be established pursuant to the Litigation Trust Agreement if there are any Non-Settling Tort Claimants.  The Litigation Trust will be established for:

(a)   receiving, holding and investing funds provided pursuant to the Litigation Trust Agreement;

(b)   issuing payments and disbursing funds as provided in the Litigation Trust Agreement;

(c)   participating in the litigation as the defendant for any Tort Claimant who opts to have his or her Tort Claim liquidated through litigation;

(d)   paying the costs, fees and expenses of the Trustee from the funds of the Litigation Trust; and

(e)   paying the costs of such litigation from the funds of the Litigation Trust.

The Litigation Trust will qualify to be a "Qualified Settlement Fund" pursuant to applicable provisions of the Internal Revenue Code.

2.69 <u>Litigation Trust Agreement</u>. This term will refer to and mean the agreement between the Reorganized Debtor and the Trustee of the Litigation Trust to be established pursuant to Article 12 of the Plan, if necessary, and pursuant to which the Litigation Trust will be established and governed.

2.70 <u>Litigation Trust Fund</u>. This term will refer to and mean ten percent (10%) of the Initial Contribution to be paid to the Trustee from the Settlement Trust after the Effective Date to establish the Litigation Trust if there are any Non-Settling Tort Claimants unless the Bankruptcy Court determines that a lesser amount is sufficient to fund the Litigation Trust.

2.71 <u>Litigation Protocol</u>. This term will refer to and mean the litigation procedures described in Section 14.1 of the Plan and in the Litigation Trust Agreement.

2.72 <u>Non-settling Tort Claimants</u>. This term will refer to and mean every Tort Claimant who affirmatively elects, on the Ballot, to opt out of the Settlement Trust and have his or her Tort Claim liquidated by a jury (if available and not waived pursuant to applicable law) or by the Bankruptcy Court or, if the reference is withdrawn upon proper and timely motion by a Non-Settling Tort Claimant pursuant to a Final Order, then by the District Court, with any such judgment, when it becomes a Final Order, being treated and paid pursuant to the terms of the Litigation Trust Agreement.

2.73 <u>Other Tort and Employment Claims</u>. This term will refer to and mean any and all Claims, demands, suits, causes of action, proceedings or any other rights or asserted right to payment heretofore, now or hereafter asserted against the Debtor, whether or not reduced to judgment, based upon or in any manner arising from acts or failure to act by the Debtor which has allegedly resulted in injury asserted by an employee of the Diocese or other Person pursuant to applicable state or federal law, <u>but</u> <u>excluding</u> Tort Claims, Relationship Tort Claims, Unknown Tort Claims, Claims of employees entitled to priority pursuant to Bankruptcy Code § 507 and Insurance and Benefit Claims.

2.74 <u>Parish</u>. This term will refer to and mean that certain community of church members within the territorial jurisdiction of the Diocese whose pastoral care is entrusted to a pastor under authority of the Bishop of the Diocese. Each Parish is a separate juridic person under Canon Law and, may be, among other things, an unincorporated association under applicable state law.

2.75 <u>Parish Guaranty Claims</u>. This term will refer to and mean every Contingent Unsecured Claim of any Creditor arising out of a guaranty by the Diocese of an obligation of a Parish to such Creditor, including all interest, attorneys' fees and other costs and charges to which such Creditor might be entitled pursuant to the terms of any such guaranties.

2.76 <u>Parish Loan Claims</u>. This term will refer to and mean each and every Unsecured Claim of a Parish for a loan made by a Parish to the Diocese which is outstanding on the Petition Date, including all interest, costs, expenses and other charges which are part of a Parish Loan Claim but excluding any custodial funds held and administered by the Diocese for a Parish which are not property of the Estate.

2.77 <u>Parish Monthly Payment</u>. This term will refer to and mean the monthly payment of $44,738 which includes an amortization of principal and interest at the rate of two and one-half percent (2.5%) per annum to be paid by the Diocese on a monthly basis until the Parish Loan Claims are paid in full.

2.78 <u>Parish Real Property</u>. This term will refer to and mean all real property owned by a Parish, including real property:

        (a) for which the Diocese holds bare legal title;

        (b) in which the Diocese has no beneficial, equitable or other proprietary interest;

        (c) in which the Parish for whose benefit such real property is held has all of the equitable, proprietary and beneficial interest; and

1          (d)        which is part of the temporal goods of the Parish as a juridic person under
2    Canon Law.

3          2.79    Participating Third Parties.  This term will refer to and mean any Co-Defendant or
4    any other Person, including, but not limited to, the Parishes who contribute funds to the Estate to
5    be used to pay Allowed Tort Claims (including Relationship Tort Claims and Unknown Tort
6    Claims) in exchange for and in consideration of, among other things, the channeling injunction
7    provided for in Section 18.5 of the Plan pursuant to an agreement approved by the Bankruptcy
8    Court.

9          2.80    Penalty Claims.  This term will refer to and mean any Claims for any fine, penalty,
10   forfeiture, multiple damages, punitive damages, or exemplary damages not meant to compensate
11   the claimant for actual pecuniary loss.

12         2.81    Person.  This term will refer to and mean "person" as defined in Bankruptcy
13   Code § 101(41).

14         2.82    Petition Date.  This term will refer to and mean September 20, 2004, which is the
15   filing date of the voluntary Chapter 11 petition commencing the Reorganization Case.

16         2.83    Plan.  This term will refer to and mean the "Debtor's Third Amended and Restated
17   Plan Of Reorganization" dated May 25, 2005, and every restatement, amendment, or modification
18   thereof, if any, filed by the Debtor.

19         2.84    Plan Documents.  This term will refer to and mean the Settlement Trust
20   Agreement, the Litigation Trust Agreement, if any, the pledge agreement for the Restricted St.
21   Augustine Account and all other documents and exhibits as the same may be amended, modified,
22   supplemented, or restated from time to time, that aid in effectuating the Plan, which documents
23   and exhibits will be filed by the Debtor with the Court on or before twenty (20) days prior to the
24   Confirmation Hearing or such other date as determined by the Court.

25

26

2.85    Post-Effective Date Secured Tax Claims.  This term will refer to and mean every whole or prorated portion of a Secured Tax Claim which arises on or after the Effective Date, and which will be paid in the ordinary course of business of the Reorganized Debtor.

2.86    Prepetition Date Secured Tax Claims.  This term will refer to and mean every whole or prorated portion of a Secured Tax Claim which arises before and up to the Petition Date.

2.87    Priority Employee Unsecured Claim.  This term will refer to and mean every Unsecured Claim of an employee of the Diocese for vacation or sick leave pay which is otherwise entitled to priority pursuant to Bankruptcy Code § 507(a)(3)(A).

2.88    Priority Tax Claim.  This term will refer to and mean every Unsecured Claim or portion thereof which is entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

2.89    Priority Unsecured Claim.  This term will refer to and mean every Unsecured Claim or portion thereof which is not an Administrative Claim, a Priority Tax Claim or a Priority Employee Unsecured Claim and which is entitled to priority under any applicable provision of Bankruptcy Code § 507.

2.90    Pro Rata.  This term will refer to and mean proportionate, and when applied to a Claim means that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of the consideration distributed on account of all Allowed Claims in such Class.

2.91    Professional Charges.  This term will refer to and mean the allowed interim and final professional fees and expenses charged by the Chapter 11 Professionals.

2.92    Property Tax Administrative Claim.  This term will refer to and mean every Claim of any state or local governmental unit which is an Administrative Claim for unpaid real property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes, and every prorated portion thereof arising on and after the Petition Date until the Effective Date.

2.93    Property Tax Claims.  This term will refer to and mean collectively:  (a) every Property Tax Administrative Claim; (b) every Prepetition Date Secured Tax Claim; and (c) every Post-Effective Date Secured Tax Claim.

2.94    Property Tax Claims Proration.  This term will refer to and mean the proration of Property Tax Claims as of the Effective Date, so that:  (a) Post-Effective Date Secured Tax Claims will be paid by the Reorganized Debtor in the ordinary course of its business; (b) Prepetition Date Secured Tax Claims will be paid by the Debtor or the Reorganized Debtor as provided for Class 2 Claims under the Plan; and (c) Property Tax Administrative Claims will be paid by the Debtor or the Reorganized Debtor as provided for Administrative Claims under the Plan.

2.95    Regina Cleri Property.  This term will refer to that certain parcel of real property located at on east 22nd Street in Tucson, Arizona, which is the collateral for the Escrow Agent Secured Claim and which is owned by the St. Augustine High School Corporation.

2.96    Relationship Tort Claimant.  This term will refer to and mean a spouse or parent of a Tort Claimant who has filed a timely Proof of Claim.

2.97    Relationship Tort Claims.  This term will refer to and mean every Claim of a Relationship Tort Claimant who is not the direct victim of abuse but who asserts a Tort Claim against the Debtor as a Relationship Tort Claimant where the direct victim to whom the Relationship Tort Claimant is parent or spouse timely filed a Tort Claim prior to the Bar Date.

2.98    Relationship Tort Claim Distribution Amount.  This term will refer to and mean five percent (5%) of the Initial Distribution Amount made to the Tort Claimant with an Allowed Tort Claim who is the son, daughter or spouse of the Relationship Tort Claimant subject to limitations on the amount of distribution to which a Relationship Tort Claimant is entitled as set forth in Section 12.5 of the Plan.

2.99 <u>Reorganization Case</u>.  This term will refer to and mean the case under Chapter 11 of the Bankruptcy Code which was commenced by the filing of a voluntary Chapter 11 petition by the Diocese on the Petition Date.

2.100 <u>Reorganized Debtor</u>.  This term will refer to and mean the Diocese, from and after the Effective Date.  Unless otherwise expressly stated or the context otherwise requires, references to "the Debtor and the Reorganized Debtor" and references to "the Debtor or the Reorganized Debtor" throughout various provisions of the Plan are an effort to anticipate whether an event may occur before or after the Effective Date.  In this regard, and generally for purposes of the Plan, any written agreement made by the Debtor as part of the Plan before the Effective Date will survive the Confirmation Date and the Effective Date and will bind both the Reorganized Debtor and every other party to such agreement (including, but not limited to, the provisions of the Plan as confirmed).

2.101 <u>Representatives</u>.  This term will refer to and mean the Guardian ad Litem and the Unknown Claims Representative when referred to collectively.

2.102 <u>Representatives' Professionals</u>.  This term will refer to and mean all professionals who the Representatives may jointly or individually retain to provide professional services for a specified purpose, all in accordance with Bankruptcy Code §§ 327(a) and 327(e) and as approved by the Bankruptcy Court.

2.103 <u>Restricted St. Augustine Account</u>.  This term will refer to and mean the account at Smith Barney in the original principal sum of $596,549.13 representing the down payment (less closing costs) from St. Augustine High School Corporation to the Diocese for the sale of the Regina Cleri property.

2.104 <u>Secured Claim</u>.  This term will refer to and mean every Claim or portion thereof which is asserted by the Creditor holding such Claim to be secured by a lien, security interest, or assignment encumbering property in which the Debtor has an interest and including any right to setoff asserted by a Creditor that is treated as a Secured Claim under the Bankruptcy Code, but

only to the extent of the validity, perfection, and enforceability of the claimed lien, security interest, or assignment, and the value of the interest of the Creditor holding such Claim against such property of the Debtor.

2.105  Secured Creditor.  This term will refer to and mean every Creditor which holds a Secured Claim in the Reorganization Case.

2.106  Secured Tax Claim.  This term will refer to and mean every Claim of any federal, state, or local governmental unit, which is asserted by such governmental unit holding such Claim which is secured by property of the Estate by operation of applicable non-bankruptcy laws, including, but not limited to, every such Claim for unpaid real property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes, and further including, but not limited to, both the Prepetition Date Secured Tax Claims and the Post-Effective Date Secured Tax Claims, but only to the extent of the validity, perfection, and enforceability of the claimed lien, security interest, or assignment, and the value of the interest of the governmental unit holding such Claim against the Debtor and only to the extent that such Secured Tax Claim does not relate to Parish Real Property.  Any Claims for unpaid real property taxes, unpaid personal property taxes, or unpaid sales taxes or leasing taxes pertaining to a Parish or Parish Real Property will be paid by the Parish owning such Parish Real Property or Parish other property for which such tax is assessed.

2.107  Settlement Trust.  This term will refer to and mean the trust established pursuant to the Settlement Trust Agreement for:

(a)  receiving, holding and investing the Fund when received from time to time;

(b)  establishing the Unknown Claims Reserve;

(c)  establishing the Trust Administrative Expense Reserve;

(d)  funding the Litigation Trust with the Litigation Trust Fund, if there are Non-Settling Tort Claimants;

(e)  establishing the Avoidance Action Fund;

QBTUC\811017.00003\1653751.1

(f)     issuing payments and disbursing funds as provided in the Settlement Trust Agreement or the Plan on account of Tort Claims which have been Allowed as of the Effective Date and as may be directed by the Special Arbitrator with respect to Tort Claims that have not been Allowed as of the Effective Date;

(g)     funding the Litigation Trust if there are Non-Settling Tort Claimants; and

(h)     paying the administrative costs as provided in the Settlement Trust Agreement including the costs, fees and expenses of the Trustee and the Special Arbitrator from the Trust Administrative Expense Reserve.

