Quarles & Brady Streich Lang LLP
Firm State Bar No. 00443101
One South Church Avenue
Suite 1700
Tucson, AZ 85701-1621
TELEPHONE 520.770.8700

Attorneys for Debtor, the Roman Catholic Church of
the Diocese of Tucson

Susan G. Boswell (#004791)
Kasey C. Nye (#020610)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ARIZONA

In re:

THE ROMAN CATHOLIC CHURCH OF
DIOCESE OF TUCSON *aka* THE DIOCESE
OF TUCSON, an Arizona corporation sole,

Debtor.

In Proceedings Under Chapter 11

Case No. 4-04-bk-04721-JMM

### ORDER CONFIRMING THE THIRD AMENDED AND RESTATED PLAN OF REORGANIZATION DATED MAY 25, 2005, PROPOSED BY THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF TUCSON

This matter came before the Court pursuant to the "Third Amended and Restated Plan of Reorganization dated May 25, 2005," (the "Plan") proposed by debtor and debtor in possession the Roman Catholic Church of the Diocese of Tucson *aka* the Diocese of Tucson, an Arizona corporation sole (the "Diocese" or "Debtor") in the above-captioned Chapter 11 reorganization case (the "Reorganization Case") and the "Third Amended and Restated Disclosure Statement dated May 25, 2005" (the "Disclosure Statement"). Unless otherwise expressly stated in this confirmation order (the "Confirmation Order"), all capitalized defined terms used herein shall have the same meanings as defined in the Plan.

The Court conducted the plan confirmation hearing on July 11, 2005 (the "Confirmation Hearing"). Three objections to confirmation of the Plan were filed: (i) by certain alleged Tort

1  Claimants represented by the Law Offices of Ivan Safyan Abrams ("Abrams"), (ii) by certain

2  alleged Tort Claimants represented by G. David DeLozier P.C. ("DeLozier"), and (iii) by

3  Confidential Claimant No. 252, whose Tort Claim had previously been disallowed by the Court

4  (collectively, the "Objectors"). In conjunction with the Confirmation Hearing, the Court

5  considered (i) the pleadings filed by the Objectors, the Diocese, the Official Committee of Tort

6  Claimants (the "Committee") and any other party related to confirmation; (ii) the statements and

7  argument of counsel for the Diocese, the Committee, the Unknown Claims Representative, the

8  Guardian ad Litem, the Parishes, certain Tort Claimants, Abrams and DeLozier; (iii) the Plan, the

9  Disclosure Statement, and the "<u>Ballot Report And Certification Of Acceptances And Rejections</u>

10  <u>Of Chapter 11 Plan For Debtor's Third Amended And Restated Plan Of Reorganization Dated</u>

11  <u>May 25, 2005</u>" filed by the Diocese on July 8, 2005 (the "Ballot Report"); (iv) the testimony, both

12  live and by declaration, of the witnesses called by the Diocese in support of confirmation of the

13  Plan and of the Chairman of the Committee who testified in support of confirmation of the Plan;

14  (v) the pleadings filed by the Diocese and the Committee in support of the confirmation of the

15  Plan; (vi) the Exhibits proffered and admitted at the Confirmation Hearing by the Diocese in

16  support of confirmation of the Plan; and (vii) the entire record of the Reorganization Case.

17  Pursuant to Fed. R. Bankr. P. 9021, the Court enters this order as a separate document.

18  Pursuant to the findings, conclusions and statements of the Court at the conclusion of the

19  Confirmation Hearing, which are incorporated into this Order by this reference as if set forth in

20  full herein, the entire record before the Court in the Reorganization Case, the Plan and all

21  evidence and statements presented in support of or opposition to the Plan, the Court further finds

22  and concludes as follows:

23

24

25

26

## The Plan, Solicitation, The Confirmation Hearing And Jurisdiction

1.    By Order dated June 6, 2005, the Court: (1) approved the Disclosure Statement; (2) fixed the procedures relating to the solicitation and tabulation of votes on the Plan; (3) fixed deadlines for voting upon, and filing objections to confirmation of, the Plan; and (4) scheduled the Confirmation Hearing (the "Disclosure Statement Order").  By Order dated June 27, 2005, the Court approved the procedure for estimation of the votes of Tort Claimants.   Following the Court's entry of the Disclosure Statement Order, plan solicitation packages, including the Disclosure Statement, were timely transmitted to the creditors and other interested parties in accordance with the Disclosure Statement Order, Fed. R. Bankr. P., Rule 3017(d), and other applicable procedural rules.

2.    Voting on the Plan is summarized in the Ballot Report.  Based upon the voting, estimation of the alleged Tort Claim of the Tort Claimant who sought estimation and rejected the Plan, would not change the outcome of the voting in Class 10.

3.    The Plan and the Disclosure Statement Order authorized the Diocese to make nonmaterial, technical and non-adverse changes to the Plan.  After filing the Plan on May 25, 2005, and prior to solicitation, the Diocese made several nonmaterial, technical and non-adverse amendments to the Plan, which are set forth on the record in the Notice of Technical Amendments filed June 1, 2005 (Docket # 474), and in the Plan and redline of the Plan filed on June 10, 2005 (Docket # 566 and 567).

4.    After sending the Plan to creditors for vote, and as is typical of debtor-creditor negotiations in reorganization cases, the Diocese agreed to several additional nonmaterial, technical and non-adverse amendments to the Plan which were described on the record by counsel for the Debtor at the Confirmation Hearing and are set forth in the "Notice of Additional Technical Non-Adverse Amendments to the Diocese Third Amended and Restated Plan of Reorganization," filed on July 28, 2005 (Docket # 782).

5. These modifications identified in Paragraph 3 and 4 above are all in accordance with Article 19 of the Plan, 11 U.S.C. § 1127(a), and Fed. R. Bankr. P., Rule 3019. Because all modifications are either: (i) contemplated by, and/or clarify, the Plan; (ii) constitute a consensual resolution of the affected creditor's treatment under the Plan; and/or (iii) do not materially or adversely change the treatment of the Claim of any Creditor who has accepted the Plan (other than those creditors that have agreed to the modifications), no additional solicitation was necessary with respect to the Plan.

6. All references in this Order and in the findings and conclusions stated on the record at the Confirmation Hearing to the Plan include and incorporate any amendments or modifications to the Plan referenced in paragraphs 3, 4, and 5 above.

7. Due, proper and adequate notice of the Plan and the Disclosure Statement was mailed and served in compliance with the Disclosure Statement Order and the Bankruptcy Rules to all those required to receive notice and the opportunity to vote on and object to the Plan. Due, proper and adequate notice of the plan amendments as incorporated into the Plan pursuant to separate order of the Court was given in accordance with the terms of the Plan, the Disclosure Statement Order, the Bankruptcy Code and the Bankruptcy Rules. The Diocese has complied in all respects with the Disclosure Statement Order, the Bankruptcy Code and the Bankruptcy Rules with respect to notice and the opportunity to vote on and object to the Plan.

8. The Court has jurisdiction pursuant to 28 U.S.C. § 1334(a) and (b), 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019 to approve the exculpation, release and injunction provisions of Article 18 of the Plan (collectively, the "Exculpation, Releases and Injunctions") and to issue the injunctions provided for in Section 18.5 of the Plan. The Exculpation, Releases and Injunctions are integral parts of the Plan and essential to the funding, formulation, implementation and consummation of the Plan.

**The Estimate of The Unknown Claims Reserve**

9.    The Unknown Claims Representative and the Guardian ad Litem have exercised their reasoned judgment agreeing to the establishment of the Unknown Claims Reserve in the amount of $5,000,000.

10.    Adequate and credible evidence was presented to support the amount of the Unknown Claims Reserve.

11.    The Unknown Claims Representative and the Guardian ad Litem have exercised their prudent and reasoned judgment in representing the interests of the Unknown Tort Claimants, if any, and determining that any Unknown Tort Claimants who might come forward after confirmation of the Plan shall have their Unknown Tort Claims determined by the Special Arbitrator in accordance with the terms of the Plan and paid in accordance with the terms of the Plan and the Settlement Trust.

**The Plan Satisfies the Confirmation Requirements of the Bankruptcy Code.**

12.    Attached hereto as Exhibit "1" and by this reference incorporated herein, is a summary of the treatment of each Class of Claims in the Plan. The provisions for treatment of the Claims in the Plan are consistent with the provisions and requirements of 11 U.S.C. § 1123.

13.    Based upon the findings and conclusions stated on the record by the Court which are incorporated herein by this reference, the Plan complies in all respects with each of the provisions of 11 U.S.C. § 1129(a) to the extent applicable to the Plan and the Reorganization Case.

14.    Because all Impaired Classes which voted on the Plan voted to accept the Plan, 11 U.S.C. § 1129(b) either does not apply to the Plan and the confirmation of the Plan or has been satisfied.

Accordingly, IT IS HEREBY ORDERED as follows:

A.    The foregoing findings and conclusions and the findings and conclusions stated on the record at the Confirmation Hearing are hereby incorporated into and are a part of the Confirmation Order of the Court.

B.    All objections to confirmation of the Plan that have not been withdrawn, waived, or settled (if any) are overruled on the merits.

C.    The Plan, including its attached and incorporated modifications, amendments, separate agreements, compromises, settlements and assumptions and rejections of executory contracts and unexpired leases is confirmed.

D.    The form and content of the Settlement Trust Agreement and the Litigation Trust Agreement, which shall be substantially in the form of Exhibits "2" and "3" respectively, to this Confirmation Order (collectively, the "Trusts"), and which are incorporated herein by this reference, are hereby approved and the proposed allocations of the Trust Assets between the Settlement Trust and the Litigation Trust are hereby approved.

E.    Fred Boice is hereby appointed the Trustee of the Trusts (the "Trustee").

F.    The Trusts are to be funded by a transfer and assignment of the Cash that comprise the Fund as of the Effective Date of the Plan. As of the Effective Date, the Settlement Trust shall be vested with the Fund, free and clear of all Claims, liens, security interests, assignments, encumbrances, charges, and other interests of Creditors, except the Tort Claims of Settling Tort Claimants, Relationship Tort Claimants and Unknown Tort Claimants which are Allowed by the Special Arbitrator or, if the Trustee is required to fund the Litigation Trust, to the extent applicable, the Tort Claims of Non-Settling Tort Claimants solely against the Litigation Trust Fund. Any additions to the Fund which are transferred to the Trustee after the Effective Date shall also be transferred and shall vest, free and clear of all Claims, liens, security interests, assignments, encumbrances, charges, and other interests of Creditors, except the Claims of Settling Tort Claimants, Relationship Tort Claimants and Unknown Tort Claimants which are Allowed by the Special Arbitrator. The vesting of the property in the Settlement Trust and, if

1  funded, the Litigation Trust, does not and shall not subject the Trusts or the Diocese to any
2  liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy
3  law, including, without limitation, any laws affecting successor or transferee liability.

4      G.    If each Non-Settling Tort Claimant revokes his or her election to have his or her
5  Tort Claim resolved through the Litigation Protocol and there are no Non-Settling Tort Claimants
6  as of the Effective Date, the Trustee shall retain the Litigation Trust Fund in the Settlement Trust
7  to be held and distributed in accordance with the terms of the Plan and the Settlement Trust.

8      H.    Lina Rodriguez is hereby appointed as the Special Arbitrator and is vested with the
9  powers set forth in the Plan. All decisions of the Special Arbitrator shall be final and there shall
10  be no right of appeal.

11     I.    Pursuant to 11 U.S.C. § 1146(c), the issuance, transfer or exchange of any security,
12  or the making, delivery, filing or recording of any instrument of transfer under the Plan shall not
13  be taxed under any law imposing a recording tax, stamp tax, transfer tax or similar tax. All filing
14  or recording officers, wherever located and by whomever appointed, are hereby directed to accept
15  for filing or recording, and to file or record upon presentation thereof, all instruments of transfer
16  without payment of any recording tax, stamp tax, transfer tax or similar tax imposed by federal,
17  state or local law. The Court specifically retains jurisdiction to enforce the foregoing direction by
18  whatever means within the Court's jurisdiction and power.

19     J.    The amount of the Unknown Claims Reserve is hereby approved, and the Trustee
20  is directed to fund the Unknown Claims Reserve in accordance with the terms of the Plan and the
21  Settlement Trust.