The Settlement Trust will qualify to be a "Qualified Settlement Fund" pursuant to applicable provisions of the Internal Revenue Code.

2.108   Settlement Trust Agreement.   This term will refer to and mean the trust to be established in accordance with Article 12 of the Plan pursuant to which the Tort Claims of Settling Tort Claimants will be satisfied.

2.109   Settling Insurers.  This term will refer to and mean those Insurance Companies that have reached settlements with the Diocese prior to the Effective Date, and any Insurance Company that may reach a settlement with Diocese with respect to any Insurance Actions after the Effective Date.  Any Settling Insurer, in exchange for the Settling Insurer's contribution to the Fund as agreed upon between the Diocese and such Settling Insurer and approved by the Bankruptcy Court, will obtain the benefit of an injunction against prosecution of claims against the Insurance Company by any Creditor or other party in interest, including a Tort Claimant, a Relationship Tort Claimant and an Unknown Tort Claimant and will be a Settling Party.  The terms of any settlement with a Settling Insurer, if not previously approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019 or such other provisions of the Bankruptcy Code or Bankruptcy Rules as may be set forth in any such settlement, will be approved at the Confirmation Hearing and pursuant to the Confirmation Order.  If an agreement is reached with a Settling Insurer after the Effective Date, it will be approved by the Bankruptcy Court pursuant to

its retained jurisdiction. A Settling Insurer will obtain the benefit of the injunction to be issued pursuant to Article 18 of the Plan regardless of whether an Insurer becomes a Settling Insurer or a Settling Party before or after the Effective Date.

2.110 <u>Settling Parties</u>. This term will refer to and mean Participating Third Parties and Settling Insurers and their respective predecessors, successors, officials, shareholders, subsidiaries, divisions, affiliates, representatives, attorneys, merged or acquired companies or operations or assigns of the Settling Insurers and the Participating Third Parties.

2.111 <u>Settling Tort Claimants</u>. This term will refer to and mean those Tort Claimants (other than Unknown Tort Claimants) who are included in the Settlement Trust and who will have their Tort Claims determined, Allowed or Disallowed and treated in accordance with the terms of the Settlement Trust and the Plan.

2.112 <u>Sharing Arrangement</u>. This term will refer to and mean sharing between the Reorganized Debtor and the Settlement Trust after funding of the Initial Contribution as follows:

(a) Any amounts in the Unknown Claims Reserve that are released for distribution to Settling Tort Claimants will be split so that twenty (20%) will be paid to the Diocese to be used for Special Projects and eighty percent (80%) will be paid to the Trustee of the Settlement Trust to make additional distributions to the holders of Allowed Settling Tort Claims in accordance with the terms of the Plan.

(b) The Diocese may also receive such additional amounts, as part of the Sharing Arrangement, as may be agreed upon by the Diocese and the Committee prior to the Confirmation Date.

(c) If the amounts paid into the Fund equal or exceed $20,000,000, then the Fund in excess of $20,000,000 will be shared as follows:

(i) $20,000,000 to $21,000,000 – ten percent (10%) to the Diocese to be used for Special Projects and ninety percent (90%) to the Trustee of the Settlement Trust;

| | |
|---|---|
| 1 | (ii) $21,000,000 to $22,000,000 – twenty percent (20%) to the Diocese |
| 2 | to be used for Special Projects and eighty percent (80%) to the Trustee of the |
| 3 | Settlement Trust; |
| 4 | (iii) $22,000,000 to $23,000,000 – thirty percent (30%) to the Diocese |
| 5 | to be used for Special Projects and eighty percent (80%) to the Trustee of the |
| 6 | Settlement Trust; and |
| 7 | (iv) Any amount over $23,000,000 – forty percent (40%) to the Diocese |
| 8 | to be used for Special Projects and sixty percent (60%) to the Trustee of the Settlement |
| 9 | Trust. |
| 10 | 2.113 <u>Special Arbitrator</u>. This term will refer to and mean Lina Rodriguez, who has |
| 11 | been selected by the Committee, the Representatives and the Diocese to serve and who is to |
| 12 | evaluate, liquidate and Allow or Disallow the Claims of the Settling Tort Claimants and the |
| 13 | Claims of the Unknown Tort Claimants. The Special Arbitrator will also: |
| 14 | (a) evaluate each such Tort Claim and Unknown Tort Claim for Allowance or |
| 15 | Disallowance; and |
| 16 | (b) if such Tort Claim or Unknown Tort Claim is Allowed, determine the |
| 17 | appropriate Tier into which a Tort Claim or an Unknown Tort Claim will be placed in accordance |
| 18 | with the criteria set forth in the Plan; and |
| 19 | (c) instruct the Trustee to pay any Allowed Tort Claims of Settling Tort |
| 20 | Claimants or the Allowed Claims of Unknown Tort Claimants in accordance with the terms of the |
| 21 | Settlement Trust and the Plan. |
| 22 | 2.114 <u>Special Projects</u>. This term will refer to and mean programs which have been |
| 23 | established by the Diocese or may be established by the Diocese from time to time for all |
| 24 | Catholic related entities within the territory of the Diocese with respect to matters related to the |
| 25 | following: the identification of sexual abuse, the training and education of employees of the |
| 26 | Diocese and other Catholic related entities within the territory of the Diocese regarding, among |

other things, reporting requirements under applicable law of any acts of suspected sexual abuse, dealing with victims of sexual abuse, establishing programs for the prevention of sexual abuse, selection, education, screening, training and orientation of priests, teachers, deacons, volunteers and other workers in the Diocese or any affiliated entities regardless of whether such individuals are directly employed by or volunteer for the Diocese or are employed by or volunteer for any other Catholic related entities, establishment of youth programs and the training and supervision of leaders or volunteers for such programs, counseling and other programs for the treatment of the effects of sexual abuse whether provided directly by the Diocese, the VAP or some other entity or person, all costs associated with the Office of Child, Adolescent and Adult Protection or such other similar entity established by the Diocese, any other programs or activities related to the treatment of sex abuse victims, programs related to the prevention of sexual abuse or any other programs which the Diocese reasonably determines will assist it in preventing incidents of sexual abuse by clergy, other workers or volunteers who work or volunteer in the Diocese and in other Catholic organizations within the territory of the Diocese.

2.115 <u>Tier</u>. This term will refer to and mean the level into which the Allowed Claim of each Settling Tort Claimant (or Unknown Tort Claimant when such Unknown Tort Claim is asserted and Allowed) will be placed based upon the criteria set forth in the Plan and any Plan Documents.

2.116 <u>Tier One Tort Claims</u>. This term will refer to and mean the Claims of Tort Claimants (including Unknown Tort Claimants) whose Tort Claims are Allowed and which meet the criteria established in the Plan for determination of Tier One Tort Claims. The factors to be considered by the Special Arbitrator for placement of a Tort Claim into Tier One are contained in Article 15 of the Plan.

2.117 <u>Tier Two Tort Claims</u>. This term will refer to and mean the Claims of Tort Claimants (including Unknown Tort Claimants) whose Tort Claims are Allowed and which meet the criteria established in the Plan for determination of Tier Two Tort Claims. The factors to be

considered by the Special Arbitrator for placement of a Tort Claim into Tier One are contained in Article 15 of the Plan.

2.118  Tier Three Tort Claims.  This term will refer to and mean the Claims of Tort Claimants (including Unknown Tort Claimants) whose Tort Claims are Allowed which meet the criteria established in the Plan for determination of Tier Three Tort Claims.  The factors to be considered by the Special Arbitrator for placement of a Tort Claim into Tier One are contained in Article 15 of the Plan.

2.119  Tier Four Tort Claims.  This term will refer to and mean the Claims of Tort Claimants (including Unknown Tort Claimants) whose Tort Claims are Allowed and which meet the criteria established in the Plan for determination of Tier Four Tort Claims.  The factors to be considered by the Special Arbitrator for placement of a Tort Claim into Tier One are contained in Article 15 of the Plan.

2.120  Tier One Initial Distribution Amount.  This term will refer to and mean the sum of $100,000 which is the amount of the Initial Distribution to be distributed to the holder of an Allowed Tier One Tort Claim on the later of the Effective Date or the Claim Payment Date.

2.121  Tier Two Initial Distribution Amount.  This term will refer to and mean the sum of $200,000 which is the amount of the Initial Distribution to be distributed to the holder of an Allowed Tier Two Tort Claim on the later of the Effective Date or the Claim Payment Date.

2.122  Tier Three Initial Distribution Amount.  This term will refer to and mean the sum of $425,000 which is the amount of the Initial Distribution to be distributed to the holder of an Allowed Tier Three Tort Claim on the later of the Effective Date or the Claim Payment Date.

2.123  Tier Four Initial Distribution Amount.  This term will refer to and mean the sum of $600,000 which is the amount of the Initial Distribution to be distributed to the holder of an Allowed Tier Four Tort Claim on the later of the Effective Date or the Claim Payment Date.

2.124  Tort Claim.  This term will refer to and mean all Claims, demands, suits, causes of action, proceedings or any other rights or asserted rights to payment, including, but not limited to

any Claims, demands, suits, or causes of action: (i) for personal injuries, including emotional distress; (ii) for damages, including punitive damages; (iii) for attorneys' fees and other expenses, fees or costs; and (iv) for any equitable remedy, heretofore, now or hereafter asserted against the Debtor, any Released Parties, any Participating Third Parties, any Settling Insurers, any Settling Parties, the Settlement Trust or the Litigation Trust, whether or not reduced to judgment, based upon or in any manner arising from or related to: (a) acts of sexual abuse committed by any cleric, employee, volunteer or other person associated with the Diocese, any Parish or any affiliated entity; (b) the failure of the Diocese to properly supervise any cleric, any volunteer, or any other employee of or person associated with the Diocese, a Parish or any affiliated entity; (c) the processing, adjustment, defense, settlement, payment, negotiation or handling of any claims, demands, suits, proceedings or causes of action based upon or relating in any way to the Claims made as a result of any alleged abuse or other Tort Claim asserted by a Tort Claimant; or (d) the failure to warn, disclose or provide information concerning, the alleged sexual abuse and other misconduct of clergy, other employees or volunteers of or persons associated with the Diocese, the Parishes or any affiliated entities. Subject to the limitations contained in the Plan and except for purposes of treatment and payment under the Plan, Tort Claims include Unknown Tort Claims when they are asserted.

2.125   <u>Tort Claimant</u>.   This term will refer to and mean a Person who asserts a Tort Claim.

2.126   <u>Tort Compromise Claim</u>.   This term will refer to and mean a Tort Claim to which an objection has been filed or asserted prior to voting on the Plan; the only basis for the objection being that the Tort Claim appears to be barred by the applicable statute of limitations; the objection stating that the Tort Claim otherwise appears on its face so that it may be credible; the Tort Claimant having been offered the opportunity to elect to have his or her Tort Claim treated as a Tort Compromise Claim; and the Tort Claimant having affirmatively elected, on the Ballot, to have his or her Tort Claim treated as a Tort Compromise Claim.

2.127  <u>Trust Administrative Expense Reserve</u>.  This term will refer to and mean the reserve to be established on the Effective Date and thereafter by the Trustee of the Settlement Trust and the Litigation Trust to pay the costs of administering the Settlement Trust and the Litigation Trust including, but not limited to, the Trustee's fees, the fees, costs and expenses of the Special Arbitrator, the fees, costs and expenses of the Committee, the fees, costs and expenses of any Committee Professionals who continue to act after the Effective Date and the fees, costs and expenses of attorneys and other professionals necessary for litigating with any Non-Settling Tort Claimants.

2.128  <u>Trustee</u>.  This term will refer to and mean Fred Boice, the Trustee under the Settlement Trust Agreement and the Litigation Trust Agreement if a Litigation Trust is established.

2.129  <u>Unknown Claims Representative</u>.  The term will refer to and mean A. Bates Butler III, the representative appointed by the Court by order entered October 27, 2004, pursuant to the motion requesting that the Court appoint a representative to represent the interests of persons who might assert a Tort Claim but suffer from repressed memory or other mental incapacity which, under applicable law, would toll any applicable statute of limitations for asserting a Tort Claim against the Diocese.

2.130  <u>Unknown Tort Claimant</u>.  This term will refer to and mean an individual who has or contends he or she has an Unknown Tort Claim.

2.131  <u>Unknown Tort Claims</u>.  This term will refer to and mean all Tort Claims of any Unknown Tort Claimants who, after the Bar Date, assert that:

(a)     He or she is a Tort Claimant;

(b)     He or she is a minor; or

(c)     He or she was a minor at the time the act(s) which give rise to the Tort Claim occurred and the Unknown Tort Claimant is bringing the Unknown Tort Claim within two (2) years of the time such Unknown Tort Claimant reached the age of majority;  or

1    (d)    He or she has suffered from repressed memory or other mental incapacity

2  which, under current applicable Arizona law, would toll the applicable statute of limitations for

3  bringing a Tort Claim against the Debtor; and

4    (e)    He or she submits a Proof of Claim to the Special Arbitrator.