22     K.    All Unknown Tort Claimants, whether or not they file a Proof Claim, are bound by
23  the provisions of the Plan.

24     L.    Without limiting the generality of the Plan and the Confirmation Order, all Settling
25  Tort Claimants are bound by the settlement and other provisions of Articles 12 and 15 of the Plan
26  and the Settlement Trust.

M. The Exculpation, Releases and Injunctions provisions of the Article 18 of the Plan are hereby approved and shall become effective on the Effective Date of the Plan or as otherwise ordered by the Court.

N. Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date, the Debtor shall be discharged from and its liability shall be extinguished completely in respect of any Claim, including, without limitation, Tort Claims, Relationship Tort Claims and Unknown Tort Claims and any debt, whether reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that arose from any agreement of the Debtor entered into or obligation of the Debtor incurred before the Confirmation Date, or from any conduct of the Debtor prior to the Confirmation Date, or that otherwise arose before the Confirmation Date, including, without limitation, all interest, if any, on any such Claims and debts, whether such interest accrued before or after the date of commencement of the Reorganization Case, and including, without limitation, all Claims and debts based upon or arising out of Tort Claims, Relationship Tort Claims or Unknown Tort Claims and from any liability of the kind specified in Bankruptcy Code §§ 502(g), 502(h), and 502(i), whether or not a Proof of Claim is filed or is deemed filed under Bankruptcy Code § 501, such Claim is Allowed under Bankruptcy Code § 502, or the holder of such Claim has accepted the Plan.

O. Except as otherwise expressly provided in the Plan, in consideration of: (a) the promises and obligations of the Participating Third Parties under the Plan, including those who may become Participating Third Parties[1] pursuant to Order of the Court if such action occurs after entry of the Confirmation Order or after the Effective Date; and (b) the undertakings of the Settling Insurers pursuant to their respective settlements with the Debtor, including Hartford Fire

---

[1] The Parishes and related Parish entities identified on Exhibit "4" are parties to a settlement agreement with the Diocese which presently is pending Court approval and through which the Parishes and Parish entities shall become Participating Third Parties.

1 Insurance Company and First State Insurance Company, and when their respective agreements
2 are approved by the Court, Pacific Employers Insurance Company, Motor Vehicle Casualty
3 Company, Century Indemnity Insurance and St. Paul Fire and Marine Insurance Company, on the
4 Effective Date or on such date as an Insurer becomes a Settling Insurer pursuant to Order of the
5 Court if such action occurs after the entry of the Confirmation Order or after the Effective Date,
6 all Persons who have held, hold, or may hold Tort Claims, Relationship Tort Claims or Unknown
7 Tort Claims, whether known or unknown, shall be forever barred from pursuing such Tort Claims
8 (including Relationship Tort Claims and Unknown Tort Claims), whether such Claims are based
9 upon tort or contract or otherwise, that they heretofore, now or hereafter possess or may possess
10 against the Settling Parties, in each case based upon or in any manner arising from or related to
11 any acts or omissions of the Diocese or any of the other Settling Parties related to any sexual
12 misconduct or other acts committed by any clergy, employees, volunteers or other Persons
13 associated with the Diocese and, further, including, without limitation:    (i) Tort Claims,
14 Relationship Tort Claims or Unknown Tort Claims;  (ii) Claims for personal injuries, including
15 emotional distress; (iii) those of any Person against whom any Claim, demand, proceeding, suit or
16 cause of action based upon or in any manner arising from or relating to any of the matters
17 enumerated or described herein has been or may be asserted (including, without limitation, rights
18 of indemnity, whether contractual or otherwise, contribution Claims and subrogation Claims);
19 (iv) those for damages, including punitive damages; (v) those for attorneys' fees and other
20 expenses, fees or costs; (vi) those for any possible economic loss or loss of consortium; (vii) those
21 for damages to reputation; and (viii) those for any equitable remedy.

22      P.      Except as otherwise expressly provided in the Plan, the Plan Documents or any
23 agreements between any of the Settling Parties, as between all Settling Parties, the provisions of
24 Section 18.3 of the Plan and the Confirmation Order shall be and hereby are a mutual release of
25 all Claims which any Settling Party may have against another Settling Party with respect to any
26 Claims arising out of or related to the Diocese or the Plan.



Q. Except as otherwise expressly provided in the Plan or in the Confirmation Order, on the Effective Date the Reorganized Debtor shall be vested with all of the property of the Estate free and clear of all Claims, Liens, encumbrances, charges and other interests of Creditors, and shall thereafter hold, use, dispose or otherwise deal with such property, operate its business and carry on its ministry and mission free of any restrictions imposed by the Bankruptcy Code or by the Court. All Avoidance Actions (except those that are specifically assigned to the Representatives by separate instrument executed by the Diocese), Contribution Actions and Insurance Actions are hereby preserved for the benefit of the Reorganized Debtor. Any Avoidance Actions assigned and transferred to the Representatives are hereby preserved for the benefit of the Trustee of the Settlement Trust (including the Unknown Claims Reserve). Except as may be otherwise ordered by the Court upon application of the Committee or the Representatives, any recoveries of any Avoidance Actions specifically assigned by the Diocese to the Representatives, shall be subject to the Sharing Arrangement.

R. Prosecution and settlement of the Avoidance Actions, the Contribution Actions and the retained interest in any Insurance Actions shall be the exclusive responsibility of the Reorganized Debtor except as otherwise assigned. The Reorganized Debtor shall have sole and absolute discretion over whether to prosecute or settle such causes of action except to the extent of any Avoidance Actions assigned to the Representatives.

S. Except as otherwise expressly provided in the Plan, for the consideration described in the Plan or any agreement by which a Person becomes a Participating Third Party, a Settling Insurer or a Settling Party, or if such Person is a Released Party on the Effective Date, all Persons who have held, hold, or may hold Channeled Claims or Claims against the Diocese, any Participating Third Party, any Settling Insurer, any Settling Party or any Released Party, whether known or unknown, and their respective agents, attorneys, and all others acting for or on their behalf, shall be permanently enjoined on and after the Effective Date from: (a) commencing or continuing in any manner, any action or any other proceeding of any kind with respect to any

1    Claim, including, but not limited to, any Tort Claim, Relationship Tort Claims or Unknown Tort

2    Claim against the Released Parties, the Settling Parties, the Diocese, the Reorganized Debtor, the

3    Settlement Trust, the Litigation Trust, the Trustee, the Special Arbitrator and their respective

4    predecessors, successors, officials, shareholders, subsidiaries, divisions, affiliates, representatives,

5    attorneys, merged or acquired companies or operations or assigns (collectively, the "Parties") or

6    the property of the Parties; (b) seeking the enforcement, attachment, collection or recovery by any

7    manner or means of any judgment, award, decree, or order against the Parties or the property of

8    the Parties, with respect to any discharged Claim or Channeled Claim; (c) creating, perfecting, or

9    enforcing any encumbrance of any kind against the Parties or the property of the Parties with

10    respect to any discharged Claim or Channeled Claim; (d) asserting any setoff, right of

11    subrogation, or recoupment of any kind against any obligation due to the Parties with respect to

12    any discharged Claim or Channeled Claim; and (e) taking any act, in any manner and in any place

13    whatsoever, that does not conform to or comply with provisions of the Plan, the Settlement Trust

14    Agreement, the Litigation Trust Agreement or the Confirmation Order.   Notwithstanding the

15    foregoing and Section 18.5 of the Plan, each Non-Settling Tort Claimant, if there are any on the

16    Effective Date, shall be entitled to continue or commence an action against the Trustee of the

17    Litigation Trust (in his capacity as Trustee only and not in his individual capacity) for the sole

18    purpose of obtaining a judgment as permitted by the Litigation Trust Agreement.  The provisions

19    of the Plan and this Paragraph S. shall apply to any Participating Third Party, Settling Insurer or

20    Settling Party, whether they are such on the date of entry of the Confirmation Order, the Effective

21    Date, or become such pursuant to order of the Court approving each as a Participating Third

22    Party, Settling Insurer or Settling Party.

23         T.      The Court shall retain jurisdiction for certain purposes, as provided in Article 20 of

24    the Plan.  The Court's retention of jurisdiction shall not, and does not, affect the finality of the

25    Confirmation Order.

26

1    U.    With respect to the executory contracts and unexpired leases to which the Diocese

2    is a party, all such executory contracts and unexpired leases that have not been expressly assumed

3    or rejected as of the date of the Confirmation Order are hereby rejected; and all claims arising

4    from the rejection of such executory contracts and unexpired leases must be filed within thirty

5    (30) days of the entry of the Confirmation Order.

6    V.    Prior to occurrence of the Effective Date, the Diocese, the Bishop, the Committee,

7    the Representatives, and their employees, attorneys, agents, and representatives are authorized

8    and empowered to take all actions necessary or appropriate to consummate the transactions

9    contemplated by the Plan and the Plan Documents and to perform thereunder.  The Bishop and

10   any other authorized officer of the Diocese is authorized and empowered to execute and deliver

11   the Plan Documents in substantially the form submitted, subject to such amendments as may be

12   agreed to by the parties thereto or approved by the Court, provided such amendments shall be

13   consistent with the Plan.

14   W.    Upon the Effective Date, the Diocese, as the Reorganized Debtor, is authorized

15   and empowered to conduct its missions, operations, and ministry, and to dispose of its property

16   without further approval of the Court, except as otherwise provided in the Plan or the Plan

17   Documents.

18   X.    Pursuant to the Plan and the Confirmation Order, the Reorganized Debtor is

19   specifically authorized and directed to transfer legal title to the Parish Real Property to the Parish

20   owning such Parish Real Property upon its formation as a religious non-profit corporation.

21   Notwithstanding the date of incorporation of such religious non-profit corporation, any transfer of

22   Parish Real Property shall be effective as of the Effective Date of the Plan.

23   Y.    Not later than thirty (30) days after the Effective Date, the Reorganized Debtor

24   shall file with the Court, a certificate confirming that the Effective Date has occurred, with notice

25   thereof to be given as required by Fed. R. Bankr. P. 2002(f).

26

DATED this _1ST_ day of August, 2005.

By _____
THE HONORABLE JAMES M. MARLAR
United States Bankruptcy Judge

# EXHIBIT "1"

## SUMMARY OF PLAN TREATMENT AND DISTRIBUTIONS

The following is a summary of the estimated recoveries for each the holders of Allowed Claims (or provisionally Allowed Claims) under the Confirmed Plan:[1]

| Class/Nature of Claim | Treatment | Estimated Dates of Distributions | Estimated Distributions |
|---|---|---|---|
| Class 1 Prepetition Employee Claims | Impaired | Various depending upon Employee's status and use of vacation time and sick leave time | To be satisfied by Diocese assuming and honoring policy after Effective Date |
| Class 2 Prepetition Date Secured Tax Claims | Impaired | One-half - 30 Days after Effective Date and One-half – 6 months after the Effective Date | $8,754 |
| Class 3 Escrow Agent Secured Claims | Impaired | To be paid in accordance with the terms of the Promissory Note dated March 25, 2002, due January 24, 2007. As additional collateral, the Reorganized Debtor will execute a pledge of the Restricted St. Augustine Account | $3,000,000 |
| Class 4 Other Secured Claims. | Unimpaired | No payment anticipated but letter of credit will remain in place and Bank One, N.A. will retain its collateral securing the letter of credit. | $ 0[2] |
| Class 5 General Unsecured Convenience Claims | Impaired | 30 Days after the Effective Date or applicable Claim Payment Date | $500 per Claim |
| Class 6 Parish Guaranty Claims | Unimpaired | No distribution. Parishes will continue to pay in accordance with terms | $ -0- |
| Class 7 Parish Loan Claims | Impaired | Interest only at the rate of 2.5% per annum , monthly payments of $44,738 until paid in full. | Unknown[3] |

---

[1]  The following is an estimate only of the recoveries to be obtained in each Class. Until certain events occur, particularly with respect to the number of Allowed Tort Claims and Unknown Tort Claims, a Tort Claimant should assume that he or she will only receive the amount of the Initial Distribution.

[2]  The $300,000 obligation is a Secured Claim of Bank One, N.A. which secures a letter of credit issued by Bank One, N.A. The letter of credit has not been drawn upon and the Diocese is not in default of the obligation which the letter of credit secures.