5    An Unknown Tort Claimant will have his or her Unknown Tort Claim determined by the

6  Special Arbitrator when he or she asserts an Unknown Tort Claim and will not have the option to

7  have his or her Unknown Tort Claim determined in accordance with the terms of the Litigation

8  Trust and the Litigation Protocol.  If an Unknown Tort Claim is Allowed by the Special

9  Arbitrator, it will be paid from the Unknown Claims Reserve in accordance with Section 12.6 of

10  the Plan.

11    2.132  Unknown Claims Reserve.  This term will refer to and mean the reserve to be

12  established on the Effective Date or such later date when funds from the Initial Distribution or the

13  Excess Distribution become available pursuant to the terms of the Plan (and, thereafter, to be

14  maintained as necessary) by the Trustee of the Settlement Trust to hold, in one or more

15  segregated accounts Cash or other Assets in an amount, to be funded over time, of $5,000,000.

16  Initially, unless funded from other payments to the Fund after the Effective Date, the Unknown

17  Claims Reserve will be funded from the other one-half of the remainder of the Initial Distribution

18  not being included in the Excess Distribution.  Any Unknown Claims that are Allowed by the

19  Special Arbitrator will be paid out of the Unknown Claims Reserve.

20    2.133  Unsecured Claim.  This term will refer to and mean every Claim or portion

21  thereof, regardless of the priority of such Claim, which is not a Secured Claim.

22    2.134  Unsecured Creditor.  This term will refer to and mean every Creditor which holds

23  an Unsecured Claim in the Reorganization Case.

24    2.135  VAP.  This term will refer to and mean the Victim Assistance Program which was

25  established by the Diocese in June of 2002 in conjunction with Catholic Social Service and the

26  Pima County Attorney's Office which, among other things, reports allegations of abuse to the

Case 4:04-bk-04721-BMW    Doc 402    Filed 05/26/05    Entered 05/26/05 23:40:57    Desc
QBTUC\811017.00003\165375.1    Main Document    Page 41 of 84

30

proper authorities, initiates counseling services through Catholic Social Service or, if the individual prefers, through an independent licensed or certified professional, and provides other services to a person who alleges he or she was abused.

2.136  <u>Weighted Distribution Ratio</u>.  This term will refer to and mean the following weighted distribution with respect to Allowed Claims in each Tier:

(a)     With respect to Tier One – 1

(b)     With respect to Tier Two – 2

(c)     With respect to the California Tier – 3.5

(d)     With respect to Tier Three –  5

(e)     With respect to Tier Four – 7

The Weighted Distribution Ratio will be determined by:  (i) multiplying the number of Claims in each tier by the appropriate proportion (e.g., number of claims in Tier 4 multiplied by 7, number of claims in tier 3 multiplied by 5, etc.); (ii) Add the products of the calculation for each tier together; (iii) divide the product for each tier by the sum of the products to calculate a weighted percentage for each Tier; (iv) multiply the amount of any distribution after the Initial Distribution Amount has been received by every Settling Tort Claimant with an Allowed Claim, by the weighted percentage for each tier; and (v) divide the total amount to be distributed to each Tier by the number of Settling Tort Claimants with Allowed Claim in that Tier;  <u>provided, however, that</u> prior to application of the Weighted Distribution Ratio, the holders of Allowed Tort Claims in Tiers 1 and 2 will not receive any additional distributions after the Initial Distribution Amount until each holder of an Allowed Tier 4 Claim will have received distributions totaling at least $700,000; each holder of an Allowed Tier 3 Claim will have received distributions totaling at least $500,000; and each holder of a California Tort Claim will have received distributions totaling at least $350,000.

QBTUC\811017.00003\1653754.1

**ARTICLE 3**

**UNCLASSIFIED CLAIMS**

3.1 <u>Administrative Claims</u>. The holder of an Allowed Administrative Claim will receive, in full satisfaction of such Claim: (a) a single Cash payment in the Allowed amount of the Claim on the Effective Date (or the applicable Claim Payment Date); or (b) as otherwise agreed in writing by the holder of the Allowed Claim or ordered by the Bankruptcy Court. Every Allowed Administrative Claim for an expense of operation of the Debtor incurred in the ordinary course of such operations will be paid fully and in Cash in the ordinary course of business (including any payment terms applicable to any such expense).

3.2 <u>Priority Unsecured Claims</u>. The holder of every Allowed Priority Unsecured Claim will be paid, in full satisfaction of such Claim: (a) a single Cash payment in the Allowed amount of the Claim on the Effective Date (or the applicable Claim Payment Date); or (b) as otherwise agreed in writing by the holder of the Allowed Claim or ordered by the Bankruptcy Court.

3.3 <u>Priority Tax Claims</u>. The holder of every Allowed Priority Tax Claim will be paid, in full satisfaction of such Claim pursuant to the provisions of Bankruptcy Code § 1129(a)(9)(C): (a) in deferred Cash payments over a period of six (6) years from the date of assessment, to be paid in equal quarterly installments of principal and interest; (b) the first payment to be made on the first Business Day after the day which is ninety (90) days after the later of the Effective Date or the Claim Payment Date; and each payment thereafter to be paid on the first Business Day of each succeeding quarter until paid in full; <u>provided</u>, <u>however</u>, that, the entire unpaid amount of the Allowed Priority Tax Claim, together with any interest accrued thereon, will be paid in full on the date which is six (6) years after the date of assessment of such Allowed Priority Tax Claim; or (c) as otherwise agreed in writing by the holder of the Allowed Claim or ordered by the Bankruptcy Court.

QBTUC\811017.00003\1653754.1

38

3.4    Elimination of Claim.  To the extent there are no amounts owing on the Effective Date for any Priority Unsecured Claims and/or any Priority Tax Claims, such treatment as set forth above will be deemed automatically eliminated from the Plan.

## ARTICLE 4

## CLASSIFICATION OF CLAIMS

4.1    Classification.  All Claims are classified under the Plan as hereafter stated in this Article 4; provided, however, that a Claim will be deemed classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class.  As of the Confirmation Hearing, any Class of Claims which does not contain any Creditor's Claims will be deemed deleted automatically from the Plan, and any Class of Claims which does not contain an Allowed Claim (or a Claim temporarily or provisionally allowed by the Bankruptcy Court for voting purposes) will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan.

4.2    Classes.  For purposes of the Plan, Claims against the Debtor are hereby classified in the following classes in accordance with Bankruptcy Code § 1122(a) as follows:

Class 1 – Priority Employee Unsecured Claims

Class 2 – Prepetition Date Secured Tax Claims

Class 3 – Escrow Agent Secured Claim

Class 4 – Other Secured Claims

Class 5 – General Unsecured Convenience Claims

Class 6 – Parish Guaranty Claims

Class 7 – Parish Loan Claims

Class 8 – General Unsecured Claims

Class 9 – Other Tort and Employee Claims

Class 10 – Tort Claims

QBTUC\811017.00003\1653751.1

Class 11 – Insurance and Benefit Claims

Class 12 – Penalty Claims

# ARTICLE 5

## TREATMENT OF CLASSES OF CLAIMS
## (WHICH ARE NOT IMPAIRED UNDER THE PLAN)

5.1     Priority Employee Unsecured Claims – Class 1.    The legal, equitable and contractual rights of holders of Priority Employee Unsecured Claims in Class 1 will either: (a) not be altered by the Plan; or (b) at the option of the Debtor, be treated in any other manner that will result in such Allowed Priority Employee Unsecured Claims being deemed unimpaired under Bankruptcy Code § 1124, because such Allowed Priority Employee Unsecured Claims will be satisfied, in full, in accordance with the policies and procedures regarding vacation and sick leave pay in effect at the Diocese at the time such Priority Employee Unsecured Claim becomes matured and liquidated.

5.2     Other Secured Claims – Class 4.    The legal, equitable and contractual rights of holders of Allowed Other Secured Claims in Class 4 will either: (a) not be altered by the Plan; or (b) at the option of the Debtor, be treated in any other manner that will result in such Allowed Secured Claims being deemed unimpaired under Bankruptcy Code § 1124, including, but not limited to, the retention by the holder of an Allowed Other Secured Claim of the lien on its collateral to the extent of such Allowed Other Secured Claim.

5.3     Parish Guaranty Claims – Class 6.    The holders of Allowed Parish Guaranty Claims will retain their Claims, if any, against the Reorganized Debtor, and the Plan will leave unaltered the legal, equitable and contractual rights to which such Claims entitle the holders thereof.

5.4     Insurance and Benefit Claims – Class 11.    The holders of Allowed Insurance and Benefit Claims will retain their Claims, if any, against the Reorganized Debtor and the Plan will either:  (a) leave unaltered the legal, equitable and contractual rights to which such Claims entitle

the holders thereof; or (b) at the option of the Debtor, treat such Allowed Insurance and Benefit Claims in any other manner that will result in such Allowed Insurance and Benefit Claims being deemed unimpaired under Bankruptcy Code § 1124. All such Insurance and Benefit Claims will be determined in accordance with the provisions of any benefit plans, policies and procedures of the Diocese and applicable law.

## ARTICLE 6

### TREATMENT OF CLASS 2 CLAIMS
### (PREPETITION DATE SECURED TAX CLAIMS)

6.1    <u>Distribution</u>.  All Class 2 Claims, as and when they are Allowed Claims, will be treated as fully Secured Claims and will be paid fully and in Cash as follows:

(a)    In order to compute the Prepetition Date Secured Tax Claims which are the Class 2 Claims, the Property Tax Claims Proration will be conducted as of the Effective Date, if necessary.  The Prepetition Date Secured Tax Claims which are Allowed Claims will bear interest from and after the Effective Date until they are paid in full at the rate of three percent (3%) per annum or such other rate as ordered by the Bankruptcy Court.

(b)    The Allowed Class 2 Claims, including interest thereon from and after the Effective Date, will be paid in two equal installments.  The first installment will be paid on the first Business Day which is thirty (30) days after the Effective Date or the Claim Payment Date. The second installment will be paid on the first Business Day of the sixth (6th) month after the Effective Date or the applicable Claim Payment Date.

(c)    No penalties will be paid on any of the Allowed Class 2 Claims.

6.2    <u>Disputed Claims</u>.  Notwithstanding the pendency of any appeal to any state or local taxing authorities of a determination of property taxes or assessment on the Petition Date, nothing contained herein will prohibit the Debtor from exercising its rights pursuant to Bankruptcy Code § 505 and having the Class 2 Claim(s) determined by the Bankruptcy Court to the extent that any Class 2 Claims are Disputed Claims.

6.3 <u>Retention of Liens</u>. Each Creditor holding a Class 2 Allowed Claim will retain its lien(s) on its collateral to the extent of its Class 2 Allowed Secured Claim.

6.4 <u>Other Claims</u>. The Reorganized Debtor will pay the Post-Effective Date Secured Tax Claims in the ordinary course of its business operations after the Effective Date. All Property Tax Administrative Claims will be paid as Administrative Claims pursuant to the Plan.

6.5 <u>Impairment</u>. The Class 2 Claims are <u>impaired</u> under the Plan.

## ARTICLE 7

### TREATMENT OF CLASS 3 CLAIMS
### (<u>ESCROW AGENT SECURED CLAIMS</u>)

7.1 <u>Distribution</u>. The Class 3 Claim, as and when it is an Allowed Claim, will be treated as a fully Secured Claim and will be paid, without interest, on January 24, 2007, the due date of the Promissory Note evidencing the obligation to the Escrow Agent.

7.2 <u>Retention of Liens</u>. The Escrow Agent will retain its lien on its collateral to the extent of its Class 3 Allowed Escrow Agent Secured Claim.

7.3 <u>Additional Collateral</u>. On the Effective Date, the Diocese will execute a pledge of the Restricted St. Augustine Account in favor of the Escrow Agent. The terms and conditions of the pledge will be contained in a Plan Document.

7.4 <u>Impairment</u>. The Class 3 Claim is <u>impaired</u> pursuant to the Plan.

## ARTICLE 8

### TREATMENT OF CLASS 5 CLAIMS
### (<u>GENERAL UNSECURED CONVENIENCE CLAIMS</u>)

8.1 <u>Distribution</u>. Every Creditor holding a Class 5 Claim, as and when such Class 5 Claim is an Allowed General Unsecured Convenience Claim will be paid in Cash on the Effective Date or the Claim Payment Date.

8.2 <u>Impairment</u>. The Class 5 Claims are <u>impaired</u> pursuant to the Plan.

**ARTICLE 9**

**TREATMENT OF CLASS 7 CLAIMS**
**(<u>PARISH LOAN CLAIMS</u>)**

9.1    <u>Distribution</u>.  Each Allowed Parish Loan Claim will bear interest from and after the Effective Date at the rate of two and one-half percent (2.5%) per annum or such other rate as set by the Bankruptcy Court in the Confirmation Order.  Each holder of an Allowed Parish Loan Claim will be paid its Pro Rata share of the Parish Monthly Payment commencing on the first Business Day that is thirty (30) days after the Effective Date (or the Claim Payment Date) and continuing on the same Business Day of each month thereafter until paid in full, including interest.