[3]  This is the amount of the loans made by the Parishes to the Diocese in conjunction with the 2002 Settlement. The Parishes have also filed claims against the Diocese for return of their

| Class/Nature of Claim | Treatment | Estimated Dates of Distributions | Estimated Distributions |
|---|---|---|---|
| Class 8 General Unsecured Claims | Impaired | Paid in full in installments beginning 30 days after the Effective Date and monthly thereafter based on a fifteen (15) year amortization until the seventh (7th) anniversary of the Effective Date of the Plan whereupon any and all remaining amounts due shall be paid in full.. Obligations bear Interest at 4.5% per annum. | $2,499,517.83 |
| Class 9 Other Tort and Employee Claims | Impaired | To be paid from proceeds of applicable insurance to the extent available. Otherwise, no distribution. | $Unknown |
| Class 10 Tort Claims | Impaired | Initial Distribution Amount of: Tier One -- $100,000 Tier Two -- $200,000 California Tier -- $300,000 Tier Three -- $425,000 Tier Four -- $600,000 Amounts of distribution are subject to increase depending upon the number of Tort Claims Allowed and the number of Unknown Claims that are asserted and Allowed. Prior to any additional distributions to Tier 1 and Tier 2, distributions will be made to the holders of Allowed Tort Claims in the California Tier so that each such Tort Claimant has received $350,000, to Tier 3 so that each such Tier 3 Tort Claimant has received $500,000 and to Tier 4 so that each such Tier 4 Tort Claimant has received $700,000. An Unknown Claims Reserve of $5 million will be established from which Unknown Tort Claims that are Allowed by the Special Arbitrator will be paid. If there are any Non-Settling Tort Claimants, the Litigation Trust will be funded in the amount of $1,570,000. Non-Settling Tort Claims will be determined in the Bankruptcy Court, or the District Court by the court or a jury, depending upon the rights asserted or waived by a Non-Settling Tort Claimant. A Non-Settling Tort Claimant's recovery is limited to the lesser of: (i) the judgment; (ii) $425,000; or (iii) a Pro Rata share of the amount allocated to the Litigation Trust. | $Unknown because final amount will depend upon the number of Allowed Tort Claims and Unknown Tort Claims; however, Settling Tort Claimants with Allowed Tort Claims will receive at least the Initial Distribution Amounts for their respective Tiers. |

custodial funds for Unrestricted Deposits and, in some cases, for indemnification and contribution.

| Class/Nature of Claim | Treatment | Estimated Dates of Distributions | Estimated Distributions |
|---|---|---|---|
| Class 11<br>Insurance and Benefit Claims | Unimpaired | To be paid from proceeds of applicable insurance or from operations of the Diocese or the Reorganized Debtor as such claims are due | $694,711.18 |
| Class 12<br>Penalty Claims | Impaired | N/A | $0 |

QBTUC\811017.00003\168139.1

# EXHIBIT "2"

# SETTLEMENT TRUST AGREEMENT

THIS SETTLEMENT TRUST AGREEMENT ("**THIS AGREEMENT**") is between The Roman Catholic Church of the Diocese of Tucson, an Arizona corporation sole, (the "**Debtor**" or the "**Reorganized Debtor**"), as trustor, and the Trustee named on the signature pages hereof (the "**Trustee**"), pursuant to the Debtor's Third Amended and Restated Plan of Reorganization, dated as of May 25, 2005, as amended, modified, restated, or supplemented from time to time (the "**Plan**").

## RECITALS

A.    The Diocese is a debtor-in-possession in a chapter 11 reorganization case, Case No. 04-04721-JMM (the "**Reorganization Case**"), currently pending before the United States Bankruptcy Court for the District of Arizona (the "**Court**").

B.    The Plan provides, among other things, for the full discharge of the all the Tort Claims, Relationship Tort Claims and Unknown Tort Claims as those terms are defined in the Plan. The Plan has been confirmed by the Court.

C.    The Plan contemplates the creation of a trust, the principal purpose of which is to implement the Plan's treatment of the Tort Claims of Settling Tort Claimants and Relationship Tort Claimants asserted against the Diocese.

D.    The parties to this Agreement intend that the trust created under this Agreement will be a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

NOW, THEREFORE, this Agreement witnesseth and it is hereby declared, in accordance with the Confirmation Order, as follows:

## ARTICLE 1

## DEFINITIONS

1.1    **Incorporation of Definitions.**  All capitalized terms used in this Agreement, and not otherwise defined herein, shall have the meanings assigned to them in the Plan or the Bankruptcy Code, which meanings are incorporated herein by this express reference.

## ARTICLE 2

## DECLARATION OF TRUST

2.1    **Creation and Name.**  There is hereby created a trust, which shall be known as the "**Settlement Trust.**"

2.2    **Purposes.**  The purposes of the Settlement Trust are:

QBTUC\811017.00003\1668502

2.2.1   to serve as the mechanism to implement the Plan's treatment of the Settling Tort Claims (including Relationship Tort Claims and Unknown Tort Claims) in accordance with the criteria and evaluation process as defined in the Plan and in this Agreement;

2.2.2   to assume all liabilities of the Debtor, its successors in interest, and any of its Affiliates, for Settling Tort Claims (including Relationship Tort Claims and Unknown Tort Claims);

2.2.3   to issue payments and disburse funds, only upon receipt of a written direction from the Special Arbitrator to Settling Tort Claimants, Unknown Tort Claimants and Relationship Tort Claimants holding Allowed Tort Claims, including Allowed Relationship Tort Claims and Allowed Unknown Tort Claims;

2.2.4   to pay administrative expenses and costs of the liquidation and resolution of Tort Claims in accordance with the terms of the Plan and this Agreement, subject to and without exceeding the available assets of the Settlement Trust;

2.2.5   to receive, hold in escrow, safe-keep and invest, in accordance with the provisions hereof, the assets transferred to the Settlement Trust pursuant to the Plan so as to enable the Trustee to pay all Allowed Settling Tort Claims, all Allowed Relationship Tort Claims and all Allowed Unknown Tort Claims in accordance with the terms of the Plan and this Agreement;

2.2.6   to fund the Unknown Claims Reserve out of the remaining one-half of the Initial Contribution (if not funded by amounts in the Fund on the Effective Date) after:   (i) transfer of the Litigation Fund in the amount of $1,570,000 or such lesser amount as determined by the Bankruptcy Court, to the Litigation Trust, (ii) payment of the Initial Distribution Amount to the Settling Tort Claimants with Allowed Tort Claims, (iii) payment or reserve of the Trust Administrative Expense Reserve, (iv) payment or reserve of the Avoidance Actions Fund, (v) payment of all Allowed Relationship Tort Claims and (vi) payment of all Allowed Tort Compromise Claims;

2.2.7   to fund any amounts required to be funded to the Unknown Claims Reserve from the Fund as it is transferred to the Settlement Trust after the Effective Date up to the total amount of $5,000,000;

2.2.8   to establish, in conjunction with the Diocese and the Committee, the amount of the Trust Administrative Expense Reserve; and

2.2.9   to qualify at all times as a non-reversionary Qualified Settlement Fund pursuant to Section 468B of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

To accomplish the foregoing, the Settlement Trust hereby:

2.2.9.1   assumes and shall be directly and exclusively liable for any and all liabilities, present or future, whether prior to the creation of the Settlement Trust such liabilities were liquidated or non-liquidated, contingent or non-contingent, asserted or unasserted,

fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, of the Debtor, its successors in interest, and any of Co-Defendants who are Participating Third Parties present or future, for all Settling Tort Claims held by Tort Claimants, Relationship Tort Claimants and Unknown Tort Claimants (without taking into account the discharge and channeling injunctions provided for in Article 18 of the Plan);

      2.2.9.2    agrees to conserve and protect the Settlement Trust estate so as to enable the Trustee to satisfy as fully as possible all Settling Tort Claims (including Relationship Tort Claims and Unknown Tort Claims) assumed by the Settlement Trust in accordance with the terms of the Plan and this Agreement;

      2.2.9.3    agrees to collect, invest and reinvest amounts due to be transferred to the Settlement Trust;

      2.2.9.4    agrees to pay all costs and fees (including attorneys' fees and the fees of the Special Arbitrator) of the Settlement Trust incurred in the resolution and liquidation of any and all such Settling Tort Claims in accordance with this Agreement and the Plan;

      2.2.9.5    agrees to fund the Unknown Claims Reserve and the Litigation Trust in accordance with the terms of this Agreement and the Plan;

      2.2.9.6    agrees to retain any income or interest earned on the amount of the Unknown Claims Reserve to the Unknown Claims Reserve;

      2.2.9.7    agrees to assert and defend (and appeal to the highest appellate court willing to hear such appeal any adverse decision regarding) the enforceability of the releases and injunctions referred to in Article 18 of the Plan with respect to the Settling Tort Claims (including Relationship Tort Claims and Unknown Tort Claims only, (this Section 2.2.9.7 does not apply to Non-Settling Tort Claims assumed by the Litigation Trust or any other Claims against the Debtor), and, to the extent applicable, the discharge referred to and described in Article 18 of the Plan; this duty shall terminate in a given jurisdiction when a Final Order of the highest appellate court of competent jurisdiction in that jurisdiction determines that the releases and injunctions or the discharge do not require dismissal of such action or proceeding or are unenforceable; *provided, however, that* this obligation shall be subject to Rule 11 of the Federal Rules of Civil Procedure or similar state rules or laws, as the case may be, and shall only accrue if and to the extent that the Committee or the Reorganized Debtor determine that the Settlement Trust is an indispensable party to any such action or such appeal;

      2.2.9.8    agrees to manage the Settlement Trust and report on its status and activities in accordance with the provisions set forth herein; and

      2.2.9.9    agrees to take such actions and deliver such documentation as may reasonably be required to effectuate, perfect, confirm, and evidence the transfers and assignments to the Settlement Trust of the Fund and the validity of such transfers and assignments.

Notwithstanding the foregoing, or anything else contained herein to the contrary, the Settlement Trust shall have no obligation with respect to, and there shall be no indemnification, contribution, subrogation, reimbursement or similar claim assumed or paid by the Settlement Trust with respect to, any criminal action or criminal proceeding brought by a governmental unit (as defined in the Code) (including grand jury proceedings or other investigations brought by a governmental unit to determine whether a crime has been committed) or with respect to any criminal fine, penalty or forfeiture.

2.2.9.10   **Transfer of Assets; Beneficiaries.** On or before the Effective Date (but after entry of the Confirmation Order), and subject to the Effective Date occurring, the Debtor hereby transfers and assigns to the Settlement Trust, to be held in trust, for the holders of Allowed Settling Tort Claims, Allowed Relationship Tort Claims and Allowed Unknown Tort Claims (each a **"Beneficiary"** and collectively, the **"Beneficiaries"**), all of the Debtor's, the Reorganized Debtor's, and the estate's rights, title, and interest in and to all of the Fund (collectively, the **"Trust Assets"**) subject to the allocation of the Litigation Fund to the Litigation Trust. All Trust Assets received by the Settlement Trust shall be held, administered and distributed under the terms of this Agreement and the Plan.

2.3   **Further Assurances; Cooperation.** The Debtor, the Reorganized Debtor, and the Trustee shall take all actions as are reasonably required with respect to any of the Trust Assets or otherwise in order to effectuate the purposes of this Trust.

# ARTICLE 3

# TRUSTEE

3.1.1   **Number.** There shall be one (1) Trustee of the Settlement Trust. The Initial Trustee is the person who is named on and who has executed the signature page hereof.

3.2   **Qualifications.** Each Trustee must be a natural person of good moral character and independent of the Debtor and the Reorganized Debtor, or its successors in interest and be a person whose experience and background is appropriate to the responsibilities of a Trustee hereunder.

3.3   **Terms of Service.**

3.3.1   Each Trustee shall serve for the duration of the Settlement Trust, subject to his or her earlier death, resignation, or, with approval of the Court, removal.

3.3.2   Any Trustee may resign at any time by at least sixty (60) days' prior written notice to each of the remaining Trustees, if any, and the Court, specifying the date when such resignation shall take effect. Any resigning Trustee shall attempt, where possible, to give notice of resignation not less than ninety (90) days before such resignation is to take effect.

3.3.3   A Trustee may be removed from office by the Court upon its own motion, the motion of any Trustee, the motion of the Debtor or Reorganized Debtor, or the motion of the Committee, and a determination by the Court that such removal is appropriate upon good cause shown.