9.2    <u>Impairment</u>.  The Class 7 Parish Loan Claims are <u>impaired</u> under the Plan.

**ARTICLE 10**

**TREATMENT OF CLASS 8 CLAIMS**
**(<u>GENERAL UNSECURED CLAIMS</u>)**

10.1    <u>Distribution</u>.  Each holder of a Class 8 General Unsecured Claim, as and when such General Unsecured Claim is or becomes an Allowed Claim, will be paid fully and in Cash as follows:

(a)    Each Allowed General Unsecured Claim will bear interest from and after the Effective Date at the rate of four and one-half percent (4.5%) per annum or such other rate as set by the Bankruptcy Court in the Confirmation Order.

(b)    Each holder of an Allowed General Unsecured Claim will be paid the Allowed amount of such General Unsecured Claim in monthly installments, including interest, with the first installment to be paid on the first Business Day that is thirty (30) days after the Effective Date (or the Claim Payment Date) and succeeding monthly installments to be paid on the same day of each month thereafter until paid in full including interest so that any such

QBTUC\811017.00003\1653751.1

Allowed General Unsecured Claim is paid in full on or before the fifteenth (15th) anniversary of the Effective Date of the Plan.

10.2 <u>Prepayment</u>. Nothing contained in this Article will preclude the Reorganized Debtor from prepaying all or part of a Class 8 General Unsecured Claim.

10.3 <u>Impairment</u>. The Class 8 General Unsecured Claims are <u>impaired</u> under the Plan.

## ARTICLE 11

### TREATMENT OF CLASS 9 CLAIMS
### (OTHER TORT AND EMPLOYEE CLAIMS)

11.1 <u>Distribution</u>. Each holder of a Class 9 Other Tort and Employee Claim, as and when such Claim becomes an Allowed Claim, will be paid solely from the proceeds of any insurance policies applicable to such Other Tort and Employee Claim. To the extent that such Claims may not be satisfied in full by the foregoing, then such Other Tort and Employee Claims, to the extent not so satisfied, will be Disallowed.

11.2 <u>Impairment</u>. The Class 9 Other Tort and Employee Claims are <u>impaired</u> under the Plan.

## ARTICLE 12

### TREATMENT OF CLASS 10 CLAIMS
### (TORT CLAIMS)

12.1 <u>General Terms</u>. On or before the Effective Date (but after entry of the Confirmation Order), the Reorganized Debtor will, in full release, satisfaction and discharge of all Claims in Class 10, cause the following to occur: (a) the execution and delivery of the Settlement Trust Agreement and the Litigation Trust Agreement (if necessary), which will establish the Settlement Trust and the Litigation Trust which provide for liquidation, Allowance, Disallowance and payment of all Class 10 Claims as and when they become Allowed Claims; (b) delivery to the Trustee under the Settlement Trust of the Initial Contribution to establish the Trust Administrative Expense Reserve; establish the Avoidance Actions Fund; if necessary, fund the Litigation Trust,

make the Initial Distributions to Settling Tort Claimants who have Allowed Tort Claims; and (c) delivery of such commitments and assignments from the Reorganized Debtor to give effect to the right of the Trustee to receive the net proceeds from the sale of the Diocese Real Property if any such Diocese Real Property remains unsold or proceeds have not been received as of the Effective Date and the assignment of the Insurance Action Recoveries, all subject to the Sharing Arrangement, to the extent applicable. Any funds received from the Settling Insurers, Participating Third Parties or any Insurance Action Recoveries which become part of the Fund are to be paid to the Tort Claimants or the Trustee pursuant to the Plan and the terms of the Settlement Trust Agreement and the Litigation Trust Agreement.

The Special Arbitrator will assume full responsibility for resolving the Tort Claims of all Settling Tort Claimants and the Trustee of the Litigation Trust will assume full responsibility for resolving all Tort Claims of Non-Settling Tort Claimants. The Trustee of the Settlement Trust and the Litigation Trust will assume full responsibility for: (i) establishing the Trust Administrative Expense Reserves; (ii) making payments to the holders of Allowed Tort Claims that become Allowed under the conditions set forth in the Settlement Trust Agreement or the Litigation Trust Agreement and the Plan; (iii) collecting, investing and distributing funds for the benefit of the holders of Allowed Tort Claims; (iv) fulfilling all other obligations under the Settlement Trust Agreement and Litigation Trust Agreement; and (v) paying the fees, costs and expenses of the Settlement Trust and the Litigation Trust, all as set forth more fully in the Settlement Trust Agreement, the Litigation Trust Agreement and the Plan.

12.2 <u>Treatment of Settling Tort Claimants</u>.

(a) <u>Initial Distributions</u>. Within thirty (30) days of funding the Settlement Trust with the Initial Contribution, the Trustee will pay the applicable California Tier Initial Distribution Amount, Relationship Distribution Amount, Tier One Initial Distribution Amount, Tier Two Initial Distribution Amount, Tier Three Initial Distributions Amount, or Tier Four

Initial Distribution Amount to the holders of Allowed Tort Claims which were Allowed prior to the Effective Date in the respective Tier in which such Tort Claim has been Allowed.

(b)    Distributions after Initial Distributions.    Distributions after the Initial Distributions will be made to Settling Tort Claimants who Tort Claims are Allowed from the Excess Distribution, the Additional Distribution and from any other amounts from the Fund that are transferred to the Settlement Trust in accordance with the terms of the Plan subject to the establishment of the Trust Administrative Expense Reserve, the Avoidance Actions Fund and such other reserves as are provided for in the Plan or the Settlement Trust Agreement.

(c)    Treatment of Settling Tort Claimants.    Settling Tort Claimants whose Tort Claims are not Allowed as of the Effective Date, will receive payment of their Allowed Claims on the applicable Claim Payment Date as follows:

(i)    The Special Arbitrator will consider each Tort Claim of a Settling Tort Claimant in accordance with the provisions of Article 15 below.    Based upon the Proof of Claim filed by a Tort Claimant, any additional information received by the Special Arbitrator pursuant to Article 15 of the Plan and the criteria which govern determination of the Allowance of a Tort Claim and the Tier into which a Tort Claim should be placed (and any other factors the Bankruptcy Court may determine as part of the confirmation process), if the Tort Claim is Allowed, the Special Arbitrator will classify each Tort Claim as a California Tort Claim, a Tier One Claim, a Tier Two Claim, a Tier Three Claim or a Tier Four Claim.

(ii)    Upon Allowance of a Tort Claim by the Special Arbitrator and placement in the Tier, a Tort Claimant with an Allowed Tier One Tort Claim will receive the Tier One Initial Distribution Amount; a Tort Claimant with an Allowed Tier Two Tort Claim will receive the Tier Two Initial Distribution Amount; a Tort Claimant with an Allowed Tier

Three Tort Claim will receive the Tier Three Initial Distribution Amount; a Tort claimant with an Allowed Tier Four Claim will receive the Tier Four Initial Distribution Amount; and a California Tort Claimant will receive the California Tier Initial Distribution Amount.

(iii)     At such times as determined by the Trustee after Allowance or Disallowance of all Tort Claims, each Tort Claimant who holds an Allowed Tort Claim (but excluding any Relationship Tort Claims) will receive his or her Excess Distribution Amount.

(iv)     At such times as the Bankruptcy Court determines that the Unknown Claims Reserve should be reduced or upon termination of the Unknown Claims Reserve, any reduction or termination will be subject to the Sharing Arrangement.  After application of the Sharing Arrangement, any funds remaining will be distributed as an Additional Distribution.  The Additional Distribution Amount will be distributed to the holders of Allowed Tort Claims (but excluding any Relationship Tort Claims and the holders of Unknown Claims) in accordance with the Tiers into which each holder of an Allowed Tort Claim has been placed.

(v)     All amounts to be distributed to Settling Tort Claimants with Allowed Tort Claims after the Initial Distribution Amount will be subject to the Weighted Distribution Ratio.

12.3     Special Provision Regarding California Tort Claims.  The Allowed California Tort Claims will continue to receive distributions from the Settlement Trust until disposition of the Claims of a California Tort Claimant against defendants in the California litigation other than the Diocese.  If a California Tort Claimant receives a recovery from a defendant in the California litigation other than the Diocese, and that recovery, when added to the amounts received by a California Tort Claimant from the Settlement Trust exceed what a Tier 3 Claimant has received,

the California Tort Claimant will receive no further distribution from the Settlement Trust and his or her Allowed Tort Claim will be deemed satisfied pursuant to the Plan. If, however, the amount received by a California Tort Claimant on account of any recovery from a defendant in the California litigation plus the amount already distributed to the California Tort Claimant from the Settlement Trust is less than the amount a Class 3 Claimant has received, the California Tort Claimant will continue to receive distributions from the Settlement Trust until the total distributions to a California Tort Claimant remain one-half or less than the total distributions to the holder of an Allowed Tier 4 Claim.

12.4    <u>Treatment of Tort Compromise Claims</u>. A Tort Claimant who is given the option of having his or her Tort Claim treated as a Tort Compromise Claim prior to the Effective Date will receive a single payment of $15,000 within thirty (30) days of funding of the Settlement Trust after the Effective Date to be made from the Initial Contribution prior to any Excess Distribution. Making this election will be deemed to be a waiver by such electing holder of any right to otherwise participate in Class 10 as to any and all Claims held by such holder. Tort Claimants must elect to have their Tort Claims treated as Tort Compromise Claim on the Ballot. A Tort Claimant who does not timely elect to have his or her Tort Claim treated as a Tort Compromise Claim will have his or her Tort Claim Allowed or Disallowed by the Special Arbitrator. If a Tort Claimant does not elect to have his or her Tort Claim treated as a Tort Compromise Claim, neither the Committee, the Debtor, the Reorganized Debtor, or the Special Arbitrator will be precluded from asserting other grounds for objection to the Tort Claim and will not be bound by the objection filed prior to the Confirmation Date if the objection has not otherwise been resolved by a Final Order of the Bankruptcy Court. If a Tort Claim is Disallowed, the Tort Claimant will not have the right to request that such Tort Claim be treated as a Tort Compromise Claim and such Tort Claimant will receive nothing under the Plan but such Tort Claimant's Tort Claim will be treated as a Barred Tort Claim. Notwithstanding the foregoing, nothing contained in the Plan will preclude the Diocese, the Committee and a Tort Claimant from

agreeing, after the Confirmation Date, to Allow a Tort Claim to be treated as a Tort Compromise Claim so long as such agreement is entered into prior to the time the Tort Claim is Disallowed by the Special Arbitrator.

    12.5    Treatment of Relationship Tort Claims.    No distribution will be made to a Relationship Tort Claimant until the Tort Claim of the son/daughter/spouse has been Allowed.  If the Claim of the Tort Claimant is Disallowed, the Claim of the Relationship Tort Claimant will also be Disallowed, the Relationship Tort Claimant will receive nothing under the Plan, and the Relationship Tort Claimant will have no further Claim against the Diocese, any Participating Third Parties, any Settling Insurers or any Settling Parties.  If the Claim of the Tort Claimant is Allowed, the Relationship Tort Claimant will receive the Relationship Tort Claim Distribution Amount; provided, however, that if there is more than one son or daughter who is a Tort Claimant with an Allowed Tort Claim, the Relationship Tort Claim Distribution Amount will be limited to the highest Initial Distribution Amount for a son or daughter regardless of how many children are Tort Claimants with Allowed Tort Claims.  In addition, there will be only one Relationship Tort Claim Distribution Amount per family so that if two parents filed Relationship Tort Claims, regardless of whether they are married at the time of Allowance and payment, only one payment will be made and the parents can determine how the Relationship Tort Claim Distribution Amount will be split.  For example, if there  are two sons who have Allowed Tort Claims, one in Tier 3 and one in Tier 4, and each parent filed a Relationship Tort Claim, there will be one payment of $30,000 (five percent (5%) of $600,000) on the Claim Payment Date to both parents in full satisfaction of their Allowed Relationship Tort Claims.

    12.6    Treatment of Unknown Tort Claims.    The Unknown Claims Reserve will be initially funded with one-half (1/2) of the Excess Distribution.  The Reorganized Debtor will also fund the Unknown Claims Reserve from the Fund up to the full amount of the Unknown Claims Reserve.   The Unknown Claims Reserve will be held and administered by the Trustee in

accordance with the terms of the Settlement Trust.  Any Unknown Tort Claims will be treated as follows:

(a)     Each Unknown Tort Claim, when and if it is an Allowed Claim, will be placed in a Tier by the Special Arbitrator as part of the Allowance of the Tort Claim using the same criteria for evaluating Tort Claims as used for other Tort Claimants and will be paid from the Unknown Claims Reserve the appropriate Initial Distribution Amount for the applicable Tier in the manner described below.