3.4    **Appointment of Successor Trustees.**

3.4.1    In the event of the death, resignation, incapacity to serve as determined by the Court, or removal of a Trustee prior to the expiration of his or her term in accordance herewith, a successor Trustee shall be nominated by the remaining Trustees, subject to Court approval, within twenty (20) days after such death, resignation or removal. If the remaining Trustees fail to nominate a successor Trustee that is approved by the Court within such twenty (20) day period, a successor Trustee shall be appointed by the Court.

3.4.2    Upon the acceptance of office by any successor Trustee, all rights, titles, duties, powers and authority of the predecessor Trustee under this Agreement shall be vested in and undertaken by the successor Trustee without any further act being required. No successor Trustee shall be liable personally for any act or omission of his or her predecessor.

3.5    **Liability of Trustee.** No Trustee shall be liable to the Settlement Trust or to any Beneficiary except for such Trustee's own gross negligence or willful misconduct. No Trustee shall be liable for any act or omission of any Co-Trustee, or any agent or employee of the Settlement Trust unless that Trustee acted with gross negligence or willful misconduct in the selection or retention of such agent or employee. No action, suit or proceeding of any kind may be brought by the Debtor or the Committee, against any Trustee, other than as a result of a material loss to the Debtor, or to the Trust, due to such Trustee's having committed one or more of the acts which constituted a basis for removal in Section 3.3.3 hereof. All actions taken and determinations made by the Trustee, unless otherwise provided in (or unless contrary to the provisions of) this Agreement, the Plan, or a Final Order, shall be final and binding upon all Persons having any interest in the Trust. The Trustee shall be entitled to rely upon the advice of counsel or other advisors to the Settlement Trust or the Trustee, reports prepared by the Special Arbitrator, directions from the Special Arbitrator regarding payment of Allowed Tort Claims, Allowed Relationship Tort Claims, Allowed Tort Compromise Claims and Allowed Unknown Tort Claims and directions and information provided by any other Person employed by the Trust.

3.6    **Trustee's Compensation; Reimbursement of Expenses.** Each Trustee shall receive as compensation for his or her services at the rate of Two Thousand and no/100 Dollars ($2,000) per month. This compensation may be adjusted from time to time by the Trustee, subject to approval of the Court after notice to the Committee and the Reorganized Debtor and a hearing. The Reorganized Debtor or the Committee may also seek adjustment to the Trustee's compensation after notice to the Trustee and the non-moving party. In addition, each Trustee shall be reimbursed for his or her other reasonable out-of-pocket expenses incurred by such Trustee in the performance of such Trustee's duties as Trustee hereunder.

3.7    **Indemnification.**

3.7.1    Each Trustee or former Trustee who was or is party, or is threatened to be made a party, to any threatened, pending, or completed action, suit or proceeding of any kind, whether civil, administrative or arbitrative, and whether brought by or against the Settlement Trust, with respect to a Trustee, by reason of such Trustee being or having been a Trustee of the Settlement Trust, or by reason of such Trustee serving or having served in any capacity at the request of and on behalf of the Settlement Trust, shall be indemnified by the Settlement Trust

against expenses, costs and fees (including attorneys' fees), judgments, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by such Trustee in connection with or resulting from such action, suit, or proceeding if he or she acted in good faith, and in a manner such Trustee reasonably believed to be in or not opposed to the best interests of the Settlement Trust.

     3.7.2  Any indemnification under Section 3.7 of this Agreement shall be made by the Settlement Trust upon a determination that indemnification of such Trustee is proper in the circumstances. Such determination shall be made by application to the Court, upon notice to the Committee and the Reorganized Debtor or by independent legal counsel ordered by the Court to make such determination, or at the election of the Court, by the Court.

     3.7.3  Reasonable expenses, costs and fees (including attorneys' fees) incurred by or on behalf of a Trustee in connection with any such action, suit, or proceeding, whether civil, administrative or arbitrative, commenced against such Trustee regarding such Trustee's performance hereunder, may be paid by the Settlement Trust in advance of the final disposition thereof upon receipt of an undertaking by or on behalf of such Trustee to repay such amount unless it shall be determined ultimately that such Trustee is not entitled to be indemnified by the Settlement Trust.

     3.7.4  The Trustee shall have the power, generally or in specific cases, to cause the Settlement Trust to indemnify the employees and agents of the Settlement Trust to the same extent as provided in this Section 3.7 with respect to the Trustee.

     3.8    The Trustee may purchase and maintain reasonable amounts and types of insurance on behalf of an individual who is or was a Trustee, employee, or agent of the Settlement Trust against liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trustee, employee, or agent with the consent of the Committee and the Reorganized Debtor.

     3.9    **Reliance.**  Any Person dealing with the Settlement Trust may rely in good faith upon any certificate or other instrument signed by at the Trustee, or upon any certificate or other instrument signed by an officer or agent of the Settlement Trust whose authority is evidenced by a certificate or other instrument signed by at least one Trustee, without the necessity of further inquiry by such Person into the authority of such Trustee, officer or agent to act on behalf of the Settlement Trust; *provided, however,* that disbursements or expenditure from the Settlement Trust made in respect of investments in accordance with Section 4.2 hereof and the investment policies duly adopted by the Trustee shall not require the signature of any Trustee; and *provided, further,* that the Trustee may adopt by-laws concerning these matters that are more restrictive than the foregoing.

     3.10  **Actions by Trustee.**  Except as otherwise provided in this Agreement or as required by applicable law, all determinations by the Trustees (if there is more than one) shall be made by the vote or consent of a majority of the Trustees then in office, following prior notice to all Trustees.

CRITUC\81\017-00003\166850.2
Case 4:04-bk-04721-BMW   Doc 791   Filed 08/01/05   Entered 08/01/05 16:27:17   Desc
Main Document    Page 24 of 51

3.11 **Bond.** The Trustee shall not be required to post any bond or other form of surety unless otherwise ordered by the Court.

## ARTICLE 4

## ACCOUNTS AND INVESTMENTS

4.1 **Accounts.** The Trustee shall establish such funds and accounts with such Persons as they shall, in their discretion, deem necessary or advisable for carrying out the purposes of the Trust.

4.1.1 **Investments.** Investments of monies held in the Settlement Trust estate shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs, subject to the following limitations and provisions. taking into account the purposes for which the Settlement Trust was created and the duration of the existence of the Settlement Trust, including the Unknown Claims Reserve. In determining investments to be held by the Settlement Trust, due regard shall be given by the Trustee to safety of principal and to production of reasonable amounts of current income. The Trustee shall not be under any obligation to invest the Trust Assets for capital appreciation, in view of the purposes for which the Settlement Trust was created.

## ARTICLE 5

## POWERS, TRUST ADMINISTRATION

5.1 **Trust Powers.**

5.1.1 Pursuant to the Confirmation Order, subject to the limitations set forth in this Agreement, and subject to the provisions and limitations of the Plan, all of which are incorporated herein, the Trustee shall have the power to take any and all actions as, in the sole judgment and discretion of the Trustee, are necessary or advisable to effectuate the purposes of the Settlement Trust, including without limitation, each power expressly granted in Section 5.1.3 of this Agreement and any power reasonably incidental thereto, and any trust power now or hereafter permitted under the law of the State of Arizona that is not inconsistent with the provisions of this Agreement or the Plan.

5.1.2 Except as expressly provided in the Plan or in this Agreement, the Trustee may, but need not, obtain the order or approval of the Court, or any other court in the exercise of any power or discretion conferred hereunder, or account to the Court or to any other court in the absence of a breach of trust.

5.1.3 Without limiting the generality of Section 5.1.1 of this Agreement, and subject to the other provisions of this Agreement, the Trustee shall have the power:

5.1.3.1 to receive and hold the Trust Assets and other additions to the Settlement Trust from any source, provided such additions are made pursuant to the Plan, the

CRTUC\6\1017-0000\166850.2
Case 4:04-bk-04721-BMW    Doc 791    Filed 08/01/05    Entered 08/01/05 16:27:17    Desc
Main Document    Page 25 of 51

Confirmation Order or another order of the Court, and to administer and distribute the same as a part of the Settlement Trust estate;

        5.1.3.2   to invest and reinvest the funds of the Settlement Trust as provided in this Agreement;

        5.1.3.3   upon certification by the Special Arbitrator that a Settling Tort Claimant's Claim, a Relationship Tort Claimant's Claim or an Unknown Tort Claimant's Claim has been Allowed by the Special Arbitrator, to expeditiously pay the Allowed amount of such Settling Tort Claim, Relationship Tort Claim or Unknown Tort Claim in accordance with written instructions from the Special Arbitrator;

        5.1.3.4   to make additional distributions to the holders of Allowed Tort Claims of Settling Tort Claimants and Allowed Unknown Claims in accordance with the terms of the Plan;

        5.1.3.5   to employ and compensate, utilizing Trust Assets, legal, financial, accounting, investment, and other advisors, custodians of assets, agents, the Special Arbitrator, and other parties deemed by the Trustee to be qualified as experts on such matters as may arise before them, and to delegate to such Persons such powers, authority, and discretion as the Trustee, in their discretion deem advisable or necessary to carry out the terms of the Settlement Trust, and the opinion of such Persons on any matters submitted to them by the Trustee shall be full and complete protection to the Trustee with regard to any action taken by the Trustee hereunder in good faith and in accordance with such opinion;

        5.1.3.6   to reimburse, utilizing Trust Assets, the Trustee, subject to Section 3.6 above, and the Special Arbitrator, such employees, legal, financial, accounting, investment, and other advisors and experts, and agents, described in Section 5.1.3.5 above, for all properly documented out-of-pocket costs and expenses incurred by such Persons in connection with the performance of their duties hereunder; *provided, however, that* the Trustee shall not incur fees and expenses in excess of a total of $_____ without prior notice to the Committee and the Reorganized Debtor and an order of the Court entered prior to the incurrence of such fees and expenses.

        5.1.3.7   to make such decisions as he may deem appropriate in connection with the administration of the Settlement Trust of the performance of his duties;

        5.1.3.8   to apply to the Court for instructions to the Trustee as he may deem proper or necessary in connection with the administration of the Settlement Trust of the performance of his duties; *provided, however, that,* any such applications shall be on notice to the Committee and the Reorganized Debtor each of whom shall have standing to appear and be heard on any such applications;

        5.1.3.9   to indemnify (and purchase insurance indemnifying) its directors, officers, employees, agents, the Special Arbitrator, and representatives in accordance with Section 3.7 above, to the fullest extent that a corporation organized under Arizona law is entitled to indemnify its directors, officers, employees, agents, and representatives;

5.1.3.10    to delegate any or all of the discretionary powers and authority herein conferred at any time with respect to the investment of the Trust Assets to any one or more recognized individual or institutional advisors or investment managers acceptable to the Trustee, and to compensate and reimburse such advisors and managers for their services;

5.1.3.11    to establish such funds, reserves, and accounts within the Settlement Trust with Trust Assets as may be deemed by the Trustee to be useful in carrying out the purposes of the Settlement Trust;

5.1.3.12    to draft and amend from time to time bylaws governing the operation of the administration of the Settlement Trust upon approval of the Court after notice to the Committee and the Reorganized Debtor, provided that any such bylaws are not inconsistent with any of the provisions contained in this Agreement or the Plan;

5.1.3.13    to enter into such other arrangements with third parties as are deemed by the Trustee to be useful in carrying out the purposes of the Settlement Trust (including, without limitation, (i) engaging a financial institution to act as paying agent, depository, custodian, or trustee with respect to funds, reserves, or accounts created hereby or established pursuant hereto, and (ii) renting or leasing such real and personal properties, as the Trustee may deem necessary or desirable for the proper administration of the Settlement Trust), and to compensate such third parties for their services;

5.1.3.14    to institute any action or proceeding at law or in equity for the collection of any sums due to the Settlement Trust, or otherwise to advance the interests of the Settlement Trust in a manner not inconsistent with the terms of the Plan, prosecute any such action or proceeding to judgment or final decree, enforce any such judgment or final decree, and collect in any manner provided by law the monies adjudged or decreed to be payable; *provided however, that* so long as the Debtor has timely and fully transferred the Trust Assets into the Settlement Trust, and all assets required to be transferred to the Settlement Trust pursuant to the Plan have been timely and fully transferred into the Settlement Trust, regardless of any deficiency in the Settlement Trust or any other reason, the Settlement Trust may not institute any action or proceeding against the Debtor, the Reorganized Debtor, or against any other Person expressly released pursuant to the terms of the Plan or who is the recipient of a Channeling Injunction, for collection of any sums in respect of the Tort Claims of Settling Tort Claims, the Relationship Tort Claimants and the Unknown Tort Claimants;

5.1.3.15    to rely upon any affidavit, certificate, letter, notice, telegram, e-mail, or other paper or electronic writing, or upon any telephone conversation or other oral communication, believed by the Trustee to be genuine and sufficient and upon any other evidence believed by the Trustee to be genuine and sufficient, and to be protected and saved harmless in respect of all payments or distributions made hereunder if made in good faith and without actual notice or knowledge of the changed condition or status of any Person receiving payments or other distributors upon a condition.