(b)     On an annual basis, funds in the Unknown Claim Reserve will be distributed to holders of claims filed after the Bar Date and Allowed during the prior year in an amount equal to the amount distributed to date to holders of previously Allowed Tort Claims of Settling Tort Claimants; provided, however, that, on motion of a party in interest, the Court may reduce the distributions to such claimants if a significant risk exists that the Unknown Claims Reserve will not be sufficient to make such distributions and maintain appropriate reserves.  In the event that the distributions are reduced, any party in interest may move the Court to further consider whether the distributions to the Unknown Tort Claimants with Allowed Claims may be increased based upon the then current circumstances; provided, however, that no Allowed Claim of an Unknown Tort Claimant will be increased so that the distribution to such Unknown Tort Claimant with an Allowed Tort Claim is greater than the distribution to a Settling Tort Claimant with an Allowed Tort Claim in the same Tier.

(c)     The Unknown Claims Reserve may be adjusted from time to time after the Effective Date by the Trustee upon notice to the Reorganized Debtor, the Representatives and the Committee and pursuant to order of the Court after a hearing.  Upon application of the Committee or the Reorganized Debtor, with notice to the Trustee, the Representatives and the Special Arbitrator, and after a hearing in the Bankruptcy Court, the Unknown Claims Reserve may be reduced upon order of the Court; provided, however, that prior to any reduction, any amount which might otherwise be distributed to the Settlement Trust out of the Unknown Claims Reserve

QBTUC\811017.00003\1653751.1

will be redistributed to the holders of Allowed Unknown Claims up to the amount that the holders of Allowed Tort Claims have received in the same Tier in which such Allowed Unknown Tort Claim has been placed. After such redistribution, any such reduction will be distributed in accordance with the terms of the Plan. The Representatives will have standing at any hearing to determine any reduction in the Unknown Claims Reserve.

(d)     The Debtor, the Representatives and the Committee may agree to additional instructions to be given to the Special Arbitrator for preserving the Unknown Claims Reserve.

12.7     <u>General</u>. All distributions to the holders of Allowed Tort Claims and Relationship Tort Claims will be in full satisfaction of such Claims. A Settling Tort Claimant, a Relationship Tort Claimant or an Unknown Tort Claimant whose Claim is Disallowed pursuant to the claim determination procedures set forth in the Plan will receive no distribution under the Plan and will have no further Claim against the Diocese, the Reorganized Debtor, a Participating Third Party, a Settling Party or a Settling Insurer; <u>provided</u>, <u>however</u>, if the Tort Claim is Disallowed because it is a Barred Tort Claim, if a Tort Claimant has elected to participate in the Tort Compromise Class, or if a Tort Claimant and the Diocese have entered into an agreement providing for such services, the Tort Claimant will be given an opportunity to participate in the VAP and be provided services by the Diocese through the VAP at no cost to the holder of such Barred Tort Claim, Tort Compromise Class Claim or other Tort Claim as provided in this Section 12.7. Any Tort Claimant whose Claim is Disallowed because it is a Barred Tort Claim or who elects to be treated as a Tort Compromise Claim who is currently receiving counseling provided by the Diocese other than through VAP, will be offered the opportunity to continue that counseling. Nothing contained in this Section or in the Plan will preclude the Debtor or the Reorganized Debtor from providing service through the VAP or any other program to a Tort Claimant regardless of whether such Tort Claimant filed a Tort Claim in the Reorganization Case.

12.8    Treatment of Non-Settling Tort Claimants.  Non-settling Tort Claimants: (a) will be subject to the terms of the Litigation Trust Agreement; and (b) will not receive any payment if (and to the extent) the Claim is Disallowed pursuant to the litigation procedures constituting the Litigation Protocol, and (c) will have no further Claim against the Debtor, the Reorganized Debtor, any Participating Third Party, any Settling Party or any Settling Insurer.  All Non-Settling Tort Claimants will retain the right to adjudicate their Claims through litigation (including, if not previously waived, trial by jury in the Bankruptcy Court or the District Court, if and to the extent such is available), subject however, to the provisions of the Plan and the Litigation Trust Agreement.  If an objection has been filed to the Tort Claim of a Non-Settling Tort Claimant, the objection will constitute commencement of the action to determine the Allowance or Disallowance of the Tort Claim of a Non-Settling Tort Claimant.  Upon entry of a Final Order in favor of a Non-Settling Tort Claimant, and upon resolution by Final Order of all Tort Claims of Non-Settling Tort Claimants, a Non-Settling Tort Claimant will receive, in full and complete satisfaction of such Allowed Claim, the lesser of:

(a)    the amount of the judgment pursuant to a Final Order;

(b)    $425,000; or

(c)    to the extent that the Litigation Trust Fund, after deduction of all costs, expenses, fees and other charges which are to be paid or reserved by the Trustee, is not sufficient to pay all Allowed Tort Claims of Non-Settling Tort Claimants the amounts in (a) or (b) above, a Pro Rata share of the proceeds of the Litigation Trust  in full and complete satisfaction of such Allowed Tort Claim of a Non-Settling Tort Claimant.

12.9    Treatment of Attorney's Fees of Tort Claimants including Unknown Tort Claimants.  The fees and expenses of attorneys representing any of the Relationship Tort Claimants, Settling Tort Claimants, the Non-Settling Tort Claimants or the Unknown Tort Claimants who receive payment from the Settlement Trust or the Litigation Trust will be borne by such Claimants based on applicable state law and individual arrangements made between them

and their attorneys. In no event will the Diocese, the Reorganized Debtor or the Trustee of the Settlement Trust or the Litigation Trust have any liability for any fees and expenses of attorneys representing any of the Settling Tort Claimants, any of the Non-Settling Tort Claimants, any of the Relationship Tort Claimants or any of the Unknown Tort Claimants and any such Claims, if any, will be Disallowed.

12.10  <u>Treatment of Punitive Damages</u>.  Claims for punitive or exemplary damages in connection with Tort Claims, whether asserted by Tort Claimants, Unknown Tort Claimants or any other Claimants, will not be Allowed.

12.11  <u>Impairment</u>.  The Class 10 Claims are <u>impaired</u> under the Plan.

## ARTICLE 13

### TREATMENT OF CLASS 12 CLAIMS
### (<u>PENALTY CLAIMS</u>)

13.1  <u>Distribution</u>.  No Penalty Claims will be Allowed and there will be no distribution to the holders of any Penalty Claims.

13.2  <u>Impairment</u>.  The Class 12 Penalty Claims are <u>impaired</u> under the Plan.

## ARTICLE 14

### <u>MEANS OF IMPLEMENTATION OF THE PLAN</u>

14.1  <u>Litigation Protocol</u>.  The procedures for resolving Claims of Non-Settling Tort Claimants will be described in the Litigation Trust Agreement if a Litigation Trust is necessary. If there are no Non-Settling Tort Claimants by the Confirmation Hearing, no Litigation Trust will be formed and no Litigation Protocol will be established.  If it is necessary to establish a Litigation Trust, attempts will be made by the Trustee in cooperation with the Special Arbitrator to resolve Claims of Non-Settling Tort Claimants that are not settled under the Plan.  If such attempts are not successful within the time frames provided in the Litigation Trust Agreement, individual Non-Settling Tort Claimants will have the right to proceed to trial, including jury trial, if available, in the Bankruptcy Court or in the District Court in accordance with applicable law or

may waive the right to a jury trial in such Tort Claimant's sole discretion, <u>provided, that</u> such Non-Settling Tort Claimant has not already waived his or her right to seek relief in the District Court or before a jury. In accordance with Bankruptcy Code § 1123(b)(3), after the Effective Date, the Trustee of the Litigation Trust will succeed to all claims, defenses, counterclaims, set offs, and recoupments belonging to the Debtor or its Estate with respect to the Tort Claims of the Non-Settling Tort Claimants only. There will be no distributions on account of the Allowed Claims of the Non-Settling Tort Claimants until the Claims of all Non-Settling Tort Claimants have been determined by a Final Order.

14.2    <u>Funding on the Effective Date</u>. All payments under the Plan which are due on the Effective Date from the Diocese will be funded from the Fund with respect to payment of Allowed Tort Claims, Allowed Unknown Tort Claims and Relationship Tort Claims and the Cash on hand and from any other funding received by the Diocese.

14.3    <u>Funding After the Effective Date</u>. The funds necessary to ensure continuing performance under the Plan after the Effective Date will be (or may be) obtained from:

(a)    any and all remaining Cash retained by the Reorganized Debtor after the Effective Date;

(b)    any Insurance Action Recoveries or from settlements with Settling Insurers;

(c)    any reserves established by the Debtor or the Reorganized Debtor; and

(d)    any other contributions or financing (if any) which the Reorganized Debtor may obtain on or after the Effective Date;

<u>provided, however, that</u> no part of the Fund may be used to pay other Creditors under the Plan.

14.4    <u>Procedure for Determination of Claims Other Than Tort Claims</u>.

(a)    <u>Objections to Claims</u>. Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed prior to the Effective Date, the Reorganized Debtor may object to the allowance of any Claim against the Debtor or seek

estimation thereof on any grounds permitted by the Bankruptcy Code by filing the appropriate pleading in the Bankruptcy Court at any time prior to the first Business Day which is one hundred eighty (180) days after the Effective Date; provided, however, that any Disputed Tort Claims held by Settling Tort Claimants, Relationship Tort Claimants or Unknown Tort Claimants will be determined by the Special Arbitrator in accordance with the Settlement Trust and the Plan and any Disputed Tort Claims held by Non-Settling Tort Claimants will be determined pursuant to the Litigation Trust Agreement and the Litigation Protocol.

(b)     Disputed Claims.  No payments or other distributions will be made to holders of Claims unless and until such Claims are Allowed Claims pursuant to a Final Order or final determination of the Special Arbitrator.  If a Claim is not an Allowed Claim by the Effective Date or when payment is otherwise due under the Plan, payment on the Allowed Claim (plus interest, if any, as provided herein) will commence on the Claim Payment Date.

(c)     Treatment of Contingent Claims.  Until such time as a Contingent Claim or a Contingent portion of an Allowed Claim becomes fixed or absolute or is Disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions under the Plan. The holder of a Contingent Claim will only be entitled to a distribution under the Plan when and if such Contingent Claim becomes an Allowed Claim subject, however, to the provisions of Bankruptcy Code § 502(e).

14.5   Payments Effective Upon Tender.  Whenever the Plan requires payment to be made, such payment will be deemed made and effective upon tender thereof by the Debtor or the Reorganized Debtor to the Creditor to whom payment is due.  If any Creditor refuses a tender, the amount tendered and refused will be held by the Debtor or the Reorganized Debtor for the benefit of that Creditor pending final adjudication of the dispute.  However, when and if the dispute is finally adjudicated and the Creditor receives the funds previously tendered and refused, the Creditor will be obliged to apply the funds in accordance with the Plan as of the date of the tender; and while the dispute is pending and after adjudication thereof, the Creditor will not have

the right to claim interest or other charges or to exercise any other rights which would be enforceable by the Creditor if the Debtor or the Reorganized Debtor failed to pay the tendered payment.

14.6    Preservation of Debtor's Claims, Demands, And Causes of Action.  Except as otherwise provided in the Plan, all claims, demands, and causes of action of any kind or nature whatsoever held by, through, or on behalf of the Debtor and/or the Estate against any other Person, including but not limited to, all Avoidance Actions and Contribution Actions arising before the Effective Date and all Insurance Actions, which have not been resolved or disposed of prior to the Effective Date, are hereby preserved in full for the benefit of the Reorganized Debtor, except for such claims or causes of action, cross-claims, and counterclaims which have been released hereunder or pursuant to a Final Order prior to the Effective Date and except those that are transferred to the Trustee of the Settlement Trust or  the Litigation Trust or to the Unknown Claims Representative.  To the extent necessary, the Reorganized Debtor is hereby designated as the estate representative pursuant to and in accordance with Bankruptcy Code § 1123(b)(3)(B). Furthermore, in accordance with Bankruptcy Code § 1123(b)(3), after the Effective Date, the Reorganized Debtor will own and retain, and may prosecute, enforce, compromise, settle, release, or otherwise dispose of, any and all claims, defenses, counterclaims, set offs, and recoupments belonging to the Debtor or its Estate.  The Debtor and the Reorganized Debtor will also be entitled to assign their rights under the Plan.  On the Effective Date, to the extent necessary, the Reorganized Debtor is hereby designated as the estate representative pursuant to and in accordance with Bankruptcy Code § 1123(b)(3)(B) with respect to the Insurance Actions.  On the Effective Date, the Litigation Trust and the Settlement Trust are hereby designated as the estate representative pursuant to and in accordance with Bankruptcy Code § 1123(b)(3) with respect to any and all claims, defenses, counterclaims, set offs, and recoupments belonging to the Debtor or its Estate with respect to the Tort Claims of Settling Tort Claimants, Relationship Tort Claimants, Unknown Tort Claimants and Non-Settling Tort Claimants.