Case 4:04-bk-04721-BMW    Doc 791    Filed 08/01/05    Entered 08/01/05 16:27:17    Desc
Main Document    Page 27 of 51

## 5.2 Administration.

5.2.1 The Trustee shall conduct the business of the Settlement Trust in accordance with the provisions of this Agreement and the Plan.

5.2.2 The Settlement Trust shall use a calendar year accounting year and shall utilized the accrual method of accounting.

5.2.3 In the event that the duration of the Settlement Trust exceeds one year, the Trustee shall cause to be prepared and filed with the Court as soon as available and in any event within one hundred twenty (120) days following the end of each fiscal year, an annual report containing financial statements of the Settlement Trust, including without limitation, a balance sheet of the Settlement Trust as of the end of such fiscal year and a statement of operations for such fiscal year.

5.2.4 Simultaneously with the earlier to occur of: (i) the Trustee' application to the Court for an order terminating the Settlement Trust, (ii) the delivery of the financial statements referred to in Section 5.2.3 above, and (iii) quarterly, beginning with the first quarter after the funding of the Settlement Trust, the Trustee shall cause to be prepared and filed with the Court a report and accounting containing a summary in reasonable detail of the following information with respect to the period covered by such application or such financial statements, as the case may be:

5.2.4.1 The number of Settling Tort Claims liquidated and the Tiers into which each Settling Tort Claim was placed;

5.2.4.2 The number of Relationship Tort Claims liquidated and paid;

5.2.4.3 The number of Unknown Tort Claims that have been filed since the last reporting period;

5.2.4.4 The number of Settling Tort Claims, Unknown Tort Claims remaining to be liquidated;

5.2.4.5 The investment income earned by the Settlement Trust; and

5.2.4.6 The amount of expenses incurred by the Settlement Trust.

5.3 The Trustee shall cause to be filed timely such income tax and other returns and statements as are required to comply with applicable provisions of the Internal Revenue Code and of any state law and the regulations promulgated thereunder. The Settlement Trust shall be responsible for paying taxes and any other obligations or liabilities of any and all kinds whatsoever which at any time are lawfully levied, assessed upon, or become payable in respect of the Settlement Trust or the Trust Assets. The Trustee shall utilize Trust Assets to pay such taxes, levies, and assessments. The Trustee shall make any election and provide any information as may be necessary to comply with the requirement of a Qualified Settlement Fund under Section 468B of the Internal Revenue Code.

# ARTICLE 6

## GENERAL PROVISIONS

6.1    **Irrevocability.**  Except as otherwise provided in Section 6.6, the Settlement Trust is irrevocable.  Neither the Debtor, nor the Reorganized Debtor, nor its successors in interest, nor any Affiliates thereof, hold or may hold any beneficial interest in the income or corpus of the Settlement Trust.

6.2    **Termination.**

6.2.1    At such time as all Trust Assets (including the Unknown Claims Reserve) have been fully and finally distributed in accordance with the terms of the Plan and this Agreement, the Trustee shall apply to the Court for an order of the Court terminating the Trust, upon such notice as the Court shall order.

6.2.2    Upon the Court's order terminating the Settlement Trust becoming final, except to the extent otherwise provided in such order, the Settlement Trust shall be terminated, and the Trustee shall be discharged of all responsibilities with respect to the Settlement Trust.

6.2.3    Upon termination of the Settlement Trust, the Trustee shall remain authorized to wind up the affairs of the Settlement Trust and shall be authorized to dispose of the balance, if any, of funds in the Settlement Trust after payment of or adequate provision for any remaining Settlement Trust expenses.  Any such funds shall be distributed in accordance with the terms of the Plan.

6.3    **Confidentiality.**  Copies of all documents, notices, statements, reports, motions, or similar documents provided to the Trustee pursuant to this Agreement shall be provided on a confidential basis and shall be kept confidential by the Trustee unless such information is otherwise publicly available.

6.4    **Severability.**  Should any provision of this Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Agreement.

6.5    **Headings.**  The headings used in this Agreement are inserted for convenience only and shall not affect the construction of any and all other provisions of this Agreement.

6.6    **Amendment.**  When necessary to carry out the purposes of the Settlement Trust, this Agreement may be amended only by an instrument signed by each of the Trustee then in office; *provided, however,* that any such amendment must be consistent with the Plan; and provided further, that such amendment shall become effective only with the approval of the Court and after notice and a hearing as the Court may direct.

6.7    **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which shall constitute an original, but which counterparts together shall constitute but one and the same instrument.

6.8 **Successors and Assigns.** The provisions of this Agreement shall be binding upon and inure to the benefit of the Debtor, the Settlement Trust, and the Trustee, and their respective successors and assigns, except that neither the Debtor, nor the Reorganized Debtor, nor the Settlement Trust nor any Trustee may assign or otherwise transfer any of his, her, or its rights or obligations under this Agreement.

6.9 **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Arizona.

6.10 **No Adverse Action.** No Trustee shall take any action that will adversely affect the qualification of the Settlement Trust as a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended.

6.11 **No Execution.** All Trust Assets and funds in the Settlement Trust are deemed to be *in custodia legis* until such times as funds have actually been paid to and received by a Settling Tort Claimant. No Settling Tort Claimant or any other Person may execute upon, garnish or attach the Settlement Trust estate in any manner whatsoever or compel payment from the Settlement Trust of any Settling Tort Claim or other Claim. Any and all payments of Settling Tort Claims shall be controlled solely by the Plan, this Agreement, and the claims resolution procedures set forth in Article 6 hereof.

6.12 **Controlling Document.** In the event of any conflict between the provisions of this Agreement and the Plan, the Plan shall be the controlling document.

IN WITNESS WHEREOF, the Trustor and the Initial Trustee have caused this Agreement to be duly executed by them or their respective authorized representatives.

Dated: _____

THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF TUCSON, an Arizona corporation sole

By: _____

Name: _____

Title: _____

TRUSTEE:

Dated: _____

_____

Name: _____

# EXHIBIT "3"

# LITIGATION TRUST AGREEMENT

THIS LITIGATION TRUST AGREEMENT ("**THIS AGREEMENT**") is between The Roman Catholic Church of the Diocese of Tucson, an Arizona corporation sole, (the "**Debtor**" or the "**Reorganized Debtor**"), as trustor, and the Trustee named on the signature pages hereof (the "**Trustee**"), pursuant to the Debtor's Plan of Reorganization, dated as of May 25, 2005, as amended, modified, restated, or supplemented from time to time (the "**Plan**").

## RECITALS

A.  The Diocese is a debtor-in-possession in a chapter 11 reorganization case, Case No. 04-04721-JMM (the "**Reorganization Case**"), currently pending before the United States Bankruptcy Court for the District of Arizona (the "**Court**").

B.  The Plan provides, among other things, for the full satisfaction, and discharge of all the Tort Claims as that term is defined in the Plan. The Plan has been confirmed by the Court.

C.  The Plan contemplates the creation of a Litigation Trust, the principal purpose of which is to implement the Plan's treatment of Tort Claims asserted by Non-Settling Tort Claimants against the Diocese.

D.  The parties to this agreement intend that the trust created under this Agreement will be a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

Now, THEREFORE, this Agreement witnesseth and it is hereby declared, in accordance with the Confirmation Order, as follows:

## ARTICLE 1
## DEFINITIONS

1.1  **Incorporation of Definitions.** All capitalized terms used in this Agreement, and not otherwise defined herein, shall have the meanings assigned to them in the Plan or the Bankruptcy Code, which meanings are incorporated herein by this express reference.

## ARTICLE 2
## DECLARATION OF TRUST

2.1  **Creation and Name.** There is hereby created a trust, which shall be known as the "**Litigation Trust**."

2.2  **Purposes.** The purposes of the Litigation Trust are:

2.2.1   to serve as the mechanism to implement the Plan's treatment of the Tort Claims of Non-Settling Tort Claimants which become part of the Litigation Trust pursuant to an election made by a Tort Claimant;

2.2.2   to assume all liabilities of the Debtor, its successors in interest, any Co-Defendants who become Participating Third Parties and any other Settling Parties for the Tort Claims of Non-Settling Tort Claimants;

2.2.3   to defend against, liquidate and resolve the Tort Claims of Non-Settling Tort Claimants;

2.2.4   to issue payments and disburse funds, only entry of a Final Order determining that a Non-Settling Tort Claimant is entitled to payment from the Litigation Trust and in accordance with Article _____ below;

2.2.5   to pay administrative expenses and costs of such liquidation and resolution in accordance with the terms of the Plan and this Agreement, subject to and without exceeding the available assets of the Litigation Trust;

2.2.6   to receive and invest, in accordance with the provisions hereof, the assets transferred to the Litigation Trust  pursuant to the Plan so as to enable the Trustee to satisfy the Allowed Tort Claims of Non-Settling Tort Claimants in accordance with and subject to the limitations contained in the Plan; and

2.2.7   to qualify at all times as a non-reversionary Qualified Settlement Fund pursuant to Section 468B of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

To accomplish the foregoing, the Litigation Trust  hereby:

2.2.7.1 assumes and shall be directly and exclusively liable for any and all liabilities which are made part of the Litigation Trust pursuant to the Plan;

2.2.7.2 agrees to conserve and protect the Litigation Trust estate so as to enable the Trustee to satisfy as fully as possible all Tort Claims assumed by the Litigation Trust in accordance with and as limited by the terms of the Plan and this Agreement;

2.2.7.3 agrees to collect, invest and reinvest amounts due to be transferred to the Litigation Trust;

2.2.7.4 agrees to pay all costs, expenses and fees (including attorneys' fees) of the Litigation Trust  incurred in defending the Tort Claims of Non-Settling Tort Claimants in accordance with this Agreement and the Plan;

2.2.7.5 agrees to assert and defend (and appeal to the highest appellate court willing to hear such appeal any adverse decision regarding) the enforceability of the releases and injunctions referred to in Article 18 of the Plan with respect to the Tort Claims of Non-Settling Tort Claimants only, and, to the extent applicable, the discharge referred to and described in Article 18 of the Plan; this duty shall terminate in a given jurisdiction when a Final Order of the highest appellate court of competent jurisdiction in that jurisdiction determines that the releases and injunctions or the discharge do not require dismissal of such action or proceeding or are unenforceable; *provided, however,* that this obligation shall be subject to Rule

11 of the Federal Rules of Civil Procedure or similar state rules or laws, as the case may be, and shall only accrue if and to the extent that the Tort Committee or the Reorganized Debtor determine that the Litigation Trust is an indispensable party to such appeal;

2.2.7.6 agrees to manage the Litigation Trust and report on its status and activities in accordance with the provisions set forth herein; and

2.2.7.7 agrees to take such actions and deliver such documentation as may reasonably be required to effectuate, perfect, confirm, and evidence the transfers and assignments to the Litigation Trust of the Trust Assets (defined below) and the validity of such transfers and assignments.

Notwithstanding the foregoing, or anything else contained herein to the contrary, the Litigation Trust shall have no obligation with respect to, and there shall be no indemnification, contribution, subrogation, reimbursement or similar claim assumed or paid by the Litigation Trust with respect to, any criminal action or criminal proceeding brought by a governmental unit (as defined in the Code) (including grand jury proceedings or other investigations brought by a governmental unit to determine whether a crime has been committed) or with respect to any criminal fine, penalty or forfeiture.