14.7    <u>Prosecution of Certain Avoidance Actions</u>.    Within thirty (30) days of the Effective Date, the Trustee will fund the Avoidance Actions Fund from the Initial Contribution, and the Debtor or Reorganized Debtor will assign to the Unknown Claims Representative certain Avoidance Actions.  The Unknown Claims Representative will have the right, after the Effective Date, without the necessity of seeking Court approval, to hire such professionals as he deems necessary to assist him in investigating and, if necessary, prosecuting the assigned Avoidance Actions.  Under no circumstances will the Debtor be obligated to fund more than the Avoidance Actions Fund to assist the Unknown Claims Representative nor will the Estate, the Settlement Trust, the Reorganized Debtor or the Litigation Trust be liable for any such costs, expenses or actions of the Unknown Claims Representative or any professionals retained by him.  Neither the Unknown Claims Representative nor any professionals hired by him to investigate or prosecute the assigned Avoidance Actions will have to seek Court approval for payment of any fees and costs incurred.  Notwithstanding any provision in the Plan for the payment of any fees or costs of the Unknown Claims Representative after the Effective Date with respect to matters involving the Unknown Claims Reserve or the Tort Claims of Unknown Tort Claimants, any fees or costs of the Unknown Claims Representative related to investigation or prosecution of the assigned Avoidance Actions will be paid from the Avoidance Actions Fund and not from any other source.  Any recoveries from the assigned Avoidance Actions, if any, will be subject to the Sharing Arrangement and will be distributed to the Settlement Trust, to be distributed to Settling Tort Claimants whose Tort Claims have been Allowed and the holders of Allowed Unknown Tort Claims in accordance with the Weighted Distribution Ratio and other terms of the Plan.

14.8    <u>Special Provisions Governing Unimpaired Claims</u>.  Except as otherwise provided in the Plan, nothing will affect the Debtor's or the Reorganized Debtor's rights and defenses with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to or setoffs or recoupments against such Unimpaired Claims.

QBTUC\811017.00003\1653751.1

14.9    **Operative Documents.** The Debtor will prepare any documents which the Debtor and the Reorganized Debtor deem are necessary or appropriate to execute the Plan or provided for under the Plan, including, but not limited to, the Settlement Trust Agreement, the Litigation Trust Agreement and the pledge of the Restricted St. Augustine Account. If there is any dispute regarding the reasonableness or propriety of any such documents after reasonable and good faith efforts by the Debtor to negotiate and obtain approval of the documents by the other affected Person(s), any such dispute will be presented to the Bankruptcy Court for determination at or in conjunction with the Confirmation Hearing.

14.10    **Return of Deposits.** To the extent that the Debtor was required to and did pay deposits to any Creditors after the Petition Date as a condition of or as security for continued service after the Petition Date, including, but not limited to, deposits paid to utility companies for adequate assurance of payment pursuant to Bankruptcy Code § 366, then, upon satisfaction of the Claims of such Creditor(s) pursuant to the Plan, any such deposits, together with any interest or other income earned thereon, if any, will be refunded to the Reorganized Debtor within fifteen (15) days of demand by the Reorganized Debtor for return of such deposit(s).

14.11    **Administrative Claims Bar Date.** All requests for payment of administrative costs and expenses incurred prior to the Effective Date pursuant to Bankruptcy Code §§ 507(a)(1) and 503(b) will be served and filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date. Any such Claim which is not served and filed within this time period will be forever barred. Any Claims for fees, costs, and expenses incurred by any Chapter 11 Professionals after the Effective Date will be treated as part of the fees and expenses of the Reorganized Debtor and need not be submitted to the Bankruptcy Court for approval. After approval by the Bankruptcy Court of the final fee applications of the Chapter 11 Professionals for services provided and costs incurred during the course of administration of the Reorganization Case and prior to the Effective Date, the Chapter 11 Professionals will not be required to submit any further fee applications to the Bankruptcy Court in accordance with Bankruptcy Code § 330.

14.12 <u>Delivery Of Distributions</u>.  Distributions will be made by the Debtor, the Reorganized Debtor or the Trustee of the Settlement Trust or the Litigation Trust as follows:

(a)    At the addresses set forth in the Proofs of Claim filed by holders of Claims (or the last known addresses of such holders if no Proof of Claim is filed or if the Debtor, the Reorganized Debtor or the Trustee has not been notified of a change of address);

(b)    At the addresses set forth in written notices of address change delivered to the Debtor, the Trustee or the Reorganized Debtor after the date of any related Proof of Claim; or

(c)    At the addresses reflected in the Schedules if no Proof of Claim has been filed and the Debtor, the Trustee or the Reorganized Debtor has not received a written notice of change of address.

(d)    If any distribution to a holder of an Allowed Claim is returned as undeliverable, no further distributions to such holder will be made unless and until the Debtor, the Trustee or the Reorganized Debtor is notified of such holder's then-current address, at which time all missed distributions will be made to the holder without interest.  All claims for undeliverable or uncashed distributions must be made on or before the first (1st) anniversary of the date applicable to such distribution, or with respect to the a final distribution to a Creditor holding an Allowed Claim, within ninety (90) days thereof.  After such date, all such unclaimed property will revert to the Reorganized Debtor or the Trustee for further distribution in accordance with the Plan, and the Claim of any holder or successor to such holder with respect to such property will be discharged and forever barred, notwithstanding any federal or state escheat law to the contrary.

14.13 <u>Limitation on De Minimis Payments</u>.  The Debtor or the Reorganized Debtor will make no distributions of less than $50 to any Creditor holding an Allowed Claim.  If a Creditor holding an Allowed Claim does not receive a distribution due to the provisions of this Section on any date on which a distribution is to be made to Creditors in the same Class as the Creditor being entitled to such de minimis payment, then the Claim (so long as it is an Allowed Claim) will remain eligible for distributions on any subsequent distribution date, subject to the provisions of

this Section.  In all events, the Creditor holding an Allowed Claim which has not received a distribution on any previous distribution dates because of this provision, will receive such distribution on the date that final distribution is made to Creditors in the same Class as the Creditor being entitled to such de minimis payment.

## ARTICLE 15

## DETERMINATION OF TORT CLAIMS

15.1 <u>Criteria for Determining Validity of Tort Claims and Tiers</u>. Each Tort Claim that has not been Allowed as of the Effective Date or is not a Tort Compromise Claim will be evaluated and be Allowed or Disallowed based upon the following:

(a) The Diocese and the Committee will make a recommendation to the Special Arbitrator regarding Allowance of a Tort Claim and Tier placement.  If the Committee and the Diocese are in agreement and the Settling Tort Claimant agrees to the recommendation, the Tort Claim will be Allowed as recommended by the Diocese and the Committee and as agreed by the Settling Tort Claimant.  If the Diocese and the Committee disagree or the Tort Claimant does not accept the recommendation, the Special Arbitrator will determine the Tort Claim in accordance with the terms of this Article.

(b) The Special Arbitrator will consider the evidence that the abuse occurred. The Special Arbitrator will consider the frequency and duration of the abuse, whether the description provided by the Tort Claimant in the Proof of Claim or any other documentation submitted by the Tort Claimant fits any pattern of the alleged perpetrator as developed by the Diocese, the Committee or other third parties who have information regarding the alleged perpetrator and have submitted such information and documentation to the Special Arbitrator.

(c) The Special Arbitrator will consider the evidence of injury to Tort Claimant both the injury of the event itself and the emotional injury suffered thereafter.  Factors that the Special Arbitrator will consider include the frequency or duration of the abuse; the age of the Tort Claimant at the time the abuse occurred; the age of the Tort Claimant at the time the Tort

QBTUC\811017.00003\165375.1

1   Claim is asserted; the effect that the abuse has had on the Tort Claimant's life; the presence or

2   absence of drug or alcohol abuse; any criminal history of the Tort Claimant; any history or pattern

3   of behavior to establish that the Tort Claimant has been an abuser; and any other information the

4   Special Arbitrator deems relevant to assist in the evaluation of injury to the Tort Claimant.

5           (d)     The Special Arbitrator will consider evidence that the claim is not barred

6   by limitations and the strength of the Tort Claimant's case that he or she was excused from

7   bringing the Tort Claim because it was preserved by an extension of the statute of limitations

8   under applicable law.  In doing so, the Special Arbitrator will strictly comply with established

9   case and statutory law in the State of Arizona, will not seek to extend applicable case and

10  statutory law pertaining to the statute of limitations, and will not Allow any Tort Claim which is

11  brought beyond the otherwise applicable statute of limitations unless the Claimant can show, by a

12  preponderance of the evidence, that:

13              (i)     he or she suffered from repressed memory or other incompetence

14              recognized under Arizona law as extending the statute of limitations, as established by

15              the written evaluation of a board certified and licensed psychiatrist or psychologist

16              who has examined the Tort Claimant which is presented to the Special Arbitrator; and

17              (ii)    the Proof of Claim was filed within two (2) years of the disability

18              being removed.

19          (e)     The Special Arbitrator will consider evidence of the Diocese's

20  responsibility for the acts which give rise to the Tort Claim.  The Tort Claimant will be required

21  to present evidence that the alleged perpetrator was employed by or was acting on behalf of the

22  Diocese and that the acts were committed in the course and scope of the perpetrator's employment

23  or association with the Diocese.  The fact that the alleged perpetrator was a cleric or held some

24  religious position will not be sufficient for a finding of responsibility unless the alleged

25  perpetrator was employed by or acting on behalf of the Diocese.  The Special Arbitrator will

26  consider the extent of the knowledge or notice that the Debtor had that the perpetrator had a

propensity to molest minors. The Special Arbitrator will also consider whether the alleged perpetrator was one of the persons identified by the Diocese as one against whom credible allegations of sexual abuse had been made and whether the alleged abuse occurred after the Diocese knew or should have known about any abuse previously committed by the alleged perpetrator.

(f)    The Special Arbitrator will determine, in her discretion, the weight that each of the factors to be used in the evaluation of a Tort Claim (including an Unknown Tort Claim) by the Special Arbitrator will be given in determining Allowance and placement of a Tort Claim (including an Unknown Tort Claim) in a Tier.

(g)    The Special Arbitrator will not Allow a Tort Claim, including an Unknown Tort Claim in Tier Four unless the Tort Claimant is a minor at the time the Tort Claim (or Unknown Tort Claim) is asserted or the Tort Claim (or Unknown Tort Claim) is brought within two (2) years of the date such minor attains the age of majority.

(h)    If the Tort Claim of a Settling Tort Claimant or Unknown Tort Claim is Allowed by the Special Arbitrator in accordance with the foregoing, the Allowed Tort Claim or Allowed Unknown Tort Claim will be treated in accordance with the provisions of Article 12. If such Tort Claim of a Settling Tort Claimant or Unknown Tort Claim is Disallowed, such Tort Claimant or Unknown Tort Claimant will receive nothing under the Plan and will have no further Claim or right against the Debtor, the Reorganized Debtor, the Trustee or the Special Arbitrator.

15.2    Documents and Evidence to be Presented to the Special Arbitrator. Nothing contained in the Plan will preclude a Tort Claimant (including an Unknown Tort Claimant), the Diocese or the Committee from presenting any other evidence to the Special Arbitrator to allow the Special Arbitrator to evaluate the Tort Claim (including any Unknown Tort Claim). Specifically, the Tort Claimant, the Diocese or the Committee can request an evidentiary hearing and present witnesses and other evidence relevant to the evaluation of a Tort Claim or Unknown Tort Claim by the Special Arbitrator. The Tort Claimant or Unknown Tort Claimant, the Diocese

or the Committee can request the Special Arbitrator to issue subpoenas compelling the attendance of witnesses at the evidentiary hearing. If the Special Arbitrator approves such request, the witness will be compelled to attend to the extent the witness could be compelled to attend a hearing in the Bankruptcy Court in which the Reorganization Case is pending. The Special Arbitrator may also request from the Tort Claimant (including any Unknown Tort Claimant), the Committee or the Debtor any materials that will aid the Special Arbitrator in evaluating a Tort Claim (including an Unknown Tort Claim).

15.3    Adherence to Criteria.   The Special Arbitrator will not alter the criteria to be applied in evaluating a Tort Claim without prior notice to the Committee, the Tort Claimant (or Unknown Tort Claimant) and the Diocese and a hearing in the Bankruptcy Court at which any objections of the Tort Claimant (or Unknown Tort Claimant), the Committee or the Diocese will be heard. If the Court modifies the criteria, the criteria, as modified, will be applied by the Special Arbitrator. If the Court denies the request of the Special Arbitrator, the criteria will not be modified and must be applied by the Special Arbitrator as set forth in the Plan.

15.4    Notice of Allowance.   The Special Arbitrator will give notice to the Reorganized Debtor, the Tort Claimant (or Unknown Tort Claimant) and the Committee Professionals of the Allowance of any Tort Claim and the Tier in which the Special Arbitrator is Allowing the Tort Claim. The Reorganized Debtor, the Tort Claimant (or Unknown Tort Claimant) or the Committee may object to such Allowance, including the Tier placement by written objection to the Special Arbitrator with twenty (20) days of receiving such notice. The Special Arbitrator will serve notice on the Reorganized Debtor, the Tort Claimant (or the Unknown Tort Claimant) and the Committee Professional if the Special Arbitrator is changing the Tier Placement or decision to Allow the Tort Claim. The decision of the Special Arbitrator is final and nonappealable.