2.3 **Transfer of Assets; Beneficiaries.** On or within forty (40) days after the Effective Date, the Trustee of the Settlement Trust will transfer and assign to the Litigation Trust, the Litigation Trust Fund, (together with the income earned thereon, the "**Trust Assets**") to be held in trust, for the Non-Settling Tort Claimants with Allowed Tort Claims (each a "**Beneficiary**" and collectively, the "**Beneficiaries**").

2.4 **Trust Assets.** All Trust Assets received by the Litigation Trust shall be held, administered and distributed under the terms of this Agreement and the Plan.

2.5 **Further Assurances; Cooperation.** The Debtor, the Reorganized Debtor, and the Trustee shall take all actions as are reasonably required with respect to any of the Trust Assets or otherwise in order to effectuate the purposes of this Litigation Trust.

## ARTICLE 3
## TRUSTEE

3.1.1 **Number.** There shall be one (1) Trustee of the Litigation Trust . The Initial Trustee is the person who is named on and who has executed the signature page hereof.

3.2 **Qualifications.** Each Trustee must be a natural person of good moral character and independent of the Debtor and the Reorganized Debtor or its successors in interest whose experience and background are appropriate to the responsibilities of a Trustee hereunder.

3.3 **Terms of Service.**

3.3.1   Each Trustee shall serve for the duration of the Litigation Trust , subject to his or her earlier death, resignation, or, with approval of the Court, removal.

3.3.2   Any Trustee may resign at any time by at least sixty (60) days' prior written notice to the Committee, the Reorganized Debtor and the Court, specifying the date when such resignation shall take effect.  Any resigning Trustee shall attempt, where possible, to give notice of resignation not less than ninety (90) days before such resignation is to take effect.

3.3.3   A Trustee may be removed from office by the Court upon its own motion, the motion of any Trustee, the motion of the Debtor or Reorganized Debtor, or the motion of the Committee and a determination by the Court that such removal is appropriate upon good cause shown.

3.4   **Appointment of Successor Trustee.**

3.4.1   In the event of the death, resignation, incapacity to serve as determined by the Court, or removal of a Trustee prior to the expiration of his or her term in accordance herewith, a successor Trustee shall be nominated by the current Trustee, with notice to the Reorganized Debtor and the Committee, subject to Court approval, within twenty (20) days after such death, resignation or removal.  If the current Trustee fails to nominate a successor Trustee that is approved by the Court within such twenty (20) day period, a successor Trustee shall be appointed by the Court.

3.4.2   Upon the acceptance of office by any successor Trustee, all rights, titles, duties, powers and authority of the predecessor Trustee under this Agreement shall be vested in and undertaken by the successor Trustee without any further act being required.  No successor Trustee shall be liable personally for any act or omission of his or her predecessor.

3.5   **Liability of Trustee.**  No Trustee shall be liable to the Litigation Trust  or to any Beneficiary except for such Trustee's own gross negligence or willful misconduct.  No Trustee shall be liable for any act or omission of any Co-Trustee, or any agent or employee of the Litigation Trust  unless that Trustee acted with gross negligence or willful misconduct in the selection or retention of such agent or employee.  No action, suit or proceeding of any kind may be brought by the Debtor, or any Affiliates of any of them, present or future, against any Trustee, other than as a result of a material loss to the Debtor, or to the Trust, due to such Trustee's having committed one or more of the acts which constituted a basis for removal in Section 3.3.3 hereof.  All actions taken and determinations made by the Trustee, unless otherwise provided in (or unless contrary to the provisions of) this Agreement, the Plan, or a Final Order, shall be final and binding upon all Persons having any interest in the Trust.  The Trustee shall be entitled to rely upon the advice of counsel or other advisors to the Litigation Trust  and information provided by any other Person employed by the Trust.

3.6   **Trustee' Compensation; Reimbursement of Expenses.**  The Trustee shall receive as compensation for his or her services at the rate of _____ Dollars ($_____) per _____.  This compensation may be adjusted from time to time by action of the Trustee, subject to approval of the Court after notice to the Reorganized Debtor and the Committee and a hearing.

In addition, each Trustee shall be reimbursed for his or her other reasonable out-of-pocket expenses.

### 3.7 Indemnification.

3.7.1 Each Trustee or former Trustee who was or is party, or is threatened to be made a party, to any threatened, pending, or completed action, suit or proceeding of any kind, whether civil, administrative or arbitrative, and whether brought by or against the Litigation Trust, with respect to a Trustee, by reason of such Trustee being or having been a Trustee of the Litigation Trust, or by reason of such Trustee serving or having served in any capacity at the request of and on behalf of the Litigation Trust, shall be indemnified by the Litigation Trust against expenses, costs and fees (including attorneys' fees), judgments, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by such Trustee in connection with or resulting from such action, suit, or proceeding if he or she acted in good faith, and in a manner such Trustee reasonably believed to be in or not opposed to the best interests of the Litigation Trust.

3.7.2 Any indemnification under Section 3.7 of this Agreement shall be made by the Litigation Trust upon a determination that indemnification of such Trustee is proper in the circumstances. Such determination shall be made by application to the Court, upon notice to the Committee and the Reorganized Debtor or by independent legal counsel ordered by the Court to make such determination, or at the election of the Court, by the Court.

3.7.3 Reasonable expenses, costs and fees (including attorneys' fees) incurred by or on behalf of a Trustee in connection with any such action, suit, or proceeding, whether civil, administrative or arbitrative, commenced against such Trustee regarding such Trustee's performance hereunder, may be paid by the Litigation Trust in advance of the final disposition thereof upon receipt of an undertaking by or on behalf of such Trustee to repay such amount unless it shall be determined ultimately that such Trustee is not entitled to be indemnified by the Litigation Trust .

3.7.4 The Trustee shall have the power, generally or in specific cases, to cause the Litigation Trust to indemnify the employees and agents of the Litigation Trust to the same extent as provided in this Section 3.7 with respect to the Trustee.

3.8 The Trustee may purchase and maintain reasonable amounts and types of insurance on behalf of an individual who is or was a Trustee, employee, or agent of the Litigation Trust against liability asserted against or incurred by such individual in that capacity or arising from his or her status as a Trustee, employee, or agent with the consent of the Committee and the Reorganized Debtor.

3.9 **Reliance.** Any Person dealing with the Litigation Trust may rely in good faith upon any certificate or other instrument signed by at least one Trustee, or upon any certificate or other instrument signed by an officer or agent of the Litigation Trust whose authority is evidenced by a certificate or other instrument signed by at least one Trustee, without the necessity of further inquiry by such Person into the authority of such Trustee, officer or agent to act on behalf of the Litigation Trust ; *provided, however,* that disbursements or expenditure from

the Litigation Trust made in respect of investments in accordance with Section 4.2 hereof and the investment policies duly adopted by the Trustee shall not require the signature of any Trustee; and *provided, further,* that the Trustee may adopt by-laws concerning these matters that are more restrictive than the foregoing.

3.10 **Actions by Trustee.** Except as otherwise provided in this Agreement or as required by applicable law, all determinations by the Trustee (if there is more than one) shall be made by the vote or consent of a majority of the Trustee then in office, following prior notice to all Trustee.

3.11 **Bond.** The Trustee shall not be required to post any bond or other form of surety unless otherwise ordered by the Court.

## ARTICLE 4
## ACCOUNTS AND INVESTMENTS

4.1 **Accounts.** The Trustee shall establish such funds and accounts with such Persons as he shall, in his discretion, deem necessary or advisable for carrying out the purposes of the Trust.

4.1.1 **Investments.** Investments of monies held in the Litigation Trust estate shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs, subject to the following limitations and provisions taking into account the purposes for which the Litigation Trust was created. In determining investments to be held by the Litigation Trust, due regard shall be given by the Trustee to safety of principal and to production of reasonable amounts of current income. The Trustee shall not be under any obligation to invest the Trust Assets for capital appreciation, in view of the purposes for which the Litigation Trust was created.

## ARTICLE 5
## POWERS, TRUST ADMINISTRATION

5.1 **Trust Powers.**

5.1.1 Pursuant to the Confirmation Order, subject to the limitations set forth in this Agreement, and subject to the provisions and limitations of the Plan, all of which are incorporated herein, the Trustee shall have the power to take any and all actions as, in the sole judgment and discretion of the Trustee, are necessary or advisable to effectuate the purposes of the Litigation Trust, including without limitation, each power expressly granted in Section 5.1.3 of this Agreement and any power reasonably incidental thereto, and any trust power now or hereafter permitted under the law of the State of Arizona that is not inconsistent with the provisions of this Agreement.

5.1.2 Except as expressly provided in the Plan or in this Agreement, the Trustee may, but need not, obtain the order or approval of the Court, or any other court in the exercise of any power or discretion conferred hereunder, or account to the Court or to any other court in the absence of a breach of trust.

5.1.3 Without limiting the generality of Section 5.1.1 of this Agreement, and subject to the other provisions of this Agreement, the Trustee shall have the power:

5.1.3.1 to receive and hold the Trust Assets and other additions to the Litigation Trust from any source, provided such additions are made pursuant to the Plan, the Confirmation Order or another order of the Court, and to administer and distribute the same as a part of the Litigation Trust estate;

5.1.3.2 to invest and reinvest the funds of the Litigation Trust as provided in this Agreement;

5.1.3.3 upon entry of a Final Order, to pay the Allowed Claim of a Non-Settling Tort Claimant in accordance with and subject to the limitations contained in the Plan, including, but not limited to, withholding any payment until all of the Tort Claims of Non-Settling Tort Claimants have been determined by a Final Order;

5.1.3.4 to defend against, resolve, liquidate, or otherwise deal with and settle the Non-Settling Claims assumed by the Litigation Trust pursuant to Article _____ hereof subject, however, to the terms of the Plan, and to employ and compensate legal counsel, accountants, financial advisors, expert witnesses, and other parties deemed by the Trustee to be qualified as experts in connection therewith (subject in all respects to the provisions and limitations of this Agreement and the Plan), as the Trustee shall in his sole discretion deem best;

5.1.3.5 to employ and compensate, utilizing Trust Assets, legal, financial, accounting, investment, and other advisors, custodians of assets, agents, the Special Arbitrator, and other parties deemed by the Trustee to be qualified as experts on such matters as may arise before them, and to delegate to such Persons such powers, authority, and discretion as the Trustee, in his discretion deems advisable or necessary to carry out the terms of the Litigation Trust, and the opinion of such Persons on any matters submitted to them by the Trustee shall be full and complete protection to the Trustee with regard to any action taken by the Trustee hereunder in good faith and in accordance with such opinion;

5.1.3.6 to reimburse, utilizing Trust Assets, the Trustee, subject to Section 3.6 above, such employees, legal, financial, accounting, investment, and other advisors and experts, and agents, described in Section 5.1.3.4 and 5.1.3.5 above, for all properly documented out-of-pocket costs and expenses incurred by such Persons in connection with the performance of his duties hereunder; *provided, however, that* the Trustee shall not incur fees and expenses in excess of a total of $_____ without prior notice to the Committee and the Reorganized Debtor and an order of the Court entered prior to the incurrence of such fees and expenses.