**ARTICLE 16**

**TREATMENT OF EXECUTORY CONTRACTS**

16.1    <u>Assumption and Rejection of Executory Contracts</u>.  On the Confirmation Date, except as otherwise provided herein, all Executory Contracts of the Debtor will be deemed rejected in accordance with the provisions and requirements of Bankruptcy Code §§ 365 and 1123 other than those Executory Contracts that: (a) have already been assumed by order of the Bankruptcy Court; (b) are subject to a motion to assume Executory Contracts that is pending on the Confirmation Date; or (c) are subject to a motion to reject an Executory Contract pursuant to which the requested effective date of such rejection is after the Confirmation Date.  Approval of any motions to assume Executory Contracts pending on the Confirmation Date will be approved by the Bankruptcy Court on or after the Confirmation Date by a Final Order.  Each Executory Contract assumed pursuant to this Article 16 will revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

16.2    <u>Claims Based on Rejection of Executory Contracts</u>.  Every Claim asserted by a Creditor arising from the rejection of an Executory Contract pursuant to the Plan must be filed with the Bankruptcy Court no later than the first Business Day which is thirty (30) days after the Confirmation Date or the first Business Day that is thirty (30) days after entry of the Final Order of the Bankruptcy Court approving rejection if such Final Order is entered after the Confirmation Date.  Every such Claim which is timely filed, as and when it becomes an Allowed Claim, will be treated under Class 8 of the Plan.  Every such Claim which is not timely filed by the deadline stated above will be forever barred, unenforceable, and discharged, and the Creditor holding the Claim will not receive or be entitled to any distribution under the Plan on account of such Claim.

16.3    <u>Indemnification of Members, Managers, Officers, and Employees</u>.  The obligation of the Debtor to indemnify any Person serving at any time on or prior to the Effective Date as one

QBTUC\811017.00003\1653759.1

69

of its officers, employees or volunteers by reason of such Person's service in such capacity to the extent provided in any of the Debtor's constituent documents, by a written agreement with the Debtor or under the laws of State of Arizona pertaining to the Debtor or under Canon Law, will be deemed and treated as Executory Contracts that are assumed by the Reorganized Debtor pursuant to the Plan and Bankruptcy Code § 365 as of the Effective Date. Accordingly, such indemnification obligations of the Debtor to indemnify any Person will survive unimpaired and unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date.

## ARTICLE 17

### CONDITIONS TO EFFECTIVE DATE

17.1    Conditions To Occurrence Of Effective Date. Each of the following are conditions to the Effective Date, which conditions must be satisfied or waived by the Debtor:

(a)    The Confirmation Order has been entered by the Bankruptcy Court and the Confirmation Order has become a Final Order.

(b)    The Confirmation Order is in form and substance satisfactory to the Debtor.

(c)    The transfers have been made to the Fund and the Settlement Trust has been funded with, at least, the Initial Contribution.

(d)    All actions, documents, and agreements necessary to implement the Plan will have been effected or executed.

17.2    Debtor's Obligations to Cause Effective Date to Occur. Upon satisfaction of the conditions to the Effective Date, the following will occur:

(a)    Payment, Cure and Reinstatement or Setoff of Allowed Claims Other Than Tort Claims. The Reorganized Debtor will pay or make provision for the prompt payment to holders of Allowed Claims to whom payments, pursuant to the Plan, are to be made on the Effective Date by the Debtor.

(b) <u>Satisfaction of Tort Claims</u>. Unless the Settlement Trust and the Litigation Trust will have been earlier established, the Reorganized Debtor will cause the Settlement Trust and the Litigation Trust to be established. The Reorganized Debtor will deliver the Initial Contribution to the Trustee of the Settlement Trust. Any Cash payments provided for under the Settlement Trust Agreement, the Litigation Trust Agreement and the Plan and any other assignments or pledges to the Trustee will be in full release and complete satisfaction and discharge of the Tort Claims, including the Unknown Tort Claims and Relationship Tort Claims.

17.3 <u>Waiver Of Conditions</u>. The Debtor, in its sole discretion, may waive any of the conditions to the occurrence of the Effective Date including waiver of the Final Order condition in Section 17.1 above any time from and after the Confirmation Date. In that event, the Debtor will be entitled to render any or all of its performance under the Plan prior to what otherwise would be the Effective Date if the above-referenced conditions were not waived, including, but not limited to, the right to perform under any circumstances which would moot any appeal, review, or other challenge of any kind to the Confirmation Order if the Confirmation Order is not stayed pending such appeal, review, or other challenge.

17.4 <u>Effect of Non-occurrence of Conditions</u>. If the consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will: (a) constitute a waiver or release of any Claims by or against the Debtor; (b) prejudice in any manner the rights of the Debtor; (c) be admissible in any action, proceeding or case against the Debtor; or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtor in any respect.

17.5 <u>Merger; Choice of Law</u>. All obligations of the Debtor to all Creditors will be merged into the Plan, the Plan Documents and any other documents executed by the Reorganized Debtor in conjunction with confirmation of the Plan and the occurrence of the Effective Date and delivered to the respective affected Creditors. All such obligations of the Reorganized Debtor will be evidenced by the Plan and such executed and delivered documents. Unless otherwise

provided therein, such documents will be governed by and construed in accordance with Arizona law.

17.6    Other Obligations of the Reorganized Debtor.  The Reorganized Debtor will:

(a)    Review all Claims other than Tort Claims filed against the Estate and, if warranted, object to Claims within the time period provided in Section 14.4(a) of the Plan; and

(b)    Perform all of its obligations under the Plan Documents, including, without limitation, those obligations provided in the Settlement Trust Agreement and the Litigation Trust Agreement.

## ARTICLE 18

### EFFECTS OF CONFIRMATION

18.1    Discharge.    Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date the Debtor will be discharged from and its liability will be extinguished completely in respect of any Claim, including, without limitation, Tort Claims, Relationship Tort Claims and Unknown Tort Claims and debt, whether reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed  or  not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that arose from any agreement of the Debtor entered into or obligation of the Debtor incurred before t  he Confirmation Date, or from any conduct of the Debtor prior to the Confirmation Date, or that otherwise arose before the Confirmation Date, including, without limitation, all interest, if any, on any such Claims and debts, whether such interest accrued b efore or after the date of commencement of the Reorganization Case, and including, without limitation, all Claims and debts based upon or arising out of Tort Claims, Relationship Tort Claims or Unknown Tort Claims and from any liability of the kind specifi ed in Bankruptcy Code §§ 502(g), 502(h), and 502(i), whether or not a Proof of Claim is filed or is deemed filed under Bankruptcy Code § 501, such Claim is Allowed under Bankruptcy Code §    502, or the holder of such Claim has accepted the Plan.

60

QBTUC\811017.00003\1653754.1

18.2    Vesting. Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date the Reorganized Debtor will be vested with all of the property of the Estate free and clear of all Claims, Liens, encumbrances, charges and other interests of Creditors, and will thereafter hold, use, dispose or otherwise deal with such property and operate its business free of any restrictions imposed by the Bankruptcy Code or by the Court.  All Avoidance Actions (except those assigned to the Unknown Claims Representative), Contribution Actions and Insurance Actions are hereby preserved for the benefit of the Reorganized Debtor.   Any Avoidance Actions transferred to the Unknown Claims Representative are hereby preserved for the benefit of the Trustee of the Settlement Trust (including the Unknown Claims Reserve), subject to the Sharing Arrangement.  Prosecution and settlement of the Avoidance Actions, the Contribution Actions and the retained interest in any Insurance Actions will be the exclusive responsibility of the Reorganized Debtor except as otherwise assigned.  The Reorganized Debtor will have sole and absolute discretion over whether to prosecute or settle such causes of action except to the extent that some Avoidance Actions are assigned to the Unknown Claims Representative.

18.3    Channeled Claims.  Except as otherwise expressly provided in the Plan and in this Article 18, in consideration of: (a) the promises and obligations of the Participating Third Parties under the Plan, including the establishment and funding of the Settlement Trust and the Litigation Trust; and (b) the undertakings of the Settling Insurers pursuant to their respective settlements with the Debtor on the Effective Date and on such date as an Insurer becomes a Settling Insurer if such action occurs after the Effective Date, all Persons who have held, hold, or may hold Tort Claims, Relationship Tort Claims or Unknown Tort Claims, whether known or unknown, will be forever barred from pursuing such Claims, whether such Claims are based upon tort or contract or otherwise, that they heretofore, now or hereafter possess or may possess against the Settling Parties, in each case based upon or in any manner arising from or related to any acts or omissions of the Diocese or any of the other Settling Parties related to any sexual misconduct or other acts

QBTUC\811017.00003\1653751.1

committed by any clergy, employees, volunteers or other Persons associated with the Diocese and, further, including, without limitation: (a) Tort Claims, Relationship Tort Claims or Unknown Tort Claims; (b) Claims for personal injuries, including emotional distress; (c) those of any Person against whom any Claim, demand, proceeding, suit or cause of action based upon or in any manner arising from or relating to any of the matters enumerated or described herein has been or may be asserted (including, without limitation, rights of indemnity, whether contractual or otherwise, contribution Claims and subrogation Claims); (d) those for damages, including punitive damages; (e) those for attorneys' fees and other expenses, fees or costs; (f) those for any possible economic loss or loss of consortium; (g) those for damages to reputation; and (h) those for any equitable remedy. Except as otherwise expressly provided in the Plan and the Plan Documents, the provisions of this Section 18.3 shall further operate, as between all Settling Parties, as a mutual release of all Claims which any Settling Party may have against another Settling Party. The foregoing channeling provisions are an integral part of the Plan and are essential to its implementation.

18.4 <u>Exculpation And Limitation Of Liability</u>. Neither the Debtor, the Reorganized Debtor, the Committee, the Unknown Claims Representative, the Guardian ad Litem nor any of their respective present or former members, managers, officers, directors, employees, advisors, attorneys, or agents acting in such capacity (the "Released Parties") will have or incur any liability to, or be subject to any right of action by, any holder of a Claim or any other party in interest or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Reorganization Case, the pursuit of confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct; and in all respects such parties will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan or in the context of the Reorganization Case.

18.5    **Permanent Injunction Against Prosecution of Released and Channeled Claims**. Except as otherwise expressly provided in the Plan, for the consideration described in Section 18.3 above or any agreement by which a Person becomes a Participating Third Party, a Settling Insurer or a Settling Party, or if such Person is a Released Party on the Effective Date, all Persons who have held, hold, or may hold Channeled Claims or Claims against the Diocese, any Participating Third Party, any Settling Insurer, any Settling Party or any Released Party, whether known or unknown, and their respective agents, attorneys, and all others acting for or on their behalf, shall be permanently enjoined on and after the Effective Date from: (a) commencing or continuing in any manner, any action or any other proceeding of any kind with respect to any Claim, including, but not limited to, any Tort Claim, Relationship Tort Claims or Unknown Tort Claim against the Released Parties, the Settling Parties, the Diocese, the Reorganized Debtor, the Settlement Trust, the Litigation Trust, the Trustee, and their respective predecessors, successors, officials, shareholders subsidiaries, divisions, affiliates, representatives, attorneys, merged or acquired companies or operations or assigns (collectively, the "Parties") or the property of the Parties; (b) seeking the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Parties or the property of the Parties, with respect to any discharged Claim or Channeled Claim; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Parties or the property of the Parties with respect to any discharged Claim or Channeled Claim; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Parties with respect to any discharged Claim or Channeled Claim; and (e) taking any act, in any manner and in any place whatsoever, that does not conform to or comply with provisions of the Plan, the Settlement Trust Agreement or the Litigation Trust Agreement. Notwithstanding this Section 18.5, each Non-Settling Tort Claimant will be entitled to continue or commence an action against the Trustee of the Litigation Trust (in his capacity as Trustee only and not in his individual capacity) in which the Non-Settling Tort Claimant will be entitled to a jury trial for the sole purpose of obtaining a judgment

as permitted by the Litigation Trust Agreement, thereby liquidating such Non-Settling Tort Claimant's Claim so that it may be paid with other Allowed Tort Claims in the ordinary course of the operations of the Litigation Trust, consistent with the provisions of the Litigation Trust Agreement. The holder of any such judgment will be enjoined from executing against the Litigation Trust or its assets. In the event any Person takes any action that is prohibited by, or is otherwise inconsistent with the provisions of Article 18 of the Plan, then, upon notice to the Court by an affected Party, the action or proceeding in which the Claim of such Person is asserted will automatically be transferred to the Court (or, as applicable, the District Court) for enforcement of the provisions of Article 18 of the Plan. The foregoing injunctive provisions are an integral part of the Plan and are essential to its implementation.