5.1.3.7 to make such decisions as they may deem appropriate in connection with the administration of the Litigation Trust of the performance of his duties;

5.1.3.8 to apply to the Court for instructions to the Trustee as he may deem proper or necessary in connection with the administration of the Litigation Trust of the performance of his duties; *provided, however, that*, any such applications shall be on notice to the Committee and the Reorganized Debtor each of whom shall have standing to appear and be heard on any such applications;

5.1.3.9 to indemnify (and purchase insurance indemnifying) its directors, officers, employees, agents, the Special Arbitrator, and representatives in accordance with Section 3.7 above, to the fullest extent that a corporation organized under Arizona law is entitled to indemnify its directors, officers, employees, agents, and representatives subject to approval of the Court upon notice to the Committee and the Reorganized Debtor;

5.1.3.10 to indemnify (and purchase insurance indemnifying) its directors, officers, employees, agents and representatives in accordance with Section 3.7 above, to the fullest extent that a corporation organized under Arizona law is entitled to indemnify its directors, officers, employees, agents, and representatives subject to approval of the Court upon notice to the Committee and the Reorganized Debtor;

5.1.3.11 to delegate any or all of the discretionary powers and authority herein conferred at any time with respect to the investment of the Trust Assets to any one or more recognized individual or institutional advisors or investment managers acceptable to the Trustee, and to compensate and reimburse such advisors and managers for their services;

5.1.3.12 to establish such funds, reserves, and accounts within the Litigation Trust with Trust Assets as may be deemed by the Trustee to be useful or necessary in carrying out the purposes of the Litigation Trust ;

5.1.3.13 to draft and amend from time to time bylaws governing the operation of the administration of the Litigation Trust upon approval of the Court after notice to the Committee and the Reorganized Debtor, provided that any such bylaws are not inconsistent with any of the provisions contained in this Agreement or the Plan;

5.1.3.14 to enter into such other arrangements with third parties as are deemed by the Trustee to be useful in carrying out the purposes of the Litigation Trust (including, without limitation, (i) engaging a financial institution to act as paying agent, depository, custodian, or trustee with respect to funds, reserves, or accounts created hereby or established pursuant hereto, and (ii) renting or leasing such real and personal properties, as the Trustee may deem necessary or desirable for the proper administration of the Litigation Trust ), and to compensate such third parties for their services;

5.1.3.15 to institute any action or proceeding at law or in equity for the collection of any sums due to the Litigation Trust, or otherwise to advance the interests of the Litigation Trust in a manner not inconsistent with the terms of the Plan, prosecute any such action or proceeding to judgment or final decree, enforce any such judgment or final decree, and collect in any manner provided by law the monies adjudged or decreed to be payable; *provided however, that* so long as the Debtor has timely and fully transferred the Trust Assets into the Settlement Trust for allocation to the Litigation Trust, and all assets required to be transferred to the Litigation Trust pursuant to the Plan have been timely and fully transferred into the Litigation Trust, regardless of any deficiency in the Litigation Trust or any other reason, the Litigation Trust may not institute any action or proceeding against the Debtor, the Reorganized Debtor, or against any other Person expressly released pursuant to the terms of the Plan, for collection of any sums in respect of the Tort Claims;

5.1.3.16 to rely upon any affidavit, certificate, letter, notice, telegram, e-mail, or other paper or electronic writing, or upon any telephone conversation or other oral communication, believed by the Trustee to be genuine and sufficient and upon any other evidence believed by the Trustee to be genuine and sufficient, and to be protected and saved harmless in respect of all payments or distributions made hereunder if made in good faith and without actual notice or knowledge of the changed condition or status of any Person receiving payments or other distributors upon a condition.

5.2 **Administration.**

5.2.1 The Trustee shall conduct the business of the Litigation Trust in accordance with the provisions of this Agreement.

5.2.2 The Litigation Trust shall use a calendar year accounting year and shall utilized the accrual method of accounting.

5.2.3 In the event that the duration of the Litigation Trust exceeds one year, the Trustee shall cause to be prepared and filed with the Court as soon as available and in any event within one hundred twenty (120) days following the end of each fiscal year, an annual report containing financial statements of the Litigation Trust , including without limitation, a balance sheet of the Litigation Trust as of the end of such fiscal year and a statement of operations for such fiscal year.

5.2.4 Simultaneously with the earlier to occur of: (i) the Trustee' application to the Court for an order terminating the Litigation Trust, (ii) the delivery of the financial statements referred to in Section 5.2.3 above, and (iii) quarterly, beginning with the first quarter after the funding of the Litigation Trust , the Trustee shall cause to be prepared and filed with the Court a report and accounting containing a summary in reasonable detail of the following information with respect to the period covered by such application or such financial statements, as the case may be:

5.2.4.1 The number of Tort Claims of Non-Settling Tort Claimants remaining to be liquidated;

5.2.4.2 The investment income earned by the Litigation Trust ; and

5.2.4.3 The amount of expenses incurred by the Litigation Trust.

5.3 The Trustee shall cause to be filed timely such income tax and other returns and statements as are required to comply with applicable provisions of the Internal Revenue Code and of any state law and the regulations promulgated thereunder. The Litigation Trust shall be responsible for paying taxes and any other obligations or liabilities of any and all kinds whatsoever which at any time are lawfully levied, assessed upon, or become payable in respect of the Litigation Trust or the Trust Assets. The Trustee shall utilize Trust Assets to pay such taxes, levies, and assessments. The Trustee shall make any election and provide any information as may be necessary to comply with the requirement of a Qualified Settlement Fund under Section 468B of the Internal Revenue Code.

QBTUC\811017.00003\1673512

# ARTICLE 6
## LITIGATION PROTOCOL, ALLOWANCE, AND DISTRIBUTION

6.1 **Litigation Protocol.**

      6.1.1 Scope. The Claims of all Non-settling Tort Claimants shall be resolved under and in accordance with the terms of this Article 6 (the **"Litigation Protocol"**) and the Plan. Only those Non-Settling Claims that satisfy the eligibility criteria specified in Section 6.2 below are eligible to receive payment hereunder.

      6.2 **Irrevocable Election.** Non-setting Tort Claimants shall resolve their Tort Claims exclusively under the Litigation Protocol and cannot pursue their Claims or the collection thereof under the Litigation Trust or otherwise.

6.3 **Eligibility.**

      6.3.1 Non-Settling Tort Claimants who timely filed a Proof of Claim in the Reorganization Case and whose Tort Claims are not resolved prior to the Effective Date and which are to be determined, in accordance with the terms of the Plan for Non-Settling Tort Claimants, will be deemed to have the action instituted by the objection, if any, filed to the Tort Claim prior to the Effective Date. The Proof of Claim form and information contained in the Claimant's submission in the Reorganization Case as well as all documents and pleadings relating to any objections filed to such Tort Claim shall be deemed as and shall become the Litigation Trust 's files.

      6.3.2 In order to be eligible to participate in the Litigation Protocol under this Article 6, a Non-Settling Tort Claimant must satisfy the following criteria:

      6.3.2.1 The Tort Claim of a Non-Settling Tort Claimant against the Debtor has not been released (or such Claim been resolved by final judgment, dismissal, or order);

      6.3.2.2 The Tort Claim of a Non-Settling Tort Claimant has not been disallowed by the Court;

      6.3.2.3 The Tort Claimant has timely elected to opt-out of the Settlement Trust in accordance with the terms provided by the Plan and any Orders of the Court;

      6.3.2.4 The Tort Claimant has filed a timely Proof of Claim in the Case or a timely Proof of Claim has been filed on his or her behalf pursuant to Bankruptcy Rule 3005; and

      6.3.2.5 The Non-Settling Tort Claimant has not transferred his or her right to recover with respect to the Tort Claim such that the Claim can be asserted by another Person.

6.4 **Litigation, Disallowance, Allowance, Liquidation.**

      6.4.1 **Litigation Trust Sole Real Party in Interest.** The Plan and the Confirmation Order shall provide, among other things, that (i) any and all litigation on behalf of

Non-Settling Tort Claimants shall be brought and maintained nominally against the Debtor (not the Reorganized Debtor), (ii) the Litigation Trust shall be the true party in interest in any such litigation, (iii) no other Person may be sued or named as a defendant in such litigation, and (iv) in no event shall the trust form of the Litigation Trust be disregarded.

6.4.2 **Settlement of Litigation.** The Trustee shall aggressively litigate the Non-Settling Tort Claims. The Trustee shall be responsible for negotiating and recommending settlements to the Committee and the Reorganized Debtor when, in his or her judgment, such settlements would facilitate resolution of the Claims of Non-Settling Tort Claimants. A condition to any settlement of a Non-Settling Tort Claim is a general release by the corresponding Non-Settling Tort Claimant of all Released Parties and Settling Parties and their property released and deemed to be released pursuant to Article 18 of the Plan. In no event may a Non-Settling Tort Claimant who has settled his litigation opt back into treatment under the Settlement Trust.

6.4.3 **Dismissal; Withdrawal of Claims.** At any time on written notice to the Trustee a Non-Settling Tort Claimant may withdraw his or her Tort Claim. In that event, such Non-setting Tort Claimant shall simultaneously file with the applicable court appropriate pleadings necessary to have any litigation, in which he asserts his Tort Claim against the Debtor, dismissed with prejudice. Any Non-Settling Tort Claimant whose litigation against the Debtor is dismissed, whether at the request of such Non-Settling Tort Claimant or otherwise, by the court in which it is pending shall have his Non-Settling Tort Claim disallowed in its entirety. Any such withdrawn or dismissed Non-Settling Tort Claim may at no time be reasserted or treated under the Litigation Trust or the Settlement Trust.

6.4.4 **Joint Defense.** Certain provisions of the Plan provides the Tort Claims of Non-Settling Tort Claimants are channeled to the Litigation Trust for resolution hereunder. Upon the request of the Trustee, the Participating Third Parties, the Debtor or the Reorganized Debtor, and the Litigation Trust shall negotiate and enter into joint defense agreements, if any, as the Trustee believes appropriate.

6.4.5 **Cooperation.** Upon request from time to time by the Trustee, the Debtor shall deliver to the Trustee such Non-Settling Tort Claimants' files and documents, privileged and non-privileged, relating to the Tort Claims of Non-Settling Tort Claimants as are necessary for the Trustee to pursue his duties hereunder. The Debtor shall also provide reasonable cooperation to the Trustee, including providing evidence and testimony. The Trustee shall cooperate with and provide to the Reorganized Debtor such information regarding the Tort Claims of Non-Settling Tort Claimants as the Reorganized Debtor may reasonably request from time to time to facilitate the Reorganized Debtor in responding to or attending to matters relating to the Reorganization Case.

6.4.6 **Privileged and Confidential Information.** All privileged and confidential information provided to the Litigation Trust by the Debtor, the Reorganized Debtor, any Participating Third Party, or any officer, employee, agent of or attorney for the Debtor, Reorganized Debtor, and any Participating Third Party shall be maintained by the Litigation Trust as privileged and confidential. All privileged information provided to the Litigation Trust by the Debtor, the Reorganized Debtor, or Participating Third Parties or any office, employee,

agent, or attorney therefor shall continue to be protected under the applicable privilege. The Litigation Trust shall not disclose any privileged and confidential information of the Debtor, the Reorganized Debtor, or any Participating Third Party without the prior written consent of the Debtor, the Reorganized Debtor, or such Participating Third Party.

6.4.7 **Privilege.** The providing of information by the Debtor, the Reorganized Debtor, or any Participating Third Party to the Litigation Trust and the Trustee pursuant to this Agreement shall not be, and shall not be construed to be, a waiver of any applicable privilege. The Litigation Trust is authorized to assert any and all applicable privileges on behalf of the Debtor, the Reorganized Debtor, and any Participating Third Party which has common legal counsel with the Litigation Trust as set forth herein. The Litigation Trust shall not voluntarily waive any privilege available to it, the Debtor, the Reorganized Debtor, or such Participating Third Party. Upon receipt of any subpoena or other discovery request for confidential or privileged information of the Debtor, the Reorganized Debtor, or such Participating Third Party, the Litigation Trust shall promptly notify the Debtor or the Reorganized Debtor, or such Participating Third Party and shall cooperate with the Debtor, the Reorganized Debtor, or such Participating Third Party in objecting to, complying with, or otherwise responding to such subpoena or discovery request. The Debtor, the Reorganized Debtor, and such Participating Third Parties shall remain the sole owners of their respective privileges; no such privilege shall pass to or be owned by the Litigation Trust.

6.4.8 **Litigation Materials.** All documents and materials assembled by the Trustee in connection with the Non-Settling Personal Injury Claims, including without limitation documents and information provided by the Debtor or the Reorganized Debtor and produced or preserved as a result of discovery (collectively, **"Litigation Materials"**), shall be maintained by the Trustee until termination of the Litigation Trust in accordance with Section 7.2 below. The Trustee may, during any wind up of the affairs of the Litigation Trust pursuant to Section 7.2.3 below, dispose of the Litigation Materials without the prior written consent of the Debtor or the Reorganized Debtor unless prior to such termination the Committee has received a written request from the Reorganized Debtor to deliver the Litigation Materials to the Reorganized Debtor.

6.4.9 **Claims Determination Records.** The Trustee shall maintain (but not file with any court) records of all individual determinations and payments with respect to the Non-Settling Tort Claims. The records shall include the determination of the Claim, dates of abuse, the amount and date of payments distributed. Such records shall be redacted to preserve Claimant confidentiality. The Debtor or Reorganized Debtor shall at its request and expense, be afforded access to and permitted to inspect all documentation and other supporting evidence submitted by any Non-Settling Tort Claimant who has been paid as may be necessary for the Debtor or Reorganized Debtor to receive benefits under insurance policies. The Reorganized Debtor shall maintain the confidentiality of the Claims information to protect the identity of the Claimants.