## ARTICLE 19

## MODIFICATION OF PLAN

The Plan may be modified by the Debtor or the Reorganized Debtor (as applicable) from time to time in accordance with, and pursuant to, Bankruptcy Code § 1127. The Plan may be modified by the Debtor at any time before the Confirmation Date, provided that the Plan, as modified, meets the requirements of Bankruptcy Code §§ 1122 and 1123, and the Debtor has complied with Bankruptcy Code § 1125.

## ARTICLE 20

## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction for the following purposes:

20.1    In General.    The Bankruptcy Court will retain jurisdiction to determine the allowance and payment of any Claims upon any objections thereto (or other appropriate proceedings) by the Debtor, by the Reorganized Debtor, or by any other party in interest entitled to proceed in that manner. As part of such retained jurisdiction, the Bankruptcy Court will continue to determine the allowance of Administrative Claims and any request for payment

thereof, including Administrative Claims for Professional Charges. The Bankruptcy Court will not retain or obtain jurisdiction to determine any internal disputes between the Diocese, a Parish or any other related Person that, under applicable Canon Law, would be determined in a specialized religious court.

20.2 <u>Plan Disputes And Enforcement</u>. Subject to the limitations set forth in Section 20.1 above, the Bankruptcy Court will retain jurisdiction to determine any dispute which may arise regarding the interpretation of any provision of the Plan. The Bankruptcy Court also will retain jurisdiction to enforce any provisions of the Plan and any and all documents relating to the Plan, including, but not limited to, any actions to enforce the releases and injunctions provided for in Article 18 of the Plan. The Bankruptcy Court will also retain jurisdiction over any matter relating to the implementation, effectuation, and/or consummation of the Plan as expressly provided in any provision of the Plan.

20.3 <u>Further Orders</u>. The Bankruptcy Court will retain jurisdiction to facilitate the performance of the Plan by entering, consistent with the provisions of the Plan, any further necessary or appropriate order regarding enforcement of the Plan, the Plan Documents and any provisions thereof, and to protect the Debtor, the Reorganized Debtor and the Settling Parties from actions prohibited under the Plan. Subject to the limitations provided in Section 20.1 above, in addition, the Bankruptcy Court will retain jurisdiction to facilitate or implement the allowance, disallowance, treatment, or satisfaction of any Claim, or any portion thereof, pursuant to the Plan other than Tort Claims, Unknown Tort Claims or Relationship Tort Claims to which an objection has not been filed prior to the Effective Date.

20.4 <u>Governmental Units Or Regulatory Agencies</u>. The Bankruptcy Court will retain jurisdiction to adjudicate any dispute or to hear and determine any action taken, proposed, or threatened by any state, federal, or local governmental regulatory agency or unit having or asserting jurisdiction or power over the conduct of the business of the Debtor and/or the Reorganized Debtor.

60

20.5     Final Decree.  The Bankruptcy Court will retain jurisdiction to enter an appropriate final decree in the Bankruptcy Case.

20.6     Appeals.  In the event of an appeal of the Confirmation Order or any other kind of review or challenge to the Confirmation Order, and provided that no stay of the effectiveness of the Confirmation Order has been entered, the Bankruptcy Court will retain jurisdiction to implement and enforce the Confirmation Order and the Plan according to their terms, including, but not limited to, jurisdiction to enter such orders regarding the Plan or the performance thereof as may be necessary to effectuate the reorganization of the Debtor.

20.7     Executory Contracts.  The Bankruptcy Court will retain jurisdiction to determine any and all motions regarding assumption or rejection of Executory Contracts and any and all Claims arising therefrom.

20.8     Claims.  Subject to the limitations set forth in Section 20.1 above, the Bankruptcy Court will retain jurisdiction:  (a) to hear and determine any claim or cause of action by or against the Debtor, the Debtor's officers and employees, the Chapter 11 Professionals, and the Reorganized Debtor; (b) to adjudicate any causes of action or other proceeding currently pending or otherwise referenced here or elsewhere in the Plan, including, but not limited to, the adjudication of the Avoidance and Contribution Actions and any and all "core proceedings" under 28 U.S.C. §157(b) which may be pertinent to the Reorganization Case and which the Debtor or the Reorganized Debtor may deem appropriate to initiate and prosecute before the Court in aid of the implementation of the Plan; and (c) to hear objections to Tort Claims pending prior to the Effective Date of the Plan.

20.9     Modification of the Plan.  The Bankruptcy Court will retain jurisdiction to modify the Plan pursuant to the provisions of the Plan.

20.10     Failure of Court to Exercise Jurisdiction.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of the Reorganization Case, including matters set forth in this Article 20, this Article

20 will not diminish, control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE 21

## REORGANIZATION OF DIOCESE

21.1    Continued Corporate Existence and Vesting of Assets in the Reorganized Debtor. The Debtor will, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal entity, with all rights and powers of a corporation sole under the laws of the State of Arizona and without prejudice to any right to alter or terminate such existence under applicable state law. Except as otherwise provided in the Plan or any documents executed in conjunction with the Plan, on and after the Effective Date, all property of the Estate and any property acquired by the Debtor or the Reorganized Debtor under the Plan, including, but not limited to all Assets, will vest in the Reorganized Debtor free and clear of all Claims, liens, charges, or other encumbrances.  On and after the Effective Date, the Reorganized Debtor may operate its business and carry on its ministry and its mission and may use, acquire, or dispose of property, and compromise or settle any Claims without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

21.2    Management of Reorganized Debtor.  From and after the Effective Date, the Reorganized Debtor will continue to be managed in accordance with the principles of Canon Law and applicable state law, and the Bishop will be the sole director of the Reorganized Debtor.

21.3    Reorganization of Parishes.  After the Effective Date and no later than April 15, 2006, each Parish or other juridic person will be separately incorporated as an Arizona non-profit corporation.  Upon completion of the incorporation and establishment of the corporate existence of each such Parish or other juridic person, the Diocese, as part of the Plan, will convey legal title to the Parish Real Property to each Parish that is the owner of such Parish Property and perform such other acts or execute such other documents as are necessary to carry out the reorganization

under this Section 21.3.  The Debtor or the Reorganized Debtor will also execute any and all other documents necessary or appropriate to convey all interests of the Debtor in any property owned by a Parish or other juridic person to that Parish or other juridic person.  The Confirmation Order will specifically approve the transfer and direct the Diocese or the Reorganized Debtor to execute such documents as are necessary and appropriate to carry out such transfers.  For all purposes of determining the interest of the Reorganized Debtor in any Parish Real Property and any other property in which the Diocese has mere legal title, the transfers contemplated by this Article will be deemed to have occurred and be effective as of the Effective Date regardless of when the actual documents are recorded or executed evidencing such transfers.  Each Parish or other juridic person that is separately incorporated will be operated and governed in accordance with Canon Law.  Any disputes regarding the interpretation and governance of the legal structure and operation of a Parish or other juridic person will be referred to the appropriate Church agency for determination.

## ARTICLE 22

## **GENERAL PROVISIONS**

22.1    <u>Extension Of Payment Dates</u>.  If any payment date falls due on any day which is not a Business Day, then such due date will be extended to the next Business Day.

22.2    <u>Notices</u>.  Any notice required or permitted to be provided under the Plan will be in writing and served by regular first class mail, overnight delivery, or hand-delivery.

22.3    <u>Closing of the Case</u>.  At such time as the Plan has been fully administered and/or the Plan has been substantially consummated, the Reorganized Debtor will file an application for Final Order showing that the Plan has been substantially consummated and/or fully administered. The Reorganized Debtor will file an application for Final Order upon notice to only those Creditors and parties that, after the Effective Date, have specifically requested, after which an order approving the Reorganized Debtor's final report and closing the Reorganization Case may be entered.

Case 4:04-bk-04721-BMW    Doc 402    Filed 05/26/05    Entered 05/26/05 23:40:57    Desc
QBTUC\811017.00003\1653753.1    Main Document    Page 80 of 84

70

22.4 <u>Interest</u>. Whenever interest is to be computed under the Plan, interest will be simple interest and not compounded.

22.5 <u>Additional Assurances</u>. The Debtor, the Reorganized Debtor, and the Creditors holding Claims herein will execute such other further documents as are necessary to implement any of the provisions of the Plan.

22.6 <u>Confirmation By Nonacceptance Method</u>. The Debtor hereby requests, if necessary, confirmation of the Plan pursuant to Bankruptcy Code § 1129(b) with respect to any impaired Class of Claims which does not vote to accept the Plan.

22.7 <u>Withdrawal Of Plan</u>. The Plan may be withdrawn or revoked prior to entry of the Confirmation Order in which event the provisions of Section 22.12 will apply.

22.8 <u>Severability And Reformation</u>. It is the Debtor's intention to comply fully with the Bankruptcy Code and applicable nonbankruptcy law in proposing the Plan. Therefore, if any provision of the Plan is determined by the Bankruptcy Court to be contrary to the Bankruptcy Code or applicable nonbankruptcy law, that provision will be deemed severed and automatically deleted from the Plan, if it cannot be reformed or the provision or its interpretation will be deemed reformed to ensure compliance; <u>provided, however</u>, that nothing contained in this Section will prevent the Debtor from modifying the Plan in any manner whatsoever in accordance with and as set forth in the Plan. Pursuant to any ruling by the Bankruptcy Court regarding the subject matter of this Section, any such severance or reformation will be stated specifically in the Confirmation Order, which then will control notwithstanding any contrary or inconsistent provisions of the Plan.

22.9 <u>Prohibition Against Prepayment Penalties</u>. If the Debtor or the Reorganized Debtor chooses, in its sole and absolute discretion, to prepay any obligation on which deferred payments are provided for under the Plan, the Debtor or the Reorganized Debtor will not be liable or subject to the assessment of any prepayment penalty thereon unless otherwise ordered by the Bankruptcy Court.

70

Case 4:04-bk-04721-BMW    Doc 402    Filed 05/26/05    Entered 05/26/05 23:40:57    Desc
QBTUC\811017.00003\1653754.1    Main Document    Page 81 of 84

22.10 <u>Fractional Dollars</u>. Notwithstanding any other provision of the Plan, no payments or distributions under the Plan of or on account of fractions of dollars will be made. When any payment or distribution of or on account of a fraction of a dollar to any holder of an Allowed Claim would otherwise be required, the actual payment or distribution made will reflect a rounding of such fraction to the nearest whole number (up or down).

22.11 <u>Payment Of Statutory Fees And Filing of Quarterly Reports</u>. All fees payable pursuant to Section 1980 of Title 28 of the United States Code, 28 U.S.C. § 1980, as determined by the Bankruptcy Court at or in conjunction with the Confirmation Hearing, will be paid on or before the Effective Date and, thereafter, in accordance with applicable bankruptcy law. All quarterly reports of disbursements required to be filed by applicable bankruptcy law will be filed in accordance with applicable bankruptcy law.

22.12 <u>Reservation of Rights</u>. Except as expressly provided herein, the Plan will have no force or effect unless the Confirmation Order is entered by the Bankruptcy Court and the Effective Date has occurred. None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to the Plan will be or will be deemed to be an admission or waiver of any rights of the Debtor with respect to the holders of Claims prior to the Effective Date.

22.13 <u>No Professional Fees or Expenses</u>. No professional fees or expenses will be paid by the Debtor or the Reorganized Debtor with respect to any Claim except as specified in the Plan or as Allowed by Final Order of the Court.

22.14 <u>Committee</u>. Upon the occurrence of the Effective Date, the Committee and the Committee Professionals will continue for the sole purpose of participating in the Allowance and Disallowance of Tort Claims (including Unknown Tort Claims) as set forth in the Plan.

22.15 <u>Release of Unknown Claims Representative and Guardian ad Litem</u>. Upon the occurrence of the Effective Date, the Unknown Claims Representative and the Guardian ad Litem will be released from their respective duties and discharged except with respect to their rights

under Article 15 and except, as to the Unknown Claims Representative, the assigned Avoidance Actions.

22.16  _Headings_.  The headings of the articles, paragraphs, and section of the Plan are inserted for convenience only and will not affect the interpretation hereof.

22.17  _Section 1146 Exemption_.  Pursuant to Bankruptcy Code § 1146(c), any transfers of property pursuant hereto will not be subject to any document, recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

22.18  _Successors and Assigns_.  The rights, benefits and obligations of any Person named or referred to in the Plan will be binding upon, and will insure to the benefit of, the heir, executor, administrator, successor or assign of such Person.

1

2     DATED: May 25, 2005

3

4                                    THE ROMAN CATHOLIC CHURCH
                                     OF THE DIOCESE OF TUCSON, an
5                                    Arizona corporation sole

6

7     By _____
                                     The Most Reverend Gerald F. Kicanas, DD
8                                    Bishop of the Roman Catholic Church of the
                                     Diocese of Tucson
9

10    Prepared and Submitted By:

11

12    QUARLES & BRADY STREICH LANG LLP
      One South Church Avenue
13    Suite 1700
      Tucson, AZ  85701-1621
14

15
      By _____
16         Susan G. Boswell
           Kasey C. Nye
17
      Attorneys for Debtor
18    The Roman Catholic Church of the Diocese of
      Tucson
19

20

21

22

23

24

25

26