6.4.10 **Attorneys' Fees.** The Litigation Trust and Non-Settling Tort Claimants shall each bear their own costs, expenses, and attorneys' fees in connection with the Litigation Protocol set forth in this Article 6.

6.5 **Payment of Claims.**

    6.5.1 **Disallowed Claim.** A Non-Settling Tort Claimant whose Claim is determined pursuant to the Litigation Protocol to be Disallowed shall receive no distribution under this Agreement or the Plan and shall have no further Claim against the Debtor or the Reorganized Debtor and shall have no Claim against the Litigation Trust or the Trustee.

    6.5.2 **Maximum Distribution.** Distributions from the Trust Assets shall not exceed the aggregate amount of the Trust Assets allocated to the Litigation Trust available after payment of all administrative expenses of the Litigation Trust, including all attorneys' fees and costs of defending against the Tort Claims of Non-Settling Tort Claimants, without limitation, costs of legal defense counsel and the Trustee' compensation.

    6.5.3 **Possible Pro-Rata Payments.** In the event that the amount of Trust Assets available for distribution to holders of Allowed Tort Claims of Non-Settling Tort Claimants is not sufficient to pay all such Claims in full, each holder of an Allowed Non-Settling Tort Claim shall receive a pro-rata share based upon the amount of such Allowed Non-Settling Tort Claim in proportion to the total amount of all Allowed Non-Settling Tort Claims subject to the limitations contained in the Plan and after deduction of all costs, fees (including attorneys' fees) and expenses incurred in defending any Tort Claims and administering the Litigation Trust or other expenses authorized to be paid pursuant to the terms of this Agreement.

    6.5.4 **Timing of Payment.** There shall be no payment or distribution on account of Allowed Claims of Non-Settling Tort Claimants until after the Claims of all of the Non-Settling Tort Claimants have been determined by a Final Order.

    6.5.5 **Discussions; Inadmissibility.** Establishment of the Litigation Trust and payments hereunder to Allowed Tort Claims of Non-Settling Tort Claimants do not constitute any admission of fault, liability, or damages. Discussions made in connection with the resolution of a Claim hereunder shall be confidential and shall not be disclosed to other Claimants or their counsel or to any other Person.

**ARTICLE 7**
**GENERAL PROVISIONS**

    7.1 **Irrevocability.** Except as otherwise provided in Section 7.6, the Litigation Trust is irrevocable. Neither the Debtor, nor the Reorganized Debtor, nor its successors in interest, nor any Affiliates thereof, hold or may hold any beneficial interest in the income or corpus of the Litigation Trust .

    7.2 **Termination.**

    7.2.1 At such time as all Trust Assets have been fully and finally distributed in accordance with the terms of the Plan and this Agreement, the Trustee shall apply to the Court for an order of the Court terminating the Trust, upon such notice as the Court shall order.

7.2.2   Upon the Court's order terminating the Litigation Trust becoming final, except to the extent otherwise provided in such order, the Litigation Trust shall be terminated, and the Trustee shall be discharged of all responsibilities with respect to the Litigation Trust .

7.2.3   Upon termination of the Litigation Trust, the Trustee shall remain authorized to wind up the affairs of the Litigation Trust and shall be transfer any balance, if any, of funds in the Litigation Trust after payment of or adequate provision for any remaining Litigation Trust expenses to the Settlement Trust to be distributed in accordance with the terms of the Plan.

7.3   **Confidentiality.** Copies of all documents, notices, statements, reports, motions, or similar documents provided to the Trustee pursuant to this Agreement shall be provided on a confidential basis and shall be kept confidential by the Trustee unless such information is otherwise publicly available.

7.4   **Severability.**   Should any provision of this Agreement be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Agreement.

7.5   **Headings.** The headings used in this Agreement are inserted for convenience only and shall not affect the construction of any and all other provisions of this Agreement.

7.6   **Amendment.** When necessary to carry out the purposes of the Litigation Trust, this Agreement may be amended only by an instrument signed by each of the Trustee then in office; provided, however, that any such amendment must be consistent with the Plan; and provided further, that such amendment shall become effective only with the approval of the Court and after notice and a hearing as the Court may direct.

7.7   **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall constitute an original, but which counterparts together shall constitute but one and the same instrument.

7.8   **Successors and Assigns.** The provisions of this Agreement shall be binding upon and inure to the benefit of the Debtor, the Litigation Trust , and the Trustee, and their respective successors and assigns, except that neither the Debtor, nor the Reorganized Debtor, nor the Litigation Trust nor any Trustee may assign or otherwise transfer any of his, her, or its rights or obligations under this Agreement.

7.9   **Governing Law.**   This Agreement shall be governed by and construed in accordance with the laws of the State of Arizona.

7.10   **No Adverse Action.** No Trustee shall take any action that will adversely affect the qualification of the Litigation Trust as a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended.

7.11   **No Execution.** All Trust Assets and funds in the Litigation Trust are deemed to be *in custodia legis* until such times as funds have actually been paid to and received by a Non-Settling Tort Claimant. No Non-Settling Tort Claimant or any other Person may execute upon,

garnish or attach the Litigation Trust estate in any manner whatsoever or compel payment from the Litigation Trust of any Non-Settling Tort Claim or other Claim. Any and all payments of Non-Settling Tort Claim shall be controlled solely by the Plan and this Agreement. No Non-Settling Tort Claimant or any other person may execute upon, garnish, attach or in any way compel payment from the Settlement Trust.

7.12 **Controlling Document.** In the event of any conflict between the provisions of this Agreement and the Plan, the Plan shall be the controlling document.

IN WITNESS WHEREOF, the Trustor and the Initial Trustee have caused this Agreement to be duly executed by them or their respective authorized representatives.

Dated: _____

THE ROMAN CATHOLIC CHURCH OF THE DIOCESE OF TUCSON, an Arizona corporation sole

By:_____

Name: _____

Title: _____


TRUSTEE:

Dated: _____

_____

By:_____

Name:_____

# EXHIBIT "4"

PARISHES AND PARISH SCHOOLS AND MISSIONS IN THE DIOCESE OF TUCSON

1. **Assumption of the Blessed Virgin Mary Parish,**
2. **Blessed Kateri Tekakwitha Parish,**
   Mission: El Senor De Los Milagros, Tucson
   Mission: Cristo Rey, Tucson
   Mission: Santa Rosa de Lima, Tucson
   Mission San Juan Bautista, Tucson
   Mission: San Ignacio de Loyola, Tucson
   Mission: San Martin De Porres, Tucson
3. **Blessed Sacrament Parish,**
4. **Corpus Christi Parish,**
5. **Holy Angels Parish,**
   Holy Angels School in Globe, AZ
6. **Holy Cross Parish,**
7. **Holy Family Parish**
8. **Immaculate Conception Parish,**
9. **Immaculate Conception Parish,**
10. **Immaculate Conception Parish,**
    Immaculate Conception School
    Mission: Our Lady of Guadalupe Chapel, Yuma, AZ
11. **Immaculate Heart of Mary Parish,**
    Casa Moreno Center
12. **Infant Jesus of Prague Parish,**
13. **Most Holy Trinity Parish,**
14. **Most Holy Nativity of Our Lord Jesus Christ Parish,**
15. **Our Lady of Fatima Parish,**
    Mission: St. Mary of the Desert, Three Points, AZ
16. **Our Lady of Guadalupe Parish,**
    Mission: San Jose, Solomon
17. **Our Lady of La Vang Parish,**
18. **Our Lady of Lourdes Parish,**
19. **Our Lady, Queen of All Saints Parish,**
20. **Our Lady of the Blessed Sacrament Parish,**
    Mission: St. Joseph Chapel, Claypool, AZ
    Mission: St. Theresa, Roosevelt Lake Resort, AZ

Parish and Parish Entities Page Two

21. **Our Lady of the Mountains Parish,**
    Our Lady of the Mountains Catholic School

22. **Our Lady of the Valley Parish,**

23. **Our Mother of Sorrows Parish,**
    Our Mother of Sorrows School

24. **Sacred Heart Parish,**
    Mission: St. Mary in Duncan, AZ

25. **Sacred Heart Parish,**
    Sacred Heart School, Nogales

26. **Sacred Heart Parish,**
    Mission: Blessed Kateri Tekakwitha, Poston, AZ
    Mission: Queen of Peace, Quartsite, AZ
    Mission: St. John the Baptist, Wenden-Salome, AZ

27. **Sacred Heart Parish,**

28. **Sacred Heart Parish,**

29. **Sacred Heart Parish,**
    Mission: Our Lady of Guadalupe, Bowie, AZ
    Mission: Our Lady of Perpetual Help Mission, San Simon, AZ

30. **St. Ambrose Parish,**
    St. Ambrose School

31. **St. Andrew the Apostle Parish,**
    Mission: Good Shepherd, Whetstone, AZ

32. **St. Ann Parish,**
    Mission: Assumption Chapel, Amado, AZ
    Mission: St. Ferdinand, Arivaca, AZ
    Mission: St. Helen, Sasabe, AZ

33. **St. Anthony of Padua Parish,**
    Mission: St. Francis de Sales, Maricopa, AZ
    St. Anthony of Padua Elementary School

34. **St. Augustine Cathedral Parish,**

35. **St. Bartholomew Parish,**
    Mission: St. Helen, Oracle, AZ

Parish and Parish Entities Page Three

36. **St. Bernard Parish,**

   Mission: Our Lady of La Salette, Double Adobe-McNeal, AZ

   Mission: Sacred Heart Chapel, Pirtleville, AZ

37. **St. Christopher Parish,**

   Red Rock Catholic Community

38. **St. Cyril of Alexandria Parish,**

   St. Cyril School

39. **St. Elizabeth Ann Seton Parish,**

   St. Elizabeth Ann Seton School

40. **St. Frances Cabrini Parish,**

41. **St. Francis de Sales Parish,**

42. **St. Francis of Assisi Parish,**

43. **St. Francis of Assisi Parish,**

   St. Francis of Assisi School

44. **St. George Parish,**

45. **St. Helen Parish,**

46. **St. James Parish,**

47. **St. John Neumann Parish,**

48. **St. John the Evangelist Parish,**

   St. John the Evangelist School

49. **St. Joseph Parish,**

50. **St. Joseph Parish,**

   St. Joseph School

51. **St. Joseph the Worker Mission,**

52. **St. Jude Thaddeus Parish,**

   Mission: St. Francis of Assisi, Elfrida, AZ

53. **St. Jude Thaddeus Parish,**

54. **St. Luke Parish,**

55. **St. Margaret Mary Parish,**

56. **St. Mark the Evangelist Parish,**

57. **St. Monica Parish,**

58. **St. Odilia Parish,**

   St. Odilia School

59. **St. Patrick Parish,**

   Mission: St. Michael, Naco, AZ

Parish and Parish Entities Page Four

60. **St. Philip Parish,**

61. **St. Pius X Parish,**

62. **St. Rita in the Desert Parish,**

63. **St. Rose of Lima Parish,**

    Mission: Pima Mission, Pima, AZ

64. **St. Theresa Parish,**

    Mission: Our Lady of the Angels, Sonoita, AZ

65. **St. Thomas More Newman Center Parish,**

66. **St. Thomas the Apostle Parish,**

    St. Thomas the Apostle Pre-School

67. **Ss. Peter and Paul Parish,**

    Ss Peter and Paul School

68. **San Carlos Mission Parish,**

    Mission: Blessed Kateri Tekakwitha, Bylas, AZ

    St. Charles School

69. **San Felipe de Jesus Parish,**

70. **San Martin de Porres Parish,**

71. **San Solano Missions Parish,**

    Mission : St. Augustine Church, Chuichu, AZ

    Mission : San Jose, Pisinemo, AZ

    Mission : Our Lady of the Sacred Heart Church, Sells, AZ

    Mission : Sacred Heart Church, Sells, AZ

    Mission : St. Catherine Church, Topawa, AZ

72. **Mission San Xavier del Bac Parish,**

    San Xavier Mission School

73. **Santa Catalina Parish,**

74. **Santa Cruz Parish,**

    Santa Cruz